`UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION, ) ) ) ) | |
| Plaintiff, ) ) | Case Number: 1:05CV01837 |
| v. ) ) | Judge: Paul L. Friedman |
| FORUM, INC., ) ) | |
| Defendant. ) ) | |

## FIRST AMENDED COMPLAINT

Plaintiff National Railroad Passenger Corporation ("Amtrak"), by and through its undersigned counsel of record, for its First Amended Complaint herein states as follows:

## PARTIES

1. Amtrak was established in 1971 by the Rail Passenger Service Act, 49 U.S.C. § 24101, *et seq.* (formerly 45 U.S.C. §§ 501-658). Amtrak is a corporation authorized to be created by Act of Congress with its principal office and place of business located at 60 Massachusetts Avenue NE, Washington, D.C. 20002. The United States owns more than 50 percent of Amtrak's stock. By statute, Amtrak is a citizen only of the District of Columbia when deciding the original jurisdiction of the United States District Courts in civil actions. 49 U.S.C. § 24301(b).

2. Defendant Forum, Inc. ("Forum") is a corporation incorporated in the State of Delaware with its principal place of business located at 908 Old Freeport Road, Pittsburgh, PA 15238.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as an action by a corporation, incorporated by or under an Act of Congress, wherein the United States is the owner of more than one-half of its capital stock. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as a District in which Forum has agreed that it is subject to personal jurisdiction. In addition, pursuant to the contract between Amtrak and Forum (hereafter, the "Contract"), Amtrak and Forum have expressly submitted to the jurisdiction of this Court and agreed that "venue is proper in the Federal courts of the District of Columbia in connection with any dispute arising under or relating to this Contract." (Contract, General Provisions at 5, ¶ 11).

## FACTS

5. As part of its intercity rail passenger service, Amtrak owns and operates several rail passenger stations between Washington, DC and Boston, Massachusetts (the "Northeast Corridor"). As part of a rail-station construction program related to the introduction of its Acela high-speed trains, Amtrak entered into the Contract with Forum whereby Forum would supply light fixtures for eight Amtrak stations along the Northeast Corridor, including stations at Washington, DC, the Baltimore-Washington Airport, Baltimore, MD, Wilmington, DE, Philadelphia, PA, New London, CT, Providence, RI, and Route 128 in Westwood, MA. The Contract was modified on several occasions.

6. Prior to executing the Contract, Amtrak provided Forum with detailed design specifications for the light fixtures, entitled "Light Fixture Design Specification for Amtrak Luminaire Development and Fabrication Northeast Corridor Stations" (the "Design Specifications"), which were incorporated into the Contract.

7. Amtrak awarded Phase I of the Contract to Forum, which required that Forum provide a prototype light fixture in conformance with the Design Specifications and other requirements of the Contract.

8. After Forum provided Amtrak with the prototype, Amtrak awarded Phase II of the Contract to Forum for the production of the light fixtures in conformance with the Design Specifications and other requirements of the Contract. Amtrak purchased Forum light fixtures under the Contract for installation at the stations identified above, for a total purchase price in excess of $2.8 million. Amtrak incurred in excess of $2.5 million in additional costs for installation of the Forum-supplied light fixtures.

9. After their installation, the light fixtures exhibited problems that rendered the Forum-supplied light fixtures inoperative and which posed safety hazards to Amtrak passengers and personnel.

10. Amtrak notified Forum of the discovery of the significant problems with the Forum-supplied light fixtures.

11. From the notification to Forum until December 2004, Amtrak assisted Forum as it tried to "cure" the problems with the Forum-supplied light fixtures. Meanwhile, Amtrak incurred substantial maintenance and repair costs associated with these light fixtures.

12. In or about December 2004, because Forum had failed to cure the problems with the Forum-supplied light fixtures, Amtrak contracted with an independent laboratory, MET

Laboratories of Baltimore, MD, to perform environmental simulation testing on light fixtures provided by Forum in an effort to isolate the causes of the problems with the Forum-supplied light fixtures.

13. On or about April 6, 2005, MET Laboratories provided Amtrak with its final report on the Forum-supplied light fixtures. The report concluded that the Forum-supplied light fixtures, as manufactured, do not conform with the Design Specifications incorporated into the Contract, and moreover do not conform with international ratings for such light fixtures as required under the Contract. Prior to its receipt of the MET Laboratories report, Amtrak did not know that the Forum-supplied light fixtures do not conform with the Design Specifications and other requirements of the Contract.

14. On or about April 27, 2005, Amtrak provided Forum with a copy of the MET Laboratories report and requested Forum's response. At that time, Amtrak also advised Forum that it was rejecting and/or revoking any prior acceptance of the Forum-supplied light fixtures.

15. On or about June 10, 2005, Forum advised Amtrak that it disagreed with the MET Laboratories' findings and offered to continue the cure process.

16. Until at least June 2005 and including, but not limited to, Paula Garret's May 20 and June 10, 2005 letters to Amtrak, Forum has continually misrepresented to Amtrak that the Forum-supplied light fixtures conform with the Design Specifications and other requirements of the Contract.

17. Because of the time and expense that Amtrak already has incurred in helping Forum with the cure process, Amtrak's recent discovery that the Forum-supplied light fixtures do not conform with the Design Specifications and other requirements of the Contract, and because Forum has continually misrepresented that the Forum-supplied light fixtures conform with the

Design Specifications and other requirements of the Contract, it would be futile to continue the cure process.

18. Amtrak is now in the process of acquiring and installing new light fixtures to replace the nonconforming Forum-supplied light fixtures at a cost in excess of $5 million.

19. Amtrak has incurred and will continue to incur expenses necessary to maintain and repair the nonconforming Forum-supplied light fixtures, to make repairs to its stations caused by the installation and removal of the nonconforming Forum-supplied light fixtures, and to safely dispose of the nonconforming Forum-supplied light fixtures, all in an amount to be proven at trial.

## COUNT I

### Rejection/Revocation of Acceptance

20. Amtrak incorporates paragraphs 1 through 19 above, inclusive, as if fully set forth herein.

21. Under the Contract, "[a]cceptance shall not be conclusive as to latent defects, fraud, gross mistakes, or as otherwise provided in the Contract." (Contract, General Provisions at 12, ¶ 26).

22. The Forum-supplied light fixtures contain latent defects that Amtrak could not have discovered through reasonable inspection or care. These latent defects include, *inter alia*, that the light fixtures do not conform with the Design Specifications and other requirements of the Contract. Amtrak discovered these latent defects upon the release of the April 6, 2005 MET Laboratories report.

23. Forum's intentional and continual misrepresentations and omissions that the Forum-supplied light fixtures did conform with the Design Specifications and other requirements

5

of the Contract, combined with Amtrak's justifiable and reasonable reliance on Forum's misrepresentations and omissions, constitutes fraud and/or gross mistake by Forum.

24. Through its letter to Forum of April 27, 2005, Amtrak has rejected and/or revoked any prior acceptance of the Forum-supplied light fixtures, which Amtrak now knows are defective and do not conform with the Design Specifications and other requirements of the Contract.

25. As a result of Amtrak's justifiable and reasonable rejection and/or revocation of any prior acceptance of the Forum-supplied light fixtures, Amtrak has sustained substantial monetary damages in an amount to be proven at trial, but which exceed $5 million.

## COUNT II

### Breach of Contract

26. Amtrak incorporates paragraphs 1 through 25 above, inclusive, as if fully set forth herein.

27. Amtrak entered into the Contract with Forum under which Forum agreed to manufacture and sell to Amtrak light fixtures that conform with the Design Specifications and other requirements of the Contract. In consideration thereof, Amtrak paid Forum in excess of $2.8 million. In addition, Amtrak incurred costs in excess of $2.5 million for installation of the Forum-supplied light fixtures.

28. Forum breached the Contract by, *inter alia*, failing to supply conforming goods and failing to conform with the Design Specifications and other requirements of the Contract and international ratings for the light fixtures sold to Amtrak.

29. Forum's intentional and continual misrepresentations and omissions that the Forum-supplied light fixtures did conform with the Design Specifications and other requirements

6

of the Contract, combined with Amtrak's justifiable and reasonable reliance on Forum's misrepresentations and omissions, constitutes fraud and/or gross mistake by Forum which prevented Amtrak from discovering that Forum had supplied Amtrak with nonconforming light fixtures.

30. Until April 6, 2005, when the MET Laboratories report was released, Amtrak did not know that Forum had supplied Amtrak with nonconforming light fixtures.

31. By its letter to Forum of April 27, 2005, Amtrak has rejected and/or revoked any prior acceptance of the Forum-supplied light fixtures.

32. At all times relevant hereto, Amtrak fully performed any and all of its obligations under the Contract.

33. Forum's breaches of the Contract actually caused Amtrak substantial economic harm.

34. As a proximate result of Forum's breaches of the Contract, Amtrak has sustained substantial monetary damages in an amount to be proven at trial, but which exceed $5 million.

## COUNT III

### Breach of the Implied Covenant of Good Faith and Fair Dealing

35. Amtrak incorporates paragraphs 1 through 34 above, inclusive, as if fully set forth herein.

36. A covenant of good faith and fair dealing is implied in every contract. Such a covenant requires that no party to an agreement do anything that would injure the rights of any other party to receive the benefits of the agreement, and also that each party act with fairness and good faith towards each other. The covenant further requires that each party to the agreement

refrain from committing any acts or omissions that would cause injury to other parties to the agreement, or deprive them of receiving the benefits of the agreement.

37. Pursuant to the covenant of good faith and fair dealing implied in the Contract, Forum was obligated to act in good faith to conform with the Design Specifications and other requirements of the Contract, and to work with Amtrak to assess, repair, and prevent further problems with the Forum-supplied light fixtures as part of a cure process.

38. Forum breached the covenant of good faith and fair dealing implied in the Contract by, *inter alia*, failing to conform with the Design Specifications and other requirements of the Contract and continually misrepresenting to Amtrak that the Forum-supplied light fixtures conform with the Design Specifications and other requirements of the Contract. By intentionally concealing its failure to conform with the Design Specifications and other requirements of the Contract, Forum induced Amtrak to undergo an expensive and ultimately unsuccessful cure process to assess, repair, and prevent further problems with the nonconforming Forum-supplied light fixtures.

39. Forum's intentional and continual misrepresentations and omissions that the Forum-supplied light fixtures did conform with the Design Specifications and other requirements of the Contract, combined with Amtrak's justifiable and reasonable reliance on Forum's misrepresentations and omissions, constitutes fraud and/or gross mistake by Forum which prevented Amtrak from discovering that Forum had supplied Amtrak with nonconforming light fixtures.

40. Until April 6, 2005, when the MET Laboratories report was released, Amtrak did not know that Forum had supplied Amtrak with nonconforming light fixtures.

41. By its letter to Forum of April 27, 2005, Amtrak has rejected and/or revoked any prior acceptance of the Forum-supplied light fixtures.

42. At all times relevant hereto, Amtrak honored its obligations under the Contract and has acted fairly and in good faith in its dealings with Forum in giving Forum every reasonable opportunity to cure the problems with the nonconforming Forum-supplied light fixtures.

43. Forum's breaches of the implied covenant of good faith and fair dealing actually caused Amtrak substantial economic harm.

44. As a proximate result of Forum's breaches of the implied covenant of good faith and fair dealing, Amtrak has sustained substantial monetary damages in an amount to be proven at trial, but which exceed $5 million.

## COUNT IV

### Breach of Express Warranty

45. Amtrak incorporates paragraphs 1 through 44 above, inclusive, as if fully set forth herein.

46. The Contract contains a written warranty, which provides that Forum warrants that: "for one (1) year from the date of final acceptance, all Supplies delivered under this Contract (including replacement supplies furnished under this warranty): (1) are new (unless otherwise specified); (2) are merchantable and of good quality, free from defects in design, materials, or workmanship (including damage from unsatisfactory packaging by Contractor); (3) are suitable for use for the purpose intended; (4) conform with all applicable laws and regulations, as well as the requirements and Design Specifications of this Contract; and (5) will be delivered free from any security interest, lien or other encumbrance." (Contract, General

Provisions at 4, ¶ 10(A)). Moreover, Forum separately agreed to warrant electronic ballasts for three years. (Contract, General Provisions at 20, ¶ 52(A) and Design Specifications at ¶ 6.1).

47.  Forum breached the written warranty by, *inter alia*, supplying Amtrak with light fixtures that are not: (a) merchantable and of good quality; (b) free from defects in design, materials, or workmanship; (c) suitable for use for the purpose intended; and (d) in conformance with the Design Specifications and other requirements of the Contract.

48.  Forum's intentional and continual misrepresentations and omissions that the Forum-supplied light fixtures did conform with the Design Specifications and other requirements of the Contract, combined with Amtrak's justifiable and reasonable reliance on Forum's misrepresentations and omissions, constitutes fraud and/or gross mistake by Forum which prevented Amtrak from discovering that Forum had supplied Amtrak with nonconforming light fixtures.

49.  Until April 6, 2005, when the MET Laboratories report was released, Amtrak did not know that Forum had supplied Amtrak with nonconforming light fixtures.

50.  By its letter to Forum of April 27, 2005, Amtrak has rejected and/or revoked any prior acceptance of the Forum-supplied light fixtures.

51.  Forum's breaches of the written warranty actually caused Amtrak substantial economic harm.

52.  As a proximate result of Forum's breaches of express warranty, Amtrak has sustained substantial monetary damages in an amount to be proven at trial, but which exceed $5 million.

## COUNT V

### Breach of Implied Warranty

53.     Amtrak incorporates paragraphs 1 through 52 above, inclusive, as if fully set forth herein.

54.     Forum knew when it entered into the Contract that Amtrak was purchasing light fixtures for use in train stations, where they would be subject to, *inter alia*, vibration, weather, insects, and pollution. Forum knew that Amtrak relied upon Forum's expressed skill, judgment, and expertise in manufacturing light fixtures, and further relied on Forum to supply light fixtures that were suitable for their intended purpose and use and were fit for the ordinary purposes for which they were to be used.

55.     In fact, as revealed by the MET Laboratories report of April 6, 2005, the light fixtures manufactured by Forum and sold to Amtrak are not suitable for the purpose for which Forum knew they were intended and are not fit for the ordinary purposes for which they were to be used.

56.     In manufacturing and selling unsuitable light fixtures to Amtrak, Forum breached the implied warranties of fitness for a particular purpose and merchantability.

57.     Forum's intentional and continual misrepresentations and omissions that the Forum-supplied light fixtures did conform with the Design Specifications and other requirements of the Contract, combined with Amtrak's justifiable and reasonable reliance on Forum's misrepresentations and omissions, constitutes fraud and/or gross mistake by Forum which prevented Amtrak from discovering that Forum had supplied Amtrak with nonconforming light fixtures.

58. Until April 6, 2005, when the MET Laboratories report was released, Amtrak did not know that Forum had supplied Amtrak with nonconforming light fixtures that breached these implied warranties.

59. By its letter to Forum of April 27, 2005, Amtrak has rejected and/or revoked any prior acceptance of the Forum-supplied light fixtures.

60. Forum's breaches of the implied warranties of fitness for a particular purpose and merchantability actually caused Amtrak substantial economic harm.

61. As a proximate result of Forum's breaches of the implied warranties of fitness for a particular purpose and merchantability, Amtrak has sustained substantial monetary damages in an amount to be proven at trial, but which exceed $5 million.

## COUNT VI

### Negligence

62. Amtrak incorporates paragraphs 1 through 61 above, inclusive, as if fully set forth herein.

63. Forum undertook a duty to supply Amtrak with light fixtures that conform with the Design Specifications and other requirements of the Contract.

64. By virtue of, *inter alia*, its undertaking to supply Amtrak with light fixtures that conform with the Design Specifications and other requirements of the Contract, Forum owed Amtrak a duty of reasonable care and skill.

65. Forum breached its duty to Amtrak and failed to act with reasonable care and skill by failing to supply Amtrak with light fixtures that conform with the Design Specifications and other requirements of the Contract and international ratings for the light fixtures sold to Amtrak.

66. By failing to supply Amtrak with light fixtures that conform with the Design Specifications and other requirements of the Contract, Forum has caused Amtrak to incur substantial expense in diagnosing and attempting to correct the problems with the Forum-supplied light fixtures.

67. By failing to supply Amtrak with light fixtures that conform with the Design Specifications and other requirements of the Contract, Forum has caused Amtrak to incur, and continues to cause Amtrak to incur, expenses necessary to maintain and repair the nonconforming Forum-supplied light fixtures, to make repairs to Amtrak stations caused by the installation and removal of the nonconforming Forum-supplied light fixtures, and to safely dispose of the nonconforming Forum-supplied light fixtures.

68. Forum's intentional and continual misrepresentations and omissions that the Forum-supplied light fixtures did conform with the Design Specifications and other requirements of the Contract, combined with Amtrak's justifiable and reasonable reliance on Forum's misrepresentations and omissions, constitutes fraud and/or gross mistake by Forum which prevented Amtrak from discovering that Forum had supplied Amtrak with nonconforming light fixtures.

69. Until April 6, 2005, when the MET Laboratories report was released, Amtrak did not know that Forum had supplied Amtrak with nonconforming light fixtures.

70. By its letter to Forum of April 27, 2005, Amtrak has rejected and/or revoked any prior acceptance of the Forum-supplied light fixtures.

71. By breaching its duty to Amtrak and failing to act with reasonable care and skill, Forum has actually and proximately caused Amtrak substantial economic harm.

72. As an actual and proximate result of Forum's negligence, Amtrak has sustained substantial monetary damages in an amount to be proven at trial, but which exceed $5 million.

## COUNT VII

### Fraud

73. Amtrak incorporates paragraphs 1 through 72 above, inclusive, as if fully set forth herein.

74. Until at least June 2005 and including, but not limited to, Paula Garret's May 20 and June 10, 2005 letters to Amtrak, Forum continually misrepresented orally and in writing to Amtrak that the Forum-supplied light fixtures conform with the Design Specifications and other requirements of the Contract. These representations constitute material misrepresentations and omissions of fact.

75. Forum had a duty to disclose to Amtrak, but failed to disclose to Amtrak, that the Forum-supplied light fixtures did not conform with the Design Specifications and other requirements of the Contract.

76. With knowledge of their falsity, Forum intentionally made these material misrepresentations and omissions or failed to exercise reasonable care or competence in ascertaining whether its representations and omissions were true and accurate regarding the conformance of the Forum-supplied light fixtures and the particular purposes for which Amtrak intended to use the Forum-supplied light fixtures, purposes of which Forum was fully aware.

77. Amtrak reasonably and justifiably relied to its detriment upon Forum's misrepresentations and omissions until April 6, 2005, when the MET Laboratories report was released. The MET Laboratories report revealed that the Forum-supplied light fixtures do not conform with the Design Specifications and other requirements of the Contract.

78. Until April 6, 2005, Amtrak did not know that Forum had supplied Amtrak with nonconforming light fixtures.

79. By its letter to Forum of April 27, 2005, Amtrak has rejected and/or revoked any prior acceptance of the Forum-supplied light fixtures.

80. As a proximate result of the foregoing material misrepresentations and omissions by Forum, Amtrak has sustained substantial monetary damages in an amount to be proven at trial, but which exceed $5 million.

## COUNT VIII

### Unjust Enrichment

81. Amtrak incorporates paragraphs 1 through 80 above, inclusive, as if fully set forth herein.

82. As a result of its wrongful conduct, Forum has received a benefit in excess of $2.8 million from Amtrak in the form of consideration paid to Forum in exchange for promises and warranties that Forum would supply light fixtures which conform with the Design Specifications and other requirements of the Contract. In addition, Amtrak incurred costs in excess of $2.5 million for installation of the Forum-supplied light fixtures.

83. Forum has accepted and retained the benefit of the foregoing $2.8 million sum, but has not supplied Amtrak the promised and warranted products in return.

84. Forum will be unjustly enriched by its wrongful conduct if it is permitted to retain the amounts it received from Amtrak, which are in excess of $2.8 million.

85. Forum's intentional and continual misrepresentations and omissions that the Forum-supplied light fixtures did conform with the Design Specifications and other requirements

of the Contract, combined with Amtrak's justifiable and reasonable reliance on Forum's misrepresentations and omissions, constitutes fraud and/or gross mistake by Forum which prevented Amtrak from discovering that Forum had supplied Amtrak with nonconforming light fixtures.

86. Until April 6, 2005, when the MET Laboratories report was released, Amtrak did not know that Forum had supplied Amtrak with nonconforming light fixtures.

87. By its letter to Forum of April 27, 2005, Amtrak has rejected and/or revoked any prior acceptance of the Forum-supplied light fixtures.

88. As a proximate result of Forum's unjust enrichment, Amtrak has sustained substantial monetary damages in an amount to be proven at trial, but which exceed $2.8 million.

## PRAYER FOR RELIEF

**WHEREFORE**, Amtrak prays for judgment against Forum as follows:

1. For judgment in favor of Amtrak and against Forum on each of the above causes of action;

2. Compensatory damages and/or restitution in an amount to be proven at trial, but exceeding $5 million;

3. All consequential, proximate, incidental, and punitive damages allowed by law;

4. All attorneys' fees, costs of suit, and pre- and post-judgment interest as allowed by law; and

5. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Amtrak hereby demands a trial by jury of all causes of action so triable.

Dated: October 27, 2005                    Respectfully submitted,

                                           By:   /s/
                                                 Stephen M. Ryan, DC Bar No. 359099
                                                 Stephen L. Neal, Jr., DC Bar No. 441405
                                                 700 12th Street, N.W., Suite 1100
                                                 Washington, DC 20005
                                                 (202) 585-6500 (Phone)
                                                 (202) 585-6600 (Fax)
                                                 sneal@manatt.com
                                                 sryan@manatt.com

                                                 Counsel for Plaintiff
                                                 National Railroad Passenger Corporation

Of Counsel

Marylin J. Milner, DC Bar No. 390626
Associate General Counsel
National Railroad Passenger Corporation
60 Massachusetts Avenue, N.E.
Washington, DC 20002
(202) 906-3027 (Phone)
milnerm@amtrak.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of October, 2005, a copy of Plaintiff's First Amended Complaint was served by first-class mail upon:

Philip J. Harvey, Esq.
Venable, LLP
8010 Towers Crescent Drive, Suite 300
Vienna, VA  22182

Steven W. Zoffer, Esq.
Dickie, McCamey & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA  15222

                                                  /s/
                                          Stephen L. Neal, Jr.

30181743.1