# EXHIBIT A

# PART 5

177645.txt

18    This is the only person we are going to get from

19    this company.  So --

20                         MR. ZOFFER:  No, no, we are

21    going to get Mr. Lassoff.

22                         MR. NEAL:  Mr. Lassoff can't be

                                                                    202


1     a 30(b)(6) witness --

2                          MR. ZOFFER:  Oh, right.

3                          MR. NEAL:  -- because he is not

4     a employee.

5                          MR. BROOKS:  Can we go off the

6     record for a second, please.

7          (Discussion held off the record.)

8                          MR. BROOKS:  Objection,

9     attorney-client privilege, work product, based on

10    Upjohn.  Instruct the witness not to answer.

11                         MR. NEAL:  Mr. Brooks, just so I

12    can understand, and I am not going to get into the

13    issue of privilege because you and I are going to

14    disagree on that, but when we talk to Mr. Lassoff

15    and I ask him the same conversation, are you going

16    to instruct Mr. Lassoff not to answer, too, on the

17    basis of the same privilege?

18                         MR. BROOKS:  If you ask

19    Mr. Lassoff to tell you what he told somebody in

20    the course of this investigation, I will stand by

21    that instruction.

22               If you ask Mr. Lassoff what he meant

                                                                    203

177645.txt

1    when he said this, what the basis was for his

2    saying this, what his understanding is, that's all

3    fair game.  But what's not fair game are the fruits

4    of my investigation.

5    BY MR. NEAL:

6        Q    All right.  Let me just ask you, without

7    getting into conversations with Mr. Lassoff, do you

8    know what he meant -- do you now what is meant by a

9    "bad date code batch"?

10                   MR. BROOKS:  Is your question

11   does the witness know what is meant generally?  Is

12   your question --

13                   MR. NEAL:  That's exactly what

14   my question --

15                   MR. BROOKS:  Or is your question

16   does he know what is meant by Mr. Lassoff when he

17   says it in this memo?

18   BY MR. NEAL:

19       Q    I said other than conversations with

20   Mr. Lassoff or this memo, did you ever hear of a

21   bad date code batch regarding the ballasts that

22   were sent to Forum?

204

1        A    That exact term is not used within my

2    company.

3        Q    He goes on to say in this e-mail:  I

4    believe -- he says:  I am fully aware that the 600

5    units -- and then he cites the units at issue

6    here -- were manufactured in 1999, and I believe

7    that was the basic year of the bad batch.

8                   He goes on to say:  Forum has been
                          Page 155

177645.txt

9    afraid to sell these units in fixtures other than

10   original Amtrak because of the reported failures.

11          Do you know what Mr. Lassoff is talking

12   about there?

13      A    No.

14      Q    Have you ever heard anything like that?

15      A    Like what?

16      Q    Like that sentence I just read to you?

17      A    This appears to me to be poor English.

18   I don't know exactly what's meant.

19      Q    Okay.  He goes on to say:  The Amtrak

20   fixtures were made in 2000 through 2001 but were

21   not delivered or energized until late 2002/early

22   2003.

                                                    205

1           Do you know what Mr. Lassoff means by

2    that?

3       A    Do I know what that sentence means?

4       Q    Yeah.

5       A    Do I know what he meant by the sentence?

6       Q    Do you know what that sentence means?

7       A    That sentence would seem to indicate

8    that these fixtures were manufactured in 2000 and

9    2001 and were not installed and had power applied

10   to them until late 2002 or early 2003.

11      Q    When you say the "fixtures," you mean

12   the entire fixture?

13      A    Luminaires.

14      Q    The fixtures with the ballasts included,

15   not the ballasts themselves; correct?

                     Page 156

177645.txt

16      A    Correct.

17      Q    Okay.  I'm not going to mark all

18   these -- in order to save some time, but I'm going

19   to review or read a couple of entries from some of

20   your document production in this case.  These are

21   documents which you reviewed and you -- pursuant to

22   your search have been produced, so I take it you

206

1    are familiar with them.

2              I am going to refer to first Advance

3    Bates No. 39 in your document production.  It is a

4    May 16th, 2005 e-mail from Mr. Lassoff to Barbara

5    Ponce and others.

6              It states as follows.  I am just going

7    to read a portion and then I am going to ask you a

8    question:  Barbara, as you are aware, Advance

9    through Forum, Inc. fixtures has had ongoing

10   problems in various Amtrak facilities.  The major

11   problem has been with the VCN2M32MC ballast.

12             Do you know what major problem

13   Mr. Lassoff is referring to in this May 16th,

14   2005 e-mail?

15                  MR. ZOFFER:  Objection.

16                  MR. BROOKS:  Objection, the

17   e-mail -- just objection.

18                  THE WITNESS:  If I know exactly

19   what Mr. Lassoff was referring to?  No.  I can

20   speculate but I don't think I should.

21   BY MR. NEAL:

22      Q    Well, what do you think he is talking

207

Page 157

177645.txt

```
 1   about?
 2       A    The two cases that we have been
 3   discussing.
 4       Q    So the major problem?
 5       A    Providence and Philadelphia locations.
 6                  MR. BROOKS:  Off the record for
 7   a second.
 8       (Discussion held off the record.)
 9       (Deposition Exhibit No. 79 - Bates stamp
10       Advance 00051 - was marked for
11       identification.)
12   BY MR. NEAL:
13       Q    Exhibit 79 has been put before you.
14   It's a June 1, 2005 e-mail that you produced in
15   this case, Advance control number 51.  It is an
16   e-mail from -- looks like two people perhaps, but,
17   you know, it says Mike and Barbara Ponce, and it's
18   to a Richard Say, and it copies other people.
19       A    Mm-hmm.
20       Q    It says:  Based on the information
21   provided by Barbara, there appears to have been an
22   issue with T1 inductance being low.
```

                                                        208


```
 1              Do you know what he's talking about
 2   there, sir?
 3                  MR. BROOKS:  Objection, asked
 4   and answered.  Go ahead.
 5                  THE WITNESS:  Yeah, we saw in
 6   some of these reports identification of the T1, T1
```

Page 158

177645.txt
7  inductance, I-N-D-U-C-T-A-N-C-E.

8  BY MR. NEAL:

9       Q    Again, just tell me what "T1" means?

10      A    It is a transformer designation.

11      Q    Okay.  It goes on to say:  Although

12  there were other defects on some returns, the

13  majority related to T1.

14           Do you see that?  Do you know what the

15  other defects they are talking about there, sir?

16                MR. BROOKS:  I object to that

17  question, to this whole line of questioning on the

18  following grounds:  Statute of limitations motions

19  by their nature assume the merits of the case are

20  decided in favor of the non-moving party for the

21  purposes of the motion.  The entire interrogation

22  conducted by you, Mr. Neal, has been on nothing but

209

1  the underlying merits of the case and is in

2  violation of the Court's order.

3                MR. NEAL:  You are completely

4  wrong but you may answer the question, sir, unless,

5  of course, Mr. Brooks will instruct you not to

6  answer again.

7                MR. BROOKS:  I am not going to

8  instruct not to answer, but these questions are all

9  in violation of the Court's order.

10                MR. NEAL:  Right.  You can take

11  that up with Judge Friedman.

12                THE WITNESS:  Can you please

13  repeat the question?

14                MR. NEAL:  Read it back, please.
                      Page 159

177645.txt

15          (The reporter read the record as requested.)

16                    THE WITNESS:  We read here a

17     record of transistor failures.  There may be

18     others, but I have evidence of that here.

19     BY MR. NEAL:

20          Q     Any others that you are aware of, sir?

21          A     Not that I am aware of sitting here

22     today.  I did not prepare for this type of

210

1     question.

2          Q     Okay.  Other than the documents that

3     have been produced by your counsel to us that you

4     reviewed in anticipation of this deposition, other

5     than what's identified in these documents, are you

6     aware of any other defects with the ballasts that

7     were ultimately included in the fixtures that were

8     sent to Amtrak?

9          A     No, I'm not.

10          Q     Okay.  I am going to direct your

11     attention to -- well, I'm not.  Actually I am going

12     to read from another e-mail.  It is an

13     August 16th, 2005 e-mail.

14                    MR. BROOKS:  Counsel, do you

15     have a Bates number on that?

16                    MR. NEAL:  I do.  It's Advance

17     00066.

18     BY MR. NEAL:

19          Q     This one is from Barbara Ponce to Al

20     Lassoff.

21                    MR. BROOKS:  Just note my

Page 160

177645.txt
22   continuing objection to this line of questioning.

211

1                        MR. NEAL:  Noted.
2    BY MR. NEAL:
3        Q    It says:  I am faxing to you a copy of
4    the RA for (600N) VCN2M32MC ballasts for Forum.
5    Then there is a: (600N) ICN2P32SC replacement
6    ballasts are scheduled for delivery 8/23/05.
7        A    Mm-hmm.
8        Q    Do you know what Ms. Ponce is talking
9    about there, sir?
10       A    Yes, it's my understanding that as a
11   goodwill gesture to our customer, we sent them
12   replacements for ballasts that were out of
13   warranty.
14       Q    Okay.  Now, this -- I take -- these are
15   the same ballasts that were part of the luminaries
16   that we have been talking about in this case;
17   correct?
18                       MR. BROOKS:  Objection, lack of
19   foundation.
20                       MR. NEAL:  Withdrawn.
21   BY MR. NEAL:
22       Q    Are these the same ballasts -- strike

212

1    that.
2                        Are these ballasts the same light
3    fixtures that Forum manufactured for Amtrak that
4    are at issue in this litigation?
5                        MR. ZOFFER:  Objection, form.
                         Page 161

177645.txt

6                          MR. BROOKS:  Yes, objection,
7      foundation.
8                          THE WITNESS:  I don't think your
9      question was proper English.  Can you read it back?
10                         MR. NEAL:  You may be right.
11          (The reporter read the record as requested.)
12                         THE WITNESS:  Ballasts are not
13     light fixtures.
14     BY MR. NEAL:
15          Q    Okay.  Are these -- were these ballasts
16     to be used in the light fixtures for the Acela line
17     stations?
18                         MR. BROOKS:  Objection,
19     foundation.
20     BY MR. NEAL:
21          Q    Let me withdraw the question.  Let's
22     just take it step by step.

                                                    213


1                    Okay, these are ballasts; correct?
2           A    Yes.
3           Q    Where were they going?
4           A    Where were they going?
5           Q    Yeah, where were you shipping the
6      replacement ballasts to?
7           A    Forum.
8           Q    For what purpose?
9           A    In exchange for VCN2M32MC ballasts that
10     were out of warranty.
11          Q    Okay.  And what were those ballasts
12     going to be used in, if you know?

                          Page 162

177645.txt

13      A    I don't know.

14      Q    You don't know if they were going to be

15  used in the Amtrak fixtures?

16      A    I don't know.

17      Q    Well, if they weren't related to the

18  Amtrak fixtures, then why did you produce this

19  document to your counsel and why did your counsel

20  produce it to us?

21                  MR. BROOKS:  He can't answer

22  that question.  Objection.

                                                        214

1  BY MR. NEAL:

2      Q    You can answer the question, sir.

3      A    I seem to remember that there was in the

4  request for production, I thought it was -- I

5  thought it was all of the production -- all of the

6  documents concerning the same model with Forum.

7  Maybe I made a mistake.

8      Q    You said it was done as a goodwill

9  gesture; right?

10      A    Yes.

11      Q    For products that were out of warranty?

12      A    That's my understanding.

13      Q    Okay.  Well, what products were out of

14  warranty?

15      A    The VCN2M32MCs.

16      Q    Okay.  And do you know what that part

17  was ultimately going to be a product of?

18      A    No.

19                  MR. BROOKS:  Objection, asked

20  and answered.

                    Page 163

177645.txt

21  BY MR. NEAL:

22      Q    I guess you testified earlier that --

215

1   withdrawn.

2              In your document production -- first of

3   all, let's go back to this exhibit -- I'm sorry,

4   this e-mail.  It says:  I am faxing to you a copy

5   of the RA for -- and it gives a number.

6              In the document production I didn't see

7   an RA that would correspond with this date and

8   that's why I wanted to ask you about it.  Are you

9   aware of an RA that corresponds to this time

10  period, sir, 8/23/05?

11      A    I don't think I looked for that.

12      Q    Okay.  Well --

13      A    I -- you know, there was quite a bit of

14  e-mail that I was reading through, and I didn't

15  think the RA was significant.  Or I didn't catch

16  there was an RA.  I didn't know that it was going

17  to be significant.

18      Q    And your testimony, sir, is you don't

19  know as we sit here today whether or not these

20  replacement ballasts were ultimately to become a

21  part of the Amtrak luminaries; correct?

22      A    My understanding is these replacement

216

1   ballasts could not be part of the Amtrak

2   luminaries.

3      Q    And why not?

Page 164

177645.txt
4      A    They are a larger ballast.

5                   MR. NEAL:  Mr. Brooks, since

6      there seems to be an issue here with respect to the

7      shipment of replacement ballasts as late as August

8      of '03, I'd ask that we see the RA that's

9      associated with this particular shipment.

10                   MR. BROOKS:  I'll make a note of

11     your question.  I'll also point out to you that

12     there are ample documents in the record that have

13     been produced to you that demonstrate that there's

14     no relationship between these ballasts in this

15     case.

16                   MR. NEAL:  I found it myself.

17     BY MR. NEAL:

18      Q    Let me -- if you have your document

19     production in front of you, can you please turn to

20     Advance document 00069.

21                   Do you see that document, sir?

22      A    Yes, I do.

217

1       Q    Okay.  And it's the document in the

2      upper right-hand corner is dated 8/19/05, which we

3      already talked about what that means.

4                   Does this return authorization also deal

5      with defective Advance ballasts?

6                   MR. ZOFFER:  Objection to form.

7                   THE WITNESS:  If this return

8      authorization is the one to go with the 600

9      VCN2M32MCs, it would not involve ballasts that were

10     defective when they left our factory necessarily.

11     BY MR. NEAL:

Page 165

177645.txt

12          Q     Do you know --

13                      MR. BROOKS:   In the interest of

14    time and to help you along here, if you are really

15    interested in resolving rather than confusing this

16    issue, I would direct you to documents issued by

17    Advance, Bates Nos. 59 through 60.

18                      MR. NEAL:   Well, I am not sure

19    that clears it up.

20    BY MR. NEAL:

21          Q     Okay.  With respect to the document I

22    just referred you to, again, Advance Bates No.

                                                        218


1    00069, are you aware what these replacement

2    ballasts were to be used for?

3          A     No.

4          Q     You don't know -- again, you don't know

5    whether or not they were to be used in Amtrak

6    luminaries?

7                      MR. BROOKS:   Objection, asked

8    and answered.

9    BY MR. NEAL:

10          Q     You can answer.

11          A     My understanding is they were not.

12          Q     And what is that understanding based

13    upon?

14          A     Discussion -- I'm sorry.

15          Q     I take it Mr. --

16                      MR. BROOKS:   Well, he's

17    already --

18    BY MR. NEAL:

                        Page 166

177645.txt

19       Q    Mr. Brooks is pointing you to the

20    answer?

21       A    I have been instructed.  Well --

22                 MR. BROOKS:  He's already

                                                      219


1    answered the question.  And he can answer it again.

2                 THE WITNESS:  This is a larger

3    ballast -- this is not the same -- this is not a

4    direct replacement for this other ballast.  It is a

5    larger ballast.

6    BY MR. NEAL:

7        Q    And the document you are pointing out is

8    what?

9        A    I am pointing to this return

10   authorization, Bates 69.

11                MR. BROOKS:  Bates number 69.

12   BY MR. NEAL:

13       Q    The same document Mr. Brooks directed

14   your attention to, I take it?

15                MR. BROOKS:  Yes, because it is

16   the same document you directed his attention to.

17   BY MR. NEAL:

18       Q    I direct your attention to what is

19   previously marked as Exhibit 69.

20       A    Sorry, Advance 69?

21       Q    Sixty-nine, Exhibit 69.  Exhibit 69.

22   Not Advance 69.

                                                      220


1        A    Oh, Exhibit 69.

2                 MR. BROOKS:  Was that put in
                     Page 167

177645.txt

3    today?

4    BY MR. NEAL:

5        Q    Yeah, that was -- this is this.

6    (Indicating.)

7        A    Yes, sir.

8        Q    The -- I know you already testified that

9    you don't have a perfect recall as to why this

10   document was generated, what the different columns

11   mean, but you will see on the first page of the

12   document where it deals with the Acela relamping

13   project, in the second column there's dates and

14   they are all 10/29 or 10/30.  Do you know why that

15   would be?

16       A    I thought I saw an indication that they

17   corresponded to the date of the letter.

18   November 25, 2003 letter indicates that there was

19   an RA6204514 on 10/29/03, so I would expect that

20   that's what the entry is referring to.

21       Q    Okay.  If you can turn to Exhibit 66.

22       A    Yes.

221

1        Q    We have already gone through this letter

2    at some length so I am not going to belabor the

3    issue, but if you look at the bottom of this, the

4    bottom half of the document says:  The following

5    are the Amtrak stations we supplied the Advance

6    Centium/Low Profile ECN-2M32-MC ballast.

7             Do you see that?

8        A    Yes, sir.

9        Q    Do you know whether these numbers here

Page 168

177645.txt
10  refer to the initial shipments of ballasts or to
11  replacement ballasts?
12                  MR. BROOKS:  If you know.
13                  THE WITNESS:  I don't know.
14                  MR. NEAL:  I'm sorry.  Could you
15  please read back Mr. Brooks' objection.
16                  MR. BROOKS:  I didn't have an
17  objection.  I said, do you know.
18                  MR. NEAL:  Okay.
19                  MR. BROOKS:  Do you know.
20  BY MR. NEAL:
21      Q    And what was your answer, sir?
22      A    I don't know.

                                                222


1                  MR. NEAL:  That's called
2   coaching the witness, Mr. Brooks.
3                  MR. BROOKS:  If that's what you
4   want to call it --
5                  MR. NEAL:  No, what you do is
6   you go searching for the word "objection," then you
7   say:  Foundation, calls for conjecture,
8   speculation.  You can't tell the witness how to
9   testify, even if it's late in the day, Mr. Brooks.
10                  MR. BROOKS:  Thank you,
11  Professor Neal.  It is now 25 after 4:00.
12                  MR. NEAL:  Well, we are not
13  going to be done at 4:30, so relax.
14                  MR. BROOKS:  Well, we are going
15  to now, so relax. This deposition is over for
16  today, and it's over forever, as far as Philips is
17  concerned, because we have sat here today for hours
                         Page 169

177645.txt

18   of testimony that have nothing to do with statutes

19   of limitations.

20          You have been on notice since early this

21   morning that this witness has a plane to catch.

22   You made representations that you had an amount of

223

1   testimony to ask about, which is far less than what

2   you've actually sought.  And we are at the point

3   now where you've known -- we initially agreed the

4   witness would leave at 4:00.  We have stayed an

5   extra 25 minutes during which time we haven't heard

6   a single question about the statutes of

7   limitations.

8                    MR. ZOFFER:  Mr. Brooks, can I

9   ask one clarifying question before we leave?

10                   MR. NEAL:  No, I am not done

11   asking my questions.

12                   MR. ZOFFER:  Okay.

13                   MR. NEAL:  Let's be real clear

14   about this.  You are terminating this deposition at

15   your peril.  That's your decision.

16                   MR. BROOKS:  I am not

17   terminating it at my peril.  It's 4:30 in the

18   afternoon.  I am terminating it out of

19   reasonableness.

20                   MR. NEAL:  Sir, this deposition

21   commenced at 11:30.

22                   MR. BROOKS:  Not my problem.

224

177645.txt
 1                    MR. NEAL:   11:30 to 4:30 is five
 2  hours.
 3                    MR. BROOKS:   This witness was --
 4                    THE WITNESS:   If we started at
 5  7:00, Mr. Brooks, we wouldn't be to five -- to
 6  seven hours yet.  The Federal Rules require at
 7  least seven hours.
 8                    MR. BROOKS:   For a full-scale
 9  deposition, not one on the limited issue of
10  statutes of limitations.
11                    MR. NEAL:   If you are going to
12  stop the deposition, fine, but let me assure you,
13  as far as I'm concerned, this deposition is
14  continued, and we will go to court on this, so
15  you -- this is your choice.  If you want to come
16  back to DC, follow your counsel's instruction.
17                    MR. BROOKS:   Listen, listen.
18  You go ahead and note whatever further depositions
19  you want, and we will take whatever action is
20  appropriate in response to that.  You have known --
21  this witness was here at the time he was noticed.
22  It is not his fault or my fault that there was an

                                                     225

 1  hour and a half delay in starting this deposition.
 2  We bent over backwards and accommodated all of you
 3  by making an opportunity to have lunch in a very
 4  short period of time.  We went the first two hours
 5  of this deposition without taking a single break.
 6          As the day has gone on, we have done
 7  everything possible and all we have heard are
 8  questions about counsel's investigation and
                        Page 171

177645.txt

9    questions about the merits of this case and

10    questions about quality control and nothing to do

11    with statutes of limitations, okay.

12            The witness, you knew, had to leave at

13    4:00, he stayed at 4:30.  He is close to missing

14    his plane.  He is here from Chicago.  For today the

15    deposition is over.  If you want to notice him for

16    further, if you think you have justification for

17    doing that, go ahead and we will take appropriate

18    action.  Thank you, gentlemen.

19            MR. NEAL:  That is done over my

20    objection.

21        (Time Noted:  4:30 p.m.)

22        (The witness reserved signature.)

                                                    226


1

2

3            *        *        *

4

5            ACKNOWLEDGMENT OF DEPONENT

6

7        I, Robert A. Erhardt, do hereby acknowledge I have

8    read and examined the foregoing pages of testimony, and

9    the same is a true, correct and complete transcription

10    of the testimony given by me, and any changes and/or

11    corrections, if any, appear in the attached errata sheet

12    signed by me.

13

14    _____        _____

15    Date                       Robert A. Erhardt

Page 172

177645.txt

16
17
18
19
20
21
22

227

1              CERTIFICATE OF NOTARY PUBLIC

2        I, Joanne Liverani, the officer before whom the

3    foregoing deposition was taken, do hereby certify that

4    the witness whose testimony appears in the foregoing

5    deposition was duly sworn by me; that the testimony of

6    said witness was taken by me in stenotype and thereafter

7    reduced to typewriting under my direction; that said

8    deposition is a true record of the testimony given by

9    said witness; that I am neither counsel for, related to,

10   nor employed by any of the parties to the action in

11   which this deposition was taken; and, further, that I am

12   not a relative or employee of any attorney or counsel

13   employed by the parties hereto, nor financially or

14   otherwise interested in the outcome of this action.

15

16                        Joanne Liverani,
17                        Registered Merit Reporter
                          and Notary Public for the
18                        District of Columbia
     My Commission expires:
19   July 31, 2010

20

21

22

228

Page 173

177645.txt

1
   Joseph Brooks, Esq.
2  Morgan Lewis
   1111 Pennsylvania Avenue, NW
3  Washington, DC    20004

4       IN RE:   NRPC V. FORUM V. ADVANCE
                 DEPO OF:   ROBERT A. ERHARDT
5

6
   Dear Mr. Brooks:
7
   Enclosed for review is your copy of the above referenced
8  deposition.  Please have the deponent read the copy of
   the transcript and sign the enclosed certificate of
9  deponent.  Also enclosed is an errata sheet which the
   deponent should use to note corrections and the reasons
10 for such corrections.  This and any additional errata
   sheets should be signed and dated by the deponent.
11
   The deponent has thirty days in which to read and sign
12 the transcript.  After the deponent has reviewed the
   copy of the transcript, please return the certificate of
13 deponent and any errata sheets to 1020 19th Street,
   Northwest, Suite 620, Washington, D.C.  20036.
14
   Sincerely,
15
   Joanne Liverani
16

17

18

19

20

21

22
                                                          229


1  ESQUIRE DEPOSITION SERVICES
   1020 19TH STREET, NORTHWEST
2  SUITE 620
   WASHINGTON, D.C.    20036
3
                     ERRATA SHEET
4
   Case Name:  NRPC V. FORUM V. ADVANCE
5  Witness Name:  ROBERT A. ERHARDT
   Deposition Date:  11/3/06
6  Job No.:  177645

                     Page 174



177645.txt

7    Page No.    Line No.    Change

8

9

10

11

12

13

14

15

16

17

18

19

20

21    _____    _____
          Signature                              Date

22