IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FORUM, INC., )<br>)<br>Defendant and )<br>Third-Party Plaintiff, )<br>)<br>v. )<br>)<br>ADVANCE TRANSFORMER, CO. and )<br>SOUTHCO, INC., )<br>)<br>Third-Party Defendants. ) | Civil Action No.: 1:05CV01837<br><br>Judge Paul L. Friedman<br><br>Magistrate Judge Deborah A. Robinson<br><br><br>**FILED ELECTRONICALLY** |

**DEFENDANT AND THIRD-PARTY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT RAISING THE DEFENSE OF THE STATUTE OF LIMITATIONS**

AND NOW, comes Defendant and Third-Party Plaintiff, Forum, Inc., (hereinafter "Forum") by and through its attorneys, Dickie, McCamey & Chilcote, P.C., and files this Motion for Summary Judgment Raising the Defense of the Statute of Limitations. Forum seeks dismissal of all of Plaintiffs' claims in this action and a determination by this Court that the claims set forth in Plaintiff's Complaint are untimely and barred by the statute of limitations. As more fully set forth in the Statement of Points and Authorities in Support of Motion for Summary Judgment and Exhibits attached thereto and incorporated herein by reference, summary judgment is proper in this action and Plaintiff's claims should be dismissed with prejudice.

1

1.  This lawsuit allegedly arises out of Forum's sale of luminaires to Plaintiff, National Railroad Passenger Corporation (hereinafter "Amtrak"), in 1998 and 1999.

2.  Forum designed, manufactured, sold and warranted for a period of one year luminaires to Amtrak that were installed and subsequently used at Amtrak's northeast corridor station platforms. Forum delivered the original luminaires to Amtrak in installments that spanned from August, 1999, to February, 2001. The original luminaires, with the exception of the New London luminaires, were delivered by early 2000. (*See*, **Exhibit "E"** of Forum's Statement of Points and Authorities). Although Amtrak had taken delivery of <u>all</u> of the original luminaires by February, 2001, including the New London luminaires, Amtrak waited until 2005 to file this lawsuit.

3.  On September 16, 2005, Amtrak brought suit against Forum as a result of problems that it allegedly experienced while installing the luminaires. Shortly after Amtrak's October 27, 2005 First Amended Complaint, the parties exchanged F.R.Civ.P Rule 26 initial disclosures and began discovery. During this time, Forum joined as Additional Defendants Southco, Inc. and Advance Transformer, Co., as a result of Forum's learning that the problems alleged by Amtrak originated with the ballasts supplied by Advance and the draw latches or clips supplied by Southco.

4.  On August 25, 2006, and September 12, 2006, this Honorable Court entered Orders of Court, applicable to all parties, which limited discovery to the issue of the statute of limitations. Through those orders, the Court set forth discovery deadlines and briefing schedules applicable to the statute of limitations issue. At this juncture, the parties have completed their discovery efforts as they pertain to the issue of the statute of limitations.

5. Amtrak advanced the following claims against Forum: (a) rejection/revocation of acceptance, (b) breach of contract, (c) breach of implied warranty of good faith and fair dealing, (d) breach of express warranty, (e) breach of implied warranty, (f) negligence, (g) fraud, and (h) unjust enrichment. (*See*, Amtrak's First Amended Complaint.) The various statutes of limitations that apply to each of the aforementioned claims vary and provide for a limitation period of either three years or four years. Each of Amtrak's claims falls outside of the applicable statute of limitations.

6. Amtrak's allegations of negligence and fraud are governed by a three-year statue of limitation. *Prouty v. National R. Passenger Corp.*, 572 F.Supp. 200 (D. D.C. 1983) ("[t]he statute of limitations period for negligence claims is three years.") (citing D.C.Code § 12-301(8)). *See also*, *King v. Kitchen Magic, Inc.*, 391 A.2d 1184, 1185 (D.C. 1978) (claims involving allegations of fraud "must be brought within three years") (referencing D.C.Code § 12-301(7) and (8)). In addition, the District of Columbia's economic loss doctrine precludes Amtrak from recovering under their theories of negligence and fraud. *See*, *RLI Ins. Co. v. Pohl, Inc.*, 2006 U.S.Dist. LEXIS 45958, *9 (D. D.C. 2006) (stating, "the District of Columbia 'has not authorized tort recovery for purely economic losses in a contract setting'").

7. Likewise, Amtrak's claims for breach of implied warranty of good faith and fair dealing and unjust enrichment are also governed by three-year statute of limitations. *Riddell v. Riddell Washington Corp.*, 680 F.Supp. 4, 10 (D. D.C. 1987) (applying D.C.Code § 12-307(7) 3-year statute of limitations to implied warranty of good faith and fair dealing) *aff'd in part*, *rev'd in part* 866 F.2d 1480, 1497-1498 (D.C. Cir. 1989). *See also*, *Construction Interior Systems, Inc. v. Donohoe Companies, Inc.*, 813 F.Supp. 29, 33 n.4 (D. D.C. 1992) (three year statute of limitation period for unjust enrichment). Furthermore, Amtrak's claim for unjust enrichment is

an alternative theory of liability that only finds applicability where a party to an express agreement refutes its existence. *Schiff v. American Ass'n of Retired Persons*, 697 A.2d 1193, 1194 (D.C. 1997); *Bloomgarden v. Coyer*, 156 U.S. App. D.C. 109, 479 F.2d 201, 210 (D.C. Cir. 1973).

8.  None of Forum's conduct, alleged to form the basis of any of Amtrak's claims, occurred within even the four-year statute of limitations for breach of contract and warranty, much less the shorter, three-year statute of limitations for Amtrak's claims discussed above.

9.  Amtrak's breach of contract, breach of warranty, breach of implied warranty and revocation of acceptance claims are governed by the four-year statute of limitations set forth in the District of Columbia's version of the Uniform Commercial Code at D.C.Code § 28:2-725. As that provision sets forth, a claim for breach of contract must be commenced within four years of the date of the breach, irrespective of any aggrieved party's alleged lack of knowledge of said breach, and a claim for breach of warranty must be commenced within four years from the date on which the goods were delivered. D.C.Code § 28:2-725(1) and (2); *Long v. Sears Roebuck & Co.*, 877 F.Supp. 8, 13-14 (D. D.C. 1995) (recognizing, "the statute of limitations that applies to the claims for breach of express and implied warranties is four years"). *See also*, *Firestone & Parson, Inc. v. Union League of Philadelphia*, 672 F.Supp. 819 (E.D. Pa. 1987) ("...whether or not the right to revoke acceptance was timely asserted, litigation predicated upon it falls within §2725.").

10.  As to Amtrak's claim for breach of contract, Amtrak's luminaire program was divided into two phases. The first phase involved development of an acceptable prototype and the second phase involved the manufacture of luminaires in reliance upon and in accordance with the prototype accepted by Amtrak. Based upon the prototype submitted by Forum, Amtrak

approved Forum's design, awarded Forum Phase 2, and directed Forum to manufacture luminaires for its various stations pursuant to the accepted prototype. The Phase 2 award came on May 20, 1999. (*See*, **Exhibit "D"** of Forum's Statement of Points and Authorities). When Forum manufactured the requested luminaires during Phase 2, Forum was merely mass producing the luminaires in accordance with the specifications that Amtrak had already accepted.

11. Thus, the date on which Amtrak awarded Forum Phase 2, is the latest date by which Forum would have committed any alleged breach of contract in this case. Accordingly, May 20, 1999, is also the triggering date on which the applicable four-year statute of limitations began to run. Amtrak has failed to provide any evidence which refutes the May 20, 1999 triggering date. The corresponding four-year statute of limitation period consequently expired on May 19, 2003. Amtrak's 2005 breach of contract claim, therefore, is untimely and barred.

12. As to Amtrak's breach of warranty claims, Forum's corporate designee and most senior officer testified during deposition that Forum began delivering the subject luminaires in August, 1999 (Boston) and completed its last shipment by February, 2001 (New London). (*See*, **Exhibit "C"** of Forum's Statement of Points and Authorities). (*See also*, **Exhibit "E"** of Forum's Statement of Points and Authorities).

13. Documents produced by Amtrak which state that "[t]he new lights were originally installed [and, therefore, delivered] at the seven stations in late 1999 and early 2000" are probative of the fact that the luminaires were delivered to Amtrak no later than February 2001. (*See*, **Exhibit "F"** of Forum's Statement of Points and Authorities).

14. Additionally, Amtrak's "HRS Platform Lighting Luminaire Review of Design, Prototype Development and Installation", prepared by Amtrak's Engineering Department on July 14, 2000, establishes that luminaires were installed—and, therefore, by definition also

delivered—to various Amtrak stations by July, 2000. (*See*, **Exhibit "H"** of Forum's Statement of Points and Authorities). Applying the UCC's four year statute of limitation, Amtrak's breach of warranty claims with respect to the stations identified in this report, would have expired in July, 2004, over one year prior to Amtrak's initiation of this lawsuit.

15.     Various invoices and correspondence exchanged by and between the parties confirm the delivery dates for the subject luminaires. For example, the Boston luminaires were delivered by August 30, 1999; the Providence luminaires were delivered in October, 1999; the Philadelphia luminaires were delivered prior to February, 2000; the Wilmington luminaires were delivered prior to February, 2000; the Washington luminaires were delivered by March 16, 2000; the Baltimore luminaires were delivered by August 16, 2000; the New London luminaires were delivered in and around February, 2001, as they were already installed one month later. (*See*, **Exhibit "G"** of Forum's Statement of Points and Authorities).

16.     Therefore, employing the latest delivery dates in this case, Amtrak's breach of warranty claims for all deliveries of fixtures at issue in this case expired in February, 2005, well before Amtrak's September 16, 2005, Complaint.[1] As Amtrak's breach of warranty claims are subject to a latest triggering date of February, 2001, and a four-year statute of limitation, Amtrak's breach of warranty claims are barred and should be dismissed.

17.     Amtrak attempted to revoke acceptance of the luminaires by way of letter dated April 27, 2005. (S*ee*, Count 1, ¶ 31 of Amtrak's First Amended Complaint). As with Amtrak's claims for breach of contract and breach of warranty, its claim for revocation of acceptance is barred by the applicable four-year statute of limitations found in D.C.Code § 28:2-725. Amtrak's claim for revocation of acceptance relies solely on the grounds that Forum breached its warranty

---

[1] Defendant notes that even applying the last shipment date of February 2001 for purposes of triggering Amtrak's breach of contract claim, Plaintiff's claim in this respect would also be barred.

by supplying luminaires which were non-conforming to the Design Specifications. As such, its right to revoke is based upon a finding that Forum breached the warranty to supply conforming luminaires and both claims are barred by the applicable four-year statute of limitations. *Firestone & Parson, Inc. v. Union League of Philadelphia*, 672 F.Supp. 819 (E.D. Pa. 1987) ("...**whether or not the right to revoke acceptance was timely asserted, litigation predicated upon it falls within §2725.**") (emphasis added); *Grus v. Patton*, 790 S.W.2d 936 (Mo. Ct. App. 1990) ("...our decisions are uniform in holding that a revocation of acceptance or recission [sic] must be made long before the expiration of four years. No decision has held that a revocation of acceptance may be made after such period."). *See also*, *Luddeke v. Amana Refrigeration, Inc.*, 387 S.E.2d 502 (Va. 1990).

18.     Amtrak's revocation of acceptance claim is also barred by its failure to revoke acceptance within a reasonable time as required by Section 2-608 of the D.C. Uniform Commercial Code. That provision requires that "[r]evocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it." D.C. Code §28:2-608.

19.     Documents produced by Amtrak reveal that Amtrak's engineering department knew of the alleged non-conformity of the Forum-supplied luminaires <u>no later than July 14, 2000</u>, when it finalized a formal report on the topic of the fixture's alleged non-conformities entitled, "HRS Platform Lighting Luminaire Review of Design, Prototype Development and Installation". (*See*, **Exhibit "H"** of Forum's Statement of Points and Authorities) (hereinafter "July 14, 2000 Amtrak Engineering Report"). Amtrak's Engineering Department began its investigation into the alleged non-conformities, and thus became aware of them, well before

finalizing its July 14, 2000 report and, in fact, had prepared a draft report by February 16, 2000. (*See*, **Exhibit "N"** and **"O"** of Forum's Statement of Points and Authorities).

20.     Both the draft and final reports detail Amtrak's engineering department's investigations into the various sites where the Forum-supplied luminaires had been installed. By July, 2000, the observations reported by Amtrak's engineering department included, for example: excessive thermal ratcheting of the luminaires; luminaire lenses bowing, causing loss of luminaire seal and ingress of contaminants including water and ice; lens retention clamps "popped into the open position"; luminaire straps broken apart; luminaire endplate knockouts without protective bushings; and wire connectors falling off, among other observations.

21.     The July 14, 2000 Amtrak Engineering Report further details how Amtrak's engineering department believed the luminaires specifically failed to conform to the Design Specifications, identifying sections of these specifications which Amtrak's engineering department felt the luminaires did not comply with. The July 14, 2000 Amtrak Engineering Report went on to conclude that "[t]his product is showing signs of poor quality and failure to operate as designed in all locations surveyed." (*See*, **Exhibit "H"** of Forum's Statement of Points and Authorities). (*See also*, **Exhibit "L"** of Forum's Statement of Points and Authorities - describing the July 14, 2000 Amtrak Engineering Report as "highlight[ing] where the Forum light [luminaires] deviated from the light specification[s] and provides evidence of Forum's use of deficient materials and workmanship.").

22.     As clearly evidenced by the July 14, 2000 report prepared by Amtrak's engineering department, Amtrak knew of the grounds for revocation of acceptance of the luminaires no later than July 14, 2000. Amtrak's April 27, 2005 letter attempting to revoke

acceptance more than five years after discovering the grounds for revocation is not within a "reasonable time" as required by D.C. Code §28:2-608.

23.   Amtrak, attempts to claim that the luminaires contain latent defects, "*inter alia*, that the light luminaires do not conform with the Design Specifications and other requirements of the Contract." (See, Count I, ¶ 22 of Amtrak's First Amended Complaint). Amtrak claims it discovered the alleged latent defects from an April 6, 2005 MET Laboratories report. A review of the 2005 MET Report evidences that it is merely a reiteration and re-categorization of the same problems with the luminaires that Amtrak's own engineering department identified nearly five years previously in the July 14, 2000 Amtrak Engineering Report and which are the same problems which are alleged to form the basis of Plaintiff's Amended Complaint in this case. (*See*, **Exhibit "P"** of Forum's Statement of Points and Authorities).

24.   The specific problems with bowing lenses, loss of seal, water and contaminant ingress, and faulty clips and lens straps which are identified as problems in the 2005 MET Report are the very same problems, with the very same luminaires, identified in the July 14, 2000 Amtrak Engineering Report. (*Compare*, **Exhibit "H"** of Forum's Statement of Points and Authorities, *with* **Exhibit "P"** of Forum's Statement of Points and Authorities).

25.   Amtrak's asking MET Laboratories to confirm the same problems five years later does not make effective Amtrak's attempt to revoke in 2005. *See*, *Knapp Shoes, Inc. v. Sylvania Shoe Manufacturing Corp.*, 72 F.3d 190 (1st Cir. 1995) ("Nothing ... suggests that a buyer can accept deliveries of a vast number of items over a period of a year and a half and then suddenly revoke the acceptance of all of them based on defects whose presence was known or suspected during the entire period."), *cert. denied*, 517 U.S. 1245 (1996); *Sobiech v. Int'l Staple and Machine Co., Inc.*, 867 F.2d 778, 781 (2d Cir. 1989) (Buyer's attempted revocation of

acceptance of onion packaging equipment was not within a reasonable time, as buyer tested equipment for four months prior to purchase and attempted revocation three years subsequent to purchase.); *MacSteel International USA Corp. v. Superior Products Co., Inc.*, 2002 WL 472288 (N.D. Ill. 2002) (buyer of goods who tested the goods five months prior to attempting to revoke acceptance "cannot meet the 'reasonable time' element required for an effective revocation.").

26.     As set forth above, all of the claims advanced by Amtrak are time barred by the applicable statutes of limitations. Therefore, summary judgment is proper in this action and Amtrak's claims should be dismissed with prejudice.

WHEREFORE, Defendant and Third-Party Plaintiff, Forum, Inc., respectfully moves this Honorable Court to grant its Motion for Summary Judgment and dismiss Plaintiff's claims in their entirety, with prejudice.


Dated:  February 12, 2007                     Respectfully submitted,

                                              By:    /s/ *Steven W. Zoffer*
                                                     Steven W. Zoffer, Esquire
                                                     D.C. Bar #435772
                                                     Douglas M. Grimsley, Esquire
                                                     D.C. I.D #PA0019
                                                     Dickie, McCamey & Chilcote, P.C.
                                                     Two PPG Place, Suite 400
                                                     Pittsburgh, PA  15222
                                                     (412) 281-7272 (Telephone)
                                                     (412) 392-5397 (Facsimile)
                                                     szoffer@dmclaw.com
                                                     dgrimsley@dmclaw.com

                                              *Counsel for Defendant/Third-Party Plaintiff, Forum, Inc.*

.

**CERTIFICATE OF SERVICE**

I, Douglas M. Grimsley, Esquire, hereby certify that a true and correct copy of the foregoing Motion for Summary Judgment Raising the Defense of the Statute of Limitations has been served this 12th day of February, 2006, electronically and via U.S. first class mail, postage prepaid, to the following counsel of record:

Stephen M. Ryan, Esquire
Stephen L. Neal, Jr., Esquire
Manatt, Phelps & Phillips, LLP
700 12th Street, N.W., Suite 1100
Washington, DC  20005
*Counsel for Plaintiff*

Joseph Brooks, Esquire
Wade B. Wilson, Esquire
Morgan, Lewis & Bockius, LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
*Counsel for Advance Transformer, Co.*

Russell J. Ober, Jr., Esquire
Patricia L. Dodge, Esquire
Meyer, Unkovic & Scott LLP
1300 Oliver Building
Pittsburgh, PA  15222-2304
*Counsel for Southco, Inc.*

                                     ___/s/ *Douglas M. Grimsley*___
                                     Douglas M. Grimsley, Esquire