NATIONAL RAILROAD PASSENGER CORPORATION
INTEROFFICE MEMORANDUM

DATE: April 10, 2002
TO: Roy Wiegand, Senior Director, Audits
FROM: Gary Eckenrode
SUBJECT: Liability Question Under Contract No. C093-02853

RE: Reply to Your April 02, 2002, IOM

In reply to your interoffice memorandum dated April 2, 2002, seeking my review and input I offer the following:

Background

Procurement does not have the staff, technical expertise or even the responsibility to handle acceptance and/or quality assurance aspects pertaining to the work performed on behalf of Amtrak. Additionally, in most situations the travel time and the expense associated with routine or periodic site visits by procurement would be prohibitive. In reality, procurement many times never even sees the project site or does so only at the pre-bid conference. For the most part, the oversight of contractor performance and the acceptance or rejection of their work is a function of the Amtrak Engineering staff or is relegated to outside engineers hired to represent Amtrak Engineering interests.

Likewise, the "separation of duties" concept for the purpose of distinguishing tasks associated with contract placement from those of acceptance or receipt of the actual work requires that these responsibilities do not overlap one another. Amtrak Engineering thereby provides the local presence and represents Amtrak's interests on a daily or as needed/available basis at each job site. Ultimately, the acceptability, testing and quality compliance of work performed as per the technical specifications are engineering functions within Amtrak and not procurement's. It is Amtrak Engineering's role to accept or reject the work as it progresses, match schedule to the contract period of performance, approve payments, prepare punch lists items, identifying any items or issues that are non-compliant with the contracted technical specifications and authorize conditional and final project acceptance.

The interaction of the Amtrak Engineering (or after acceptance and occupancy by the facility manager or equivalent) with procurement is primarily the source or notice of any contractor deficiencies or warranty claims. Upon such notice or claim, procurement works with the claimant (engineer) toward interpreting contract provisions in conjunction with the Amtrak legal department to establish the evidence for establishing the "proof of claim". Attempts are then made to negotiate a remedy/settlement or more rarely initiate legal recovery.

Without a valid claim and without any "proof of claim" the exercise of pursuing negotiations or other efforts aimed at recovery are rather mute.



Amtrak 003931

1:05CV01837
(PLF/DAR)

Page 2

Question At Issue

Generally, whenever the material acquisition (Forum) is accomplished separately from its installation (in this case Perroni/sub Ostrow) and things go awry, it invariably leads to finger pointing. This is what appears to have happened here.

Amtrak HSR Stations/Stations Planning specified Forum as the manufacturer of the lighting to bring about standardization and continuity at various stations for maintenance purposes. According to Amtrak Station Planning, Ostrow's installation was not in accordance with Forum's installation requirements that involved "specialized techniques" to install them correctly. I have also been told that at the time of installation Forum had expressed concern in writing that the installations being performed at Route 128 were not in accordance with Forum's manufacturing instructions. I have also been told that Forum's offer to provide off-site installation training was refused and that when Forum went the extra step to provide voluntary on-site help to assist in the installation, this assistance was also largely ignored or downplayed. The gist of the problem as I understand it was that Forum's light assemblies were being disassembled when they should have remained intact and installed as "factory sealed units" without any disassembly.

Another side of the story comes from Amtrak Construction Engineering that oversaw the installation of the lighting. From what I have been able to learn, Amtrak Engineering at the job site does not share the belief that Ostrow's installation was deficient in any way. I cannot provide you with an extensive review of the original installation lighting contract that was not placed by myself or by members of my procurement construction staff. If you have not already, I suggest that you contact the High Speed Rail Group Contract Staff that administered this contract directly in order to obtain the details related to that contract and to obtain their input or to answer any of your questions. You can also confirm Amtrak Station Planning's contention that Forum was not responsible for providing a defective or faulty lighting product if you have not already done so. Without some common agreement among "us" (Amtrak), any "proof of claim" will remain elusive and extremely difficult to establish let alone pursue in negotiations or through legal action means.

The prohibitive cost of litigation combined with the inability to establish "proof of claim" or even internal agreement as to responsibility is not very conducive to recovering any damages.

Amtrak 003932

Page 3

I could be wrong, but I do not recollect that my staff or I was ever requested to pursue warranty considerations by anyone (either materials or installation wise) associated with any of these contract activities to the best of my knowledge. My staff and I have probably incurred much of the same finger pointing as you in your previous attempts to get clear-cut answers to your "question" from others. However, since I have not been advised or requested to pursue claims against anyone involved, I have no solid rationale or basis for doing so. More importantly, I have not been provided with a verifiable allegation from anyone, let alone any evidence for establishing a "proof of claim". This is the "justification" that I can offer; however, I cannot answer for Amtrak, et al.

Simply put, initial or subsequent orders placed for Route 128 lighting by my staff and myself were authorized, approved and placed in order to satisfy safety concerns and to obtain occupancy permits to allow use of this High Speed Station that at that time was said to be was critical. This need was made even more critical following the discovery that a temporary certificate of occupancy associated with the start-up of service had never been finalized and had, in fact, expired. If you have ascertained or determined that a claim exists and is worth pursuing, please present it along with the evidence and proof you feel supports it. If it is a contract under my area, I will request that Amtrak legal then review this information and offer their opinion as to the cost to litigate versus the prospects of succeeding with any recovery.


cc: G. Dillon
    E. Taylor
    K. Kulick
    D. Pasquella

Amtrak 003933