IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL RAILROAD PASSENGER CORPORATION, )
)
)
Plaintiff )    Civil Action No.  1:05CV01837
v. )
)    District Judge Paul L. Friedman
FORUM, INC., )
)
Defendant/ )    MEMORANDUM OF POINTS AND
Third Party )    AUTHORITIES
Plaintiff )
v. )    ELECTRONICALLY FILED
)
ADVANCE TRANSFORMER, CO. and )
SOUTHCO, INC., )
)
Third Party )
Defendants. )
)

### THIRD PARTY DEFENDANT SOUTHCO, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Third-party defendant Southco, Inc. ("Southco") has filed a Motion for Summary Judgment pursuant to this Court's Minute Order dated August 25, 2006 and Order dated January 12, 2007. This Memorandum of Points and Authorities is in support of Southco's Motion.

## STATEMENT OF FACTS

### The Parties' Relationship

Defendant Forum, Inc. ("Forum") is a Pennsylvania corporation which is engaged in the business of manufacturing lighting fixtures for commercial installations.[1] In approximately mid-1998, National Railroad Passenger Corporation ("Amtrak") contacted defendant Forum about supplying lighting fixtures to Amtrak (the "Fixtures") for use in stations along the Northeast Corridor route, which extends from Washington, D.C. to Boston (the "Northeast Corridor").[2]

In or about April 1999, Forum manufactured and provided Amtrak with a prototype of the Fixtures, which Amtrak reviewed and approved.[3] Forum relied upon other manufacturers for some of the component parts of the Fixtures.[4] Forum approached Southco about supplying latches which would secure the acrylic lenses of the Fixtures (the "Latches").[5] Forum selected a standard latch

---

[1] See Southco's Statement of Undisputed Facts ("Undisputed Facts"), ¶ 1.

[2] Undisputed Facts, ¶ 2.

[3] Undisputed Facts, ¶ 3.

[4] Undisputed Facts, ¶ 4.

[5] Undisputed Facts, ¶ 5.

manufactured by Southco (Item No. 97-30-160-12) and submitted a purchase order dated June 15, 1999 for 39,300 latches.[6]

## The Latches

Southco provided the 39,300 Latches to Forum in seven separate shipments: (1) 8,300 units shipped on or about July 14, 1999 and received by Forum on or about July 16, 1999; (2) 8100 units shipped on or about August 3, 1999 and received by Forum on or about August 5, 1999; (3) 3,500 units shipped on or about August 6, 1999 and received by Forum on or about August 13, 1999; (4) 2,300 units shipped on or about September 2, 1999 and received by Forum on or about September 8, 1999; (5) 5,700 units shipped on or about October 1, 1999 and received by Forum on or about October 6, 1999; (6) 3,200 units shipped on or about December 30, 1999 and received by Forum on or about January 11, 2000; and (7) 8,200 units shipped on or about March 1, 2000 and received by Forum on or about March 3, 2000.[7]  Thus, Forum received all of the shipments of the Latches between July 16, 1999 and March 3, 2000.[8]

After receiving the Latches from Southco, Forum incorporated them into the Fixtures and shipped the Fixtures

---

[6] Undisputed Facts, ¶ 7.

[7] Undisputed Facts, ¶ 9.

[8] Undisputed Facts, ¶ 8.

which it manufactured directly to specific Amtrak stations in accordance with Amtrak's instructions.[9] By February of 2001, all shipments of the initial Fixtures were completed (the "Initial Fixtures").[10]

Amtrak hired the contractors who installed the Fixtures throughout the Northeast Corridor.[11] By April 2002, all of the Initial Fixtures had been installed.[12]

At no time did Southco engage in any direct communications with Amtrak or any of its contractors (other than Forum) with respect to the Northeast Corridor project.[13]

### Reports of Failure

In February or March of 2000, Forum communicated to Southco reports which Forum had received from Amtrak that some of the Latches were rusting and breaking in the field.[14] This issue was also addressed in a letter dated September 25, 2000 from Bernard

---

[9] Undisputed Facts, ¶ 10.

[10] *Id.*

[11] Undisputed Facts, ¶ 11.

[12] Undisputed Facts, ¶ 13.

[13] Undisputed Facts, ¶ 12.

[14] Undisputed Facts, ¶ 15.

Kapus, Manufacturing Manager of Forum, to Cathy Mannix, Quality Technician for Southco.[15]

On October 21, 2000, Paula Garrett, the Senior Manager and owner of Forum, as well as Don Dziubaty, Forum's Vice President, traveled to Boston and observed the installation of the Fixtures at the Boston station.[16] As a result of this inspection, Forum concluded that any problems associated with the Latches were not quality issues but rather installation issues.[17]   Reports of Latches rusting and breaking in the field persisted throughout 2000 and 2001.[18]

### The Southco Warranty

Southco provided a one-year repair and replacement warranty in connection with the sale of the Latches, which warranty began to run upon shipment of the product.[19]

By letter dated July 23, 2001, Michael Bachich, who was at that time the General Manager of Diversified Markets for Southco, advised Paula Garrett that as an accommodation to Forum, the one-year warranty obligations provided for in

---

[15] Undisputed Facts, ¶ 16.
[16] Undisputed Facts, ¶ 17.
[17] Id.
[18] Undisputed Facts, ¶ 18.
[19] Undisputed Facts, ¶ 14.

Southco's standard Terms and Conditions of Sale (the "Terms and Conditions") would begin to run once the Latches were placed in the field.[20]  This proposed warranty period was to be in *lieu* of the one-year warranty period which begins to run upon delivery of the latches as stated in Southco's Terms and Conditions.[21]

## Forum/Amtrak's Inactivity

Forum did not ship any more Fixtures to Amtrak after September or October of 2001.[22]  Between 2001 and 2003, Forum did not report any activity to Southco with respect to the Latches.[23]

This period of inactivity was interrupted on or about April 22, 2003, when Paula Garrett sent a letter to Gerald McCall, Sales Manager for Southco, informing him that the Latches were continuing to fail in the field.[24]  In response to this letter, Southco requested that Forum submit its claims and/or a proposed solution in writing.[25]  Thereafter, Southco received no further communication from Forum regarding issues with the Latches until

---

[20] Undisputed Facts, ¶ 19.

[21] Undisputed Facts, ¶ 20.

[22] Undisputed Facts, ¶ 23.

[23] Undisputed Facts, ¶ 24.

[24] Undisputed Facts, ¶ 25.

[25] Undisputed Facts, ¶ 26.

Forum filed its Third Party Complaint against Southco on May 9, 2006 and effectuated service on or about June 8, 2006.[26]

As against Southco, Forum has asserted the following claims: (1) breach of contract; (2) unjust enrichment; (3) breach of express warranty; (4) negligence; and (4) common law contribution and indemnity.[27] For the reasons discussed below, each of Forum's claims is barred by the applicable statute of limitations. As such, all of Forum's claims against Southco must be dismissed.

## DISCUSSION

### I.    The Laws of the District of Columbia are Applicable

Although Forum and Southco are both Pennsylvania corporations, the law of the District of Columbia is applicable to the claims asserted by Forum against Southco. A statute of limitations analysis in the District of Columbia is to be treated as a procedural matter requiring reference to the filing forum's applicable statute. Gassmann v. Eli Lilly & Co., 407 F. Supp. 2d 203, 208 (D. D.C. 2005); see also, A.I. Trade Finance v. Petra Int'l Banking Corp. 314 U.S. App. D.C. 122, 62 F.3d 1454, 1458 (D.C. Cir. 1995) ("Looking to the D.C. choice-of-law

---

[26] Undisputed Facts, ¶ 27.

[27] Amtrak has not asserted any claims against Southco.

rules, we see that they treat statutes of limitations as procedural, and therefore almost always mandate application of the District's own statute of limitations."). This traditional approach was reaffirmed by the District of Columbia Court of Appeals in May Department Stores v. Devercelli, 314 A.2d 767, 773 (D.C. 1973), and later the same court acknowledged that the practice of applying the statute of limitations as a procedural matter to all cases filed in the District of Columbia was in accordance with the Restatement (Second) of Conflicts of Law § 142 (1971). Hodge v. Southern Railway Co., 415 A.2d 543 (D.C. 1980).[28]

## II.  All of Forum's Claims Against Southco are Barred By the Applicable Statutes of Limitation

**A.  Breach of Contract**

The District of Columbia has adopted the Uniform Commercial Code.  D.C. Code § 28:2-725 (2006) addresses the period of limitations in contracts for the sale of goods and provides, in pertinent part, as follows:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. **By the original agreement the**

---

[28]  The analysis regarding the applicability of the statute of limitations to Forum's claims against Southco is similar under both Pennsylvania law and District of Columbia law.  However, to the extent that Pennsylvania law varies from the law of the District of Columbia with respect to limitation principles, such variance will be noted.

> **parties may reduce the period of limitation to not less than one year but may not extend it.**
>
> (2) A cause of action accrues when the breach occurs, **regardless of the aggrieved party's lack of knowledge of the breach. . . .**

(emphasis added). <u>See also</u>, <u>Lee v. Wolfson</u>, 265 F. Supp. 2d 14 (D.D.C. 2003). The statute of limitations in an action for breach of contract runs from the time of the breach or completion of the contract. <u>Sears, Roebuck & Co. v. Goudie</u>, 290 A.2d 826 (D.C. 1972), <u>cert</u>. <u>denied</u>, 409 U.S. 1049, 93 S.Ct. 523 (1972).

In this case, Southco reduced the limitations period to one year from date of shipment by means of its standard Terms and Conditions of Sale.[29] Forum received all of the shipments of the Latches between July 16, 1999 and March 3, 2000.[30] Thus, any claim by Forum for breach of contract would have to be commenced no later than March of 2001.

In July, 2001, as an accommodation to Forum, Southco offered to modify the one-year period so that it would start to run when the Fixtures were installed. By no later than April of 2002, all of the Fixtures had been installed.[31] Under these

---

[29] Undisputed Facts, ¶ 14.

[30] Undisputed Facts, ¶ 9.

[31] Undisputed Facts, ¶ 13.

circumstances, Forum's contractual claims were required to be brought no later than April of 2003, or otherwise, would be barred. Because Forum failed to bring its breach of contract claim until May of 2006, its claim is time-barred.

Even if this Court were to conclude that Southco's standard Terms and Conditions of Sale did not effectively limit to one year the time within which Forum could bring a breach of contract action, Forum's claim is nonetheless time-barred under the four year period of limitations set forth in D.C.Code § 28:2-725. Assuming for the sake of argument that the Latches did not conform with the terms of the contract between Forum and Southco, breach occurred upon delivery by Southco of the non-conforming Latches to Forum between July of 1999 and March of 2000. Forum failed to commence its action within four years of the last delivery in March of 2000.

Moreover, even viewing this matter in the manner most favorable to Forum, which would require a finding that the "completion of the contract" by Southco did not occur until placement of the Fixtures into service, Forum's claims still do not survive because all Fixtures were placed into service no later than April of 2002. Forum's Third Party Complaint was not filed until May 9, 2006, more than four years after the last installation.

B.    **Unjust Enrichment**

At the outset, it must be noted that the claim of unjust enrichment is unavailable to Forum under the facts of this case. The District of Columbia Court of Appeals, citing its decision in 4934, Inc. v. District of Columbia Dep't of Employment Servs., 605 A.2d 50 (D.C. 1992), recently summarized the applicable principles:

> The modern law of unjust enrichment and restitution has its roots in the common law concept of quasi-contract. At common law there were cases in which the courts, in the absence of an actual contract, nevertheless imposed a duty under certain conditions upon one party to require another in order to avoid the former's unjust enrichment. To achieve this result, the courts devised a legal obligation closely akin to a duty to make restitution, which they called a quasi-contract. From the beginning a quasi-contract has been openly acknowledged to be a legal fiction invented by common law courts to permit recovery by contractual remedy in cases where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise. It is founded on considerations of justice and equity, and on the doctrine of unjust enrichment.

Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co., 870 A.2d 58, 63 (D.C. 2005)(internal citations omitted).

Forum and Southco entered into a legally binding agreement. Pursuant to the parties' agreement, Southco was obligated to supply latches to Forum, and Forum was obligated to pay Southco for the latches. Given the fact that the parties entered into a

contractual arrangement, the remedy of unjust enrichment is unavailable to Forum.

Even if Forum's unjust enrichment claim was viable, however, the period of limitations for an equitable claim such as unjust enrichment is congruent with the limitations applicable to the contractual claims. See, e.g., Constr. Interior Sys., Inc. v. The Donohoe Co., Inc., 813 F. Supp. 29, 33 n.4 (D. D.C. 1992), citing, Hurdle v. American Sec. & Trust Co., 59 App. D.C. 58, 32 F.2d 954, 956 (D.C. Cir. 1929)("If, therefore, the statute of limitations would be a bar to an action at law, it would be equally a bar in equity, the mode of relief making no difference."). As more fully explained above, Forum's contractual claims were not asserted until after the statutory period of limitations had run. Thus, any equitable claim that Forum has alleged against Southco is similarly barred.

**C.    Breach of Express Warranty**

The law with respect to the limitations period for warranty claims relating to a sale of goods is clearly stated in D.C. Code § 28:2-725. Subsection (1) of the § 28:2-725 provides that the parties may agree to reduce the four-year period of limitations to a period of not less than one year. Subsection (2) states that:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. **A breach of warranty occurs when tender of delivery is made**, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

(Emphasis added). <u>See also</u>, <u>Hull v. Eaton Corp.</u>, 263 U.S. App. D.C. 311, 825 F.2d 448, 456 (D.C. Cir. 1987); <u>Long v. Sears Roebuck & Co.</u>, 877 F. Supp. 8, 13-14 (D.D.C. 1995).

Section 2-725 of the District of Columbia's Commercial Code clearly allows a party to construct the limits of its warranty obligations. Here, Southco effectively limited its warranty liability to a one-year repair or replacement warranty.

There is no genuine issue of material fact regarding the limitation of Southco's warranty obligations. Forum's Rule 30(b)(6) designee testified that the obligation on the Southco latches was a one year repair or replacement warranty. Garrett D.T., p. 92. The period of limitations for this one year warranty originally began to run on the date that the Latches were shipped. Garrett D.T., p. 92. The timing of the warranty was later modified so that the warranty period would commence on the date that the Forum Fixtures containing the Southco Latches were installed. Garrett D.T. p. 105. Because all of the Forum Fixtures were installed no later than April of 2002, the latest

-13-

possible date to commence a breach of warranty claim relating to the Southco Latches would have been in April of 2003. Indeed, the warranty period for many of the Latches would have expired substantially earlier given the fact that the installation of the Fixtures began as early as 1999. Garrett D.T., p. 60.

Moreover, even if a four-year period of limitations was applicable to Forum's warranty claim, it would nevertheless be time-barred because the last Fixture was installed no later than April of 2002, and Forum's third party action was not commenced until May, 2006.

It is equally clear that tolling doctrines are largely inapplicable to this rule regarding limitation. In Hull, the United States Court of Appeals for the District of Columbia Circuit declined to apply the discovery rule in a breach of warranty case. In so holding, the Court of Appeals noted that the Uniform Commercial Code itself explicitly establishes when the statute of limitations accrues. Hull v. Eaton Corp., 825 F.2d at 456 & n.12. See also Kuwait Airways Corp. v. American Sec. Bank, N.A., 281 U.S. App. D.C. 339, 890 F.2d 456, 460-61 (D.C. Cir. 1989). Because the period of limitations would have expired, at the very latest, in April of 2003, Forum's breach of express warranty claim filed in May of 2006 is clearly time-barred.

-14-

**D.    Negligence**

Southco is also entitled to summary judgment in its favor with respect to Forum's negligence claim because it is also time barred.

Forum's tort claims are governed by the District of Columbia's three-year statute of limitations. D.C. Code § 12-301(8).[32] Generally, a cause of action accrues for the purposes of the statute of limitations at the time the injury actually occurs. Mullin v. Washington Free Weekly, 785 A.2d 296, 298 (D.C. 2001); Bussineau v. President and Directors of Georgetown College, 518 A.2d 423, 425 (D.C. 1986); Knight v. Furlow, 553 A.2d 1232, 1234 (D.C. 1989). While there is no evidence of record to establish a date when Forum claims that the Latches first began to fail, there is, ample evidence of record to establish that Forum has known of the failure of the Latches since early 2000.

In cases where the relationship between the fact of injury and the tortious conduct is obscure, District of Columbia law provides for the application of a discovery rule. Where the discovery rule applies, the period of limitations will not begin to run until plaintiff knows or reasonably should know that an

---

[32] Under Pennsylvania law, Forum's negligence claim would be governed by Pennsylvania's two year statute of limitations. 42 Pa.C.S. § 5524.

injury has been suffered due to the defendant's wrongdoing. Mullin, 785 A.2d at 298-99; Williams v. Mordkofsky, 284 U.S. App. D.C. 52, 901 F.2d 158, 162 (D.C. Cir. 1990); Bussineau, 518 A.2d at 425; Knight, 553 A.2d at 1234. Under the discovery rule, "a cause of action accrues when the plaintiff has knowledge of (or by the exercise of reasonable diligence should have knowledge of) (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." Bussineau, 518 A.2d at 425.

The undisputed evidence of record establishes that Forum had knowledge of a nonconformity in the Latches no later than early 2000. In February or March of 2000, Forum communicated to Southco reports from Amtrak that the Latches were rusting and breaking in the field.[33] The problem was also discussed in detail in a letter dated September 25, 2000 from Bernard Kapus, Manufacturing Manager of Forum, to Cathy Mannix, Quality Technician for Southco.[34] Reports of the Latches rusting and breaking in the field persisted throughout 2000 and 2001.[35]

Forum exhibited a complete lack of diligence in pursuit of its potential claims. Between 2001 and 2003, Forum did not make

_____

[33] Undisputed Facts, ¶ 15.
[34] Undisputed Facts, ¶ 16.
[35] Undisputed Facts, ¶ 18.

any inquiries with respect to the Latches.[36]    Indeed, Forum apparently opted to "let sleeping dogs lie" for nearly two years.   Finally, and only after renewed pressure from Amtrak, Paula Garrett advised Southco on April 22, 2003 that the Latches were "continuing" to fail in the field.[37]    In an attempt to resolve the issue, Southco instructed Forum to submit its claims and/or a proposed solution in writing.[38]   Forum failed to respond in any manner whatsoever.[39]

Thus, even if Forum had a colorable negligence claim against Southco (which, for the reason discussed below, it does not), its lack of diligence in pursuing that claim deprives it of any benefits it might have received by application of the discovery rule, and its negligence claim is barred by the applicable statute of limitations.

Southco is also entitled to summary judgment on the negligence claim because of the applicability of the economic loss doctrine.   The only damages that Forum claims to have incurred as a result of Southco's alleged negligent delivery of non-conforming Latches are the "substantial expenses in

---

[36] Undisputed Facts, ¶ 24.

[37] Undisputed Facts, ¶ 25.

[38] Undisputed Facts, ¶ 26.

[39] Undisputed Facts, ¶ 27.

-17-

diagnosing and attempt[ing] to correct the problems alleged by Amtrak with the light fixtures" and that Forum may be "subject to liability as alleged in Amtrak's First Amended Complaint."[40] Forum's negligence claim fails, however, because the economic damages which it seeks are not recoverable in tort.

In <u>Potomac Plaza Terraces, Inc. v. QSC Products, Inc.</u>, 868 F.Supp. 346 (D.D.C. 1994) this Court adopted the "economic loss" doctrine, which "bars a tort plaintiff from recovering the loss of value or use of the product itself, cost to repair or replace the product, or the lost profits resulting from the loss of use of the product." <u>Potomac</u>, 868 F. Supp. 346, 354 (<u>quoting</u> <u>A.J. Decoster Co. v. Westinghouse Elec. Corp.</u>, 333 Md. 245, 634 A.2d 1330, 1332 (1994)). In adopting this doctrine, the Court recognized that the majority of other jurisdictions similarly reject claims of economic loss based on negligence.[41] <u>Id</u>. Notably, Maryland follows this majority rule. See <u>A.J. Decoster</u>

---

[40] Third Party Complaint, ¶¶ 57-58.

[41] Under Pennsylvania law, for instance, it is well settled that the economic loss doctrine "bars a plaintiff from recovering purely economic losses suffered as a result of defendant's negligence or otherwise tortious behavior, absent proof that the defendant's conduct cause actual physical harm to a plaintiff or his property." <u>Ellenbogen v. PNC Bank, N.A.</u>, 731 A.2d 175, 188 (Pa. Super. 1999). Accordingly, "economic losses are not recoverable in negligence." <u>New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.</u>, 387 Pa. Super. 537, 550, 564 A.2d 919, 925 (1989).

Co. at 1332. Maryland's application of the economic loss doctrine was persuasive because the common law of Maryland is the source of the District of Columbia's common law. RLI Ins. Co. v. Pohl, Inc., 2006 U.S. Dist. LEXIS 45958 (D.D.C. 2006), p. 9, n. 4, citing Saylab v. Don Juan Restaurant, Inc., 332 F. Supp. 2d 134, 142-43 (D.D.C. 2004).

This Court has concluded that the District of Columbia "has not authorized tort recovery for purely economic losses in a contract setting." Furash & Co. v. McClave, 130 F. Supp. 2d 48, 56, n. 5 (D.D.C. 2001). Forum's allegations that it suffered damages in "diagnosing" and attempting to correct the Latches are purely economic losses under the law of the District of Columbia.[42] See Potomac, 868 F. Supp. at 354 (quoting A.J. Decoster Co., 634 A.2d at 1332). Because the District's law does not allow the recovery of purely economic losses in a contract setting under a theory of negligence, Southco is entitled to summary judgment with respect to Forum's negligence claims.

---

[42] See Third Party Complaint, ¶ 57.

E.    **Common Law Contribution and Indemnity**

Section 2-725 of the Uniform Commercial Code provides, in pertinent part, as follows:

> **§ 2-725. Statute of limitations in contracts for sale**
>
> **(a) General Rule.** An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued . . . .
>
> **(b) Accrual of cause of action.** A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered. [43]

Relying on this provision, some courts have held that § 2-725 bars a separate period of limitation for indemnity claims based on breach of warranty. Other courts, however, have found that a buyer of goods can obtain indemnity for any damages which it was forced to pay by reason of an alleged breach of warranty, even though the buyer did not file its claim for indemnity until after the statute of limitations had run on the breach of

---

[43] The District of Columbia has adopted this section of the Uniform Commercial Code. <u>See</u> D.C. Code § 28:2-725(1).

warranty claim.    The Courts of the District of Columbia have not addressed this issue.    However, for the reasons discussed below Southco believes that the correct approach is the one adopted by those courts which have concluded that §2-725 bars common law indemnity claims based on an alleged breach of warranty.

Courts which have held that the strict tender of delivery rule embodied in UCC § 2-725 trumps the typical accrual of an indemnity claim read § 2-725 as expressing:

> A legislative intent that all actions based on breach of contract for the sale of goods be brought, if at all, within four years of the tender of delivery . . . . The statute was apparently intended to afford ultimate repose in transactions for the sale of goods. Application of the general indemnity rule would contradict this specific direction by extending the time in which to bring an indemnity action based on breach of warranty to four years after the party seeking indemnity becomes liable.

Perry v. Pioneer Wholesale Supply Co., 681 P.2d 214, 219 (Utah 1984); See also Farmers Nat'l Bank v. Wickham Pipeline Constr., 759 P.2d 71, 76-77 (Ida. 1988) (recognizing same); Controlled Atmosphere, Inc. v. Branom Instrument Co., 748 P.2d 686, 690 (Wa. Ct. App. 1988)(finding that statute of limitations for contribution action based on underlying breach of warranty claim had run because action was commenced more than 4 years from date

of delivery); <u>PPG Indus. Inc. v. Genson</u>, 217 S.E. 2d 479 (Ga. Ct. App. 1975).

Indeed, while these courts have recognized that a cause of action for indemnity generally does not accrue until the party seeking indemnity has been required to pay damages, they have viewed the language of § 2-725 as being absolute.  <u>Id</u>. at 218. As such "[t]he action <u>must</u> be commenced within four years after the action accrues, and a cause of action for breach of warranty accrues when tender of delivery is made, 'regardless of the aggrieved party's lack of knowledge of the breach.'"[44]   <u>Id</u>. (Court's emphasis).

Other courts, however, have declined to adopt this approach, finding instead that a claim for breach of warranty and a claim for breach of indemnity are distinctly separate:

> The statute of limitations for indemnity does not start to run until the indemnitee is found liable to a third party. . . . This result does not imprudently enlarge the statute of limitations for breach of

---

[44] As further support for this position, the Utah Supreme Court relied on the general principle that "a specific statutory limitation period that seeks ultimate repose of causes of action will control over a general statute of limitations, even to cut of an indemnity action that technically has not accrued."  <u>Perry</u>, 681 P.2d at 218.  The Utah Supreme Court drew an analogy with <u>Nevada Lakeshore Co. v. Diamond Electric, Inc.</u>, 511 P.2d 113, 114 (Nev. 1973) "where the Nevada Supreme Court interpreted a six-year limitation barring any action regarding improvements to real property as barring an indemnity action as well, declaring that the apparent purpose of the statute was 'to afford ultimate repose and protection from liability. . . ."  <u>Id</u>.

> warranty.  A party who buys and then resells
> a product is not in a position to discover
> the latent defect within the warranty's
> limitations period because the product is in
> the hands of the consumer during that time.
> Only when the consumer sues the retailer
> does the retailer gain notice of the latent
> defect.

Ameron, Inc. v. Chemische Werke Huls AG, 760 F. Supp. 1234, 1236

(E.D. Mich 1991) (quoting City of Clayton v. Grumman Emergency

Prod., 576 F. Supp. 1122, 1127 (E.D. Mo. 1983)(citations and

internal quotation marks omitted).

In Titanium Metals Corp. v. Elkem Mgmt., Inc., 87 F. Supp.

2d 429, 433 (W.D. Pa. 1998), for example, the court refused to

find that the § 2-725 trumps the typical accrual of an indemnity

claim and recognized the following:

> [B]ecause I am hesitant in the absence of
> guidance from the courts of Pennsylvania to
> adopt a rule that would leave an innocent
> party without any remedy for claims that may
> be asserted beyond the original statute of
> limitations, I will follow the line of cases
> holding that an indemnity claim is separate
> from an action for breach of warranty. . . .

As suggested by this comment, and as the United States

District Court for the Eastern District of Pennsylvania has

specifically recognized, the split of authority described above

reflects a conflict between two competing considerations:

> On the one hand, the plain language of
> U.C.C. § 2-725. . . prohibits any action for
> breach of warranty commenced more than four

-23-

651152.1

years after delivery of the goods.  On the
other hand, application of this rule, would
in some cases, have the arguably unfair
result of rendering an intermediate seller
of a malfunctioning good liable to a
purchaser but time-barred from recovery from
the original manufacturer.

Berg Chilling Syst. Inc. v. Hull Corp., No. 00-5075, 2002 U.S.

Dist. LEXIS 22902 at *26 (E.D. Pa. November 26, 2002), rev'd and

remanded, 2003 U.S. App. Lexis 14304 (3rd Cir. April 7, 2003) (on

other grounds).

Here, Forum agreed to a one year repair and replacement

warranty in lieu of all other warranties.  It knew about the

non-conformity of certain of the Southco Latches no later than

April of 2002.  Nevertheless, it chose not to assert any claims

against Southco until May of 2006.  Forum can hardly be said to

be an innocent buyer of goods which was unable to learn of some

latent defect until the expiration of the warranty period.

Rather, it was a buyer which chose to "let sleeping dogs lie."

This was a calculated commercial decision on Forum's part.

Having made this decision, Forum should not now be permitted to

attempt to bring Southco into court six years after it took

delivery of the Southco Latches.

In the alternative, if Forum's claims for common law

contribution and indemnity are not barred by the statute of

limitations they should nevertheless be dismissed because they

are not ripe for adjudication. A claim for indemnity does not accrue until the party claiming it has paid the injured party. Keleket X-Ray Corp. v. United States, 275 F.2d 167 (D.C. Cir. 1960). The same is true for common law indemnity. See Long v. District of Columbia, 820 F.2d 409, 417 (D.C. Cir. 1987) ("[U]nder District of Columbia law, the statute of limitations on such claims begins to run only after a judgment has been paid."). Amtrak has not yet obtained a judgment against Forum. Indeed, there is no evidence of record that Forum has paid anything to Amtrak on account of any claim relating to the Latches. When asked about this issue, Forum's Rule 30(b)(6) designee testified as follows:

> Q.   You also make reference in the second paragraph [of Deposition Ex. 17] to back charges incurred as a result of defective clips. Do you see that?
>
> A.   Yes.
>
> Q.   As we sit here today, has Forum been back charged by Amtrak?
>
> A.   No.

(Garrett D.T., p. 112).

Thus the elements for common law contribution and indemnity have not been met, and Forum's claim in this regard is not ripe.

Southco properly and lawfully limited any ongoing liability with respect to the Latches by providing an express and finite

651152.1

warranty.    Forum  may  not  now  circumvent  this  limitation  by asserting  claims  for  indemnity  and/or  contribution.    To  hold that  Southco  has  such  open-ended  obligations  such  that  recovery would  be  permitted  more  than  six  years  after  shipment  of  its product  essentially  makes  Southco  an  insurer  of  the  product. This  clearly  is  a  result  that  could  not  have  been  intended  by the  drafters  of  the  UCC.

## CONCLUSION

For  all  of  the  foregoing  reasons,  Forum's  claims  against Southco  should  be  dismissed  with  prejudice.

Dated: February 12, 2007            MEYER, UNKOVIC & SCOTT LLP

By: /s/Russell J. Ober, Jr.
     Russell J. Ober, Jr.
     D.C.ID#PA0021
     rjo@muslaw.com

/s/Patricia L. Dodge
Patricia L. Dodge
D.C.ID#PA0020
pld@muslaw.com

1300 Oliver Building
Pittsburgh, PA  15222
(412) 456-2800
(412) 456-2864/Fax

ATTORNEYS FOR THIRD-PARTY
DEFENDANT SOUTHCO, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the foregoing Memorandum of Points and Authorities in Support of Motion for Summary Judgment was served upon all counsel of record electronically (via the Court's Electronic Case Filing System), this 12th day of February, 2007, addressed as follows:

Stephen Lybrook Neal, Jr., Esquire
Manatt, Phelps & Phillips, L.L.P.
700 12th Street, NW
Suite 1100
Washington, DC  20005

Philip John Harvey, Esquire
Venable, Baetjer & Howard LLP
8010 Towers Crescent Drive
Vienna, VA  22182

Steven W. Zoffer, Esquire
Dickie McCamey & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA  15222

Joseph Brooks, Esquire
Morgan Lewis & Bockus, LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004-2541

/s/Russell J. Ober, Jr.