UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.: 1:05CV01837 |
| FORUM, INC., | ) ) ) | Judge: Paul Friedman |
| Defendant and Third-Party Plaintiff, | ) ) ) | |
| v. | ) ) | |
| ADVANCE TRANSFORMER CO., | ) ) ) | |
| Third-Party Defendant, | ) ) ) | |
| and | ) ) | |
| SOUTHCO, INC., | ) ) ) | |
| Third-Party Defendant. | ) ) ) | |

MEMORANDUM IN SUPPORT OF THIRD-PARTY DEFENDANT
ADVANCE'S MOTION FOR SUMMARY JUDGMENT ON COUNTS
I, II, III, VII AND IX OF THE THIRD PARTY COMPLAINT OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
ON ALL COUNTS OF THE FIRST AMENDED COMPLAINT

Joseph Brooks (D.C. Bar # 366739)
Wade B. Wilson (D.C. Bar #468067)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 739-5572
Fax: (202) 739-3001

Dated: February 15, 2007

*Attorneys for Third-Party Defendant
Advance Transformer Co.*

## TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ....................................................................................1

II. RELEVANT FACTS .............................................................................................3

    A.  The Amtrak/Forum and Forum/Advance Contracts ..................................3

    B.  The Forum/Advance Warranties...............................................................4

    C.  Forum Took Delivery Of All Ballasts On Or Before January 5, 2000 ......5

    D.  In February 2000, Amtrak Concluded That The Light Fixtures Were
        Not In Compliance With The Amtrak/Forum Contract Specifications ....................6

    E.  On May 8, 2003, Amtrak Notified Forum About Ballast Failures ............7

    F.  Amtrak Did Not File Its Original Complaint Until September 16, 2005,
        And Forum Did Not File Its Third Party Complaint Until May 9, 2006 .................8

III. ARGUMENT ...........................................................................................................8

    A.  Summary Judgment Should Be Entered For Advance On Counts I, II, III,
        And VII Of The Third-Party Complaint Based On The Applicable Statutes
        Of Limitations ...............................................................................................8

         1.  Forum's breach of contract claim is time barred because the Third
            Party Complaint was not filed until more than four years after the
            last shipment of ballasts was delivered to Forum ..........................9

         2.  Forum's unjust enrichment claim is time barred because it is
            governed by the same four-year statute of limitations that
            applies to Forum's breach of contract claim..................................10

         3.  Forum's breach of warranty claim is time barred because the
            Third Party Complaint was not filed until more than four years after
            the last shipment of ballasts was delivered to Forum ...................10

         4.  Forum's negligence claim is time barred because the Third
            Party Complaint was not filed until more than three years after
            Amtrak notified Forum about ballast failures................................12

i

## TABLE OF CONTENTS *(cont'd)*

**Page**

5.  Alternatively, Forum's negligence claim is barred because the failure to perform a contractual obligation does not create a cause of action in tort..................................................................14

B.  Summary Judgment Should Be Entered For Advance On Court IX Of The Third Party Complaint Seeking Contribution And Indemnity Because Advance Cannot Be A Joint Tort-feasor...................................................15

C.  Alternatively, The First Amended Complaint Should Be Dismissed In Its Entirety Based On The Applicable Statutes Of Limitations......................................16

IV.  CONCLUSION.........................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Babishkan v. Southern Homes*, 2006 U.S. Dist. LEXIS 67827 (S.D. Miss. Sept. 20, 2006) ............................................................................................................12

*Baker v. A.H. Robins Co.*, 613 F. Supp. 994 (D.D.C. 1985)............................12, 19

*Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557 (D.N.J. 2002)..........................................................................................................15

*Brainard v. Freightliner Corp.*, 2002 U.S. Dist. LEXIS 18617 (W.D.N.Y. Oct. 1, 2002) ....................................................................................................................12

*Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61170 (D.D.C. 2003)......................14

*Burka v. Aetna Life Insurance Co.*, 945 F. Supp. 313 (D.D.C. 1996) ...............................10

*City of Cincinnati, Ohio v. Dorr-Oliver, Inc.*, 659 F. Supp. 259 (D. Conn. 1986)............12

*Ciminelli v. Kohl's Dept. Stores, Inc.*, 2005 U.S. Dist. LEXIS 39318 (E.D.N.Y. Dec. 14, 2005)...............................................................................16

*Construction Interior Systems, Inc. v. The Donohue Cos.*, 813 F. Supp. 29 (D.D.C. 1992) ....................................................................................................10

*Crouch v. General Electric Co.*, 699 F. Supp. 585 (S.D. Miss. 1988) ...............................12

*Diamond v. Davis*, 680 A.2d 369, 372 (D.C. 1996) ......................................................13, 18

*Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192 (D.C. 1984).......................................9

*Geico v. Fetisoff*, 958 F.2d 1137 (D.C. Cir 1992) ......................................................14, 15

*Havens v. Patton Boggs LLP*, 2006 U.S. Dist. LEXIS 42910 (D.D.C. June 26, 2006) ....................................................................................................................19

*Hull v. Eaton Corp.*, 825 F.2d 448 (D.C. Cir. 1987) ......................................................8

*Hurdle v. American Sec. & Trust Co.*, 32 F.2d 954 (D.C. Cir. 1929) ...............................10

*Iron Logging, L.L.C. v. John Deere Const. Equip. Co.*, 2000 U.S. Dist. LEXIS 18250 (S.D. Ala. Oct. 12, 2000) ................................................................12

iii

## TABLE OF AUTHORITIES *(cont'd)*

**Page**

*Jaffe v. Pallotta Teamworks, a California Corp.*, 374 F.3d 1223 (D.C. Cir. 2004)........14

*Klaitz v. State of New Jersey*, 2006 U.S. Dist. LEXIS 46650 (D.N.J. June 30, 2006) ................................................................................................................16

*Lee v. Wolfson*, 265 F. Supp. 2d 14 (D.D.C. 2003) ..........................................................10

*Long v. Sears Roebuck & Co.*, 877 F. Supp. 8 (D.D.C. 1995)...........................................10

*Lumsden v. Design Tech Builders, Inc.*, 749 A.2d 796 (MO, 2000) ..................................19

*Marlowe v. Argentine Naval Commission*, 808 F.2d 120 (D.C. Cir. 1986).........................9

*Marseilles Hydro Power, LLC v. Marseilles Land and Water Co.*, 2005 U.S. Dist. LEXIS 34103 (N.D. Ill. Dec. 16, 2005).......................................................................13

*Material Supply International, Inc.v. Sunmatch Industrial Co., Ltd.*, 146 F.3d 983 (D.C. Cir. 1998) .................................................................................................9

*Ontario Hydro v. Zallea Systems, Inc.*, 569 F. Supp. 1261 (D. Del. 1983)............11, 12

*Parker v. National Corp. for Housing Partnerships*, 619 F. Supp. 1061 (D.D.C. 1985), *rev'd on other grounds*, 6 F.3d 829 (D.C. Cir. 1987) .......................................17

*Pilot Air Freight Corp. v. City of Buffalo*, 1996 U.S. Dist. LEXIS 2800 (W.D.N.Y. March 1, 1996).................................................................................16

*Pinto v. Mickron Indus.*, 1996 U.S. Dist. LEXIS 14678 (S.D.N.Y. Oct. 2, 1996)...........16

*Ray v. Queen*, 747 A.2d 1137 (D.C. 2000).................................................................19

*RLI Insurance Co. v. Pohl, Inc. of America*, 2006 U.S. Dist. LEXIS 45958 (D.D.C. July 6, 2006)........................................................................................15, 16

*Roberge v. Eli Lilly and Co.*, 2005 U.S. Dist. LEXIS 3956 (D.D.C. March 11, 2005) ................................................................................................................13, 18

*Rock v. Voshell*, 397 F. Supp. 2d 616 (E.D. Pa. 2005) ....................................................14

*Rose v. Hakim*, 335 F. Supp. 1221 (D.D.C,. 1971)..........................................................16

## TABLE OF AUTHORITIES *(cont'd)*

<u>Page</u>

*Schach v. Ford Motor Co.*, 210 F.R.D. 522 (M.D. Pa. 2002)............................................13

*Shehyn v. D.C.*, 392 A.2d 1008 (D.C. 1978)........................................................................12

*Way v. Ohio Casualty Insurance Co.*, 346 F. Supp. 2d 711m (D.N.J. 2004) ....................14

*Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002) .............................................15

*Young Women's Christian Association v. Allstate Insurance Co. of Canada*, 275
    F.3d 1143 (D.C. Cir. 2002) ........................................................................................14

*Wilson v. Class*, 605 A.2d 907 (Del. Super. 1992) ............................................................12

## <u>STATUTES</u>

D.C. Code § 12-301(8)...............................................................................................12, 17

D.C. Code § 28:2-725(2) .............................................................................................9, 10

# I.  PRELIMINARY STATEMENT

In November 1998, Defendant Forum, Inc. ("Forum") entered into a contract with Plaintiff National Railroad Passenger Corporation ("Amtrak") under which Forum agreed to fabricate and supply to Amtrak light fixtures for seven Amtrak stations.  In June 1999, Forum issued a purchase order to Third-party Defendant Advance Transformer Co. ("Advance") under which Advance agreed to supply to Forum certain electrical components—called ballasts—that Forum would use in fabricating the light fixtures.  Amtrak claims that the light fixtures provided by Forum failed to comply with a number of the specifications of the Amtrak/Forum contract.

Amtrak's complaint against Forum has eight counts, each of which alleges a different theory of recovery based on the same conduct:  Forum's alleged breach of the Amtrak/Forum contract.  Following Amtrak's lead, Forum filed a third-party complaint that includes five counts against Advance, each of which also alleges a different theory of recovery based on the same conduct: Advance's alleged breach of the Forum/Advance contract.[1]

In addition to the fact that the five counts Forum alleges against Advance all seek recovery for the same alleged breach of contract, these counts have one other thing in common: they have all been filed too late.  This motion therefore presents the following straightforward questions for resolution by this Court with respect to Forum's Third Party Complaint:

- The applicable statute of limitations for breach of a contract for the sale of goods is **four years**.  The Forum/Advance contract was breached, if at all, when the alleged non-conforming ballasts were delivered to Forum on or before **January 5, 2000**.  Given that the Third Party Complaint was not filed until **May 9, 2006**, is Count I for breach of contract time barred?

---

[1]     Forum's Third Party Complaint also alleges five repetitive counts against Third-party Defendant Southco, Inc., a second supplier to Forum of component parts used to fabricate the subject light fixtures.  Forum's claims against Southco have no relevance to this motion.

- Under governing District of Columbia law, an equitable claim that arises from the same conduct as a legal claim is subject to the same statute of limitations as the legal claim. Count II of the Third Party Complaint, for unjust enrichment, arises from the very same conduct as Count I, for breach of contract.  Is Count II therefore time barred?

- The applicable statute of limitations for breach of warranty is **four years** from the date the goods are delivered. The final shipment of ballasts supplied to Forum under the Forum/Advance contract was delivered to Forum on **January 5, 2000**.  Given that the Third Party Complaint was not filed until **May 9, 2006**, is Count III for breach of express warranty time barred?

- The applicable statute of limitations for negligence is **three years** from the receipt of knowledge that should cause suspicion that there might be a claim.  Amtrak reported to Forum no later than **May 8, 2003**, that Advance-supplied ballasts in a significant number of the light fixtures had failed.  Given that the Third Party Complaint was not filed until **May 9, 2006**, is Count VII for negligence time barred?

- A breach of contract is not actionable in tort.  Forum's negligence claim is based solely on Advance's alleged failure to supply ballasts that conformed with the terms of the Forum/Advance contract.  Is Count VII for negligence barred for this alternative reason?

- A claim for contribution and indemnity can only be stated against a joint tort-feasor.  Count IX of the Third Party Complaint seeks contribution and indemnity from Advance based on its alleged failure to provide ballasts to Forum that conformed to the terms of the Forum/Advance contract.  Given that a breach of contract is not actionable in tort, is Count IX barred?

As we show below, the answer to each of these questions is yes.  It necessarily follows that summary judgment should be entered in favor of Advance on all counts of the Third Party Complaint alleged against it.

Alternatively—because Advance, a third-party defendant, may step into the shoes of

Forum, the defendant/third-party plaintiff, and assert against Amtrak, the plaintiff, any defenses that Forum has against Amtrak—this motion presents the following straightforward question with respect to Amtrak's First Amended Complaint:

- The longest statute of limitations applicable to any of the eight counts of the First Amended Complaint—all of which arise from Forum's alleged failure to supply light fixtures that complied with the specifications of the Amtrak/Forum contract—is **four years**. Amtrak concluded no later than July 14, 2000, that the light fixtures were not in compliance with at least four of the specifications of the Amtrak/Forum contract and all of the light fixtures covered by the contract were delivered to Amtrak prior to the end of **February 2001**. Given that the original complaint was not filed in this action until **September 16, 2005**, are all claims alleged in Amtrak's First Amended Complaint time barred?

Again, the answer to this question is yes. This Court should, therefore, enter summary judgment in favor of Defendant Forum and Third-party Defendants Advance and Southco, and dismiss this entire case with prejudice.

## II.    RELEVANT FACTS

### A.    The Amtrak/Forum and Forum/Advance Contracts.

Forum is a family-owned business that is incorporated under the laws of Delaware and headquartered in Fox Chapel, Pennsylvania.[2] Prior to November 2001, Forum was located in Pittsburgh.[3] Forum is in the business of manufacturing commercial light fixtures. On November 24, 1998, Forum entered into a contract with Amtrak that required Forum to fabricate and supply light fixtures to be installed in seven Amtrak stations located in the Northeast Corridor.[4]

---

[2]    P. Garrett Dep. Tr. at 9-10 (Exhibit A).

[3]    *Id.* at 10.

[4]    Deposition Exhibit 21 (Exhibit B); First Amended Complaint (Doc. No. 4) at ¶ 5; Answer (Doc. No. 6) at ¶ 5. The parties have compiled one consecutively-numbered set of exhibits from all depositions.

One necessary component of fluorescent light fixtures such as those fabricated by Forum for Amtrak is a ballast. A ballast is an electrical device that regulates current and voltage.[5] Advance manufactures ballasts, and has been selling them to Forum for the past twenty to twenty-five years.[6]

On June 18, 1999, Forum issued its form purchase order No. 032886-00 (the "Purchase Order") to Advance for the supply of 5900 ballasts.[7] The ballasts covered by the Purchase Order were intended for use in fabricating the Amtrak light fixtures.[8] The Purchase Order is the only document constituting the contract between Advance and Forum for the purchase and supply of the ballasts used by Forum to fabricate the Amtrak light fixtures.[9]

**B.    The Forum/Advance Warranties.**

The terms and conditions printed on the reserve side of the Purchase Order include the following language:

> The Seller [Advance] expressly warrants that all of the articles, materials and work covered by this order shall conform to the specifications, that they will be merchantable, of good material and workmanship and free from defect. This warranty shall run to the Buyer [Forum], its successors, assigns, customers and users of its products. All warranties herein shall be construed as conditions as well as warranties and the representations and conditions herein contained shall not be deemed to be exclusive.[10]

While the Third Party Complaint makes no mention of this, Forum's corporate designee, Paula Garrett, testified at her deposition that Advance also orally agreed to give Forum a repair

---

[5]    A. Lassof Dep. Tr. at 12-13 (Exhibit C).

[6]    *Id.* at 13:17-22.

[7]    Deposition Exhibit 34 (Exhibit D).

[8]    Third Party Complaint (Doc. No. 13) at ¶ 19.

[9]    *Id.*; P. Garrett Dep. Tr. at 125-26 (Exhibit A).

[10]    Third Party Complaint (Doc. No. 13) at ¶ 28.

and replacement warranty for the ballasts. According to Garrett, Advance agreed to provide Forum with a warranty that conformed with the ballast warranty that was included in the Amtrak/Forum contract.[11] That warranty language provides as follows:

> 6.1   Warrant the fixture, its finishes, and all of its component parts, except ballasts to be free from defects for a period of one year from date of acceptance if operated within rated voltage range. *Replace faulty materials and provide labor required to make the replacement at no additional cost to the owner.*
>
> 6.2   Electronic ballasts shall be warranted for three years.[12]

Thus, what Forum claims that Advance orally agreed to was the "repair and replacement of any ballasts that are found to be defective . . . for a period of three years. . . ."[13]

## C.    Forum took delivery of all ballasts on or before January 5, 2000.

The 5,900 ballasts supplied to Forum by Advance under the Purchase Order were delivered to Forum, in Pittsburgh, in the following quantities and on the following dates:

| June 22, 1999 | 500 units |
|---|---|
| July 7, 1999 | 2,400 units |
| July 30, 1999 | 100 units |
| November 5, 1999 | 2,000 units |
| January 5, 2000 | 900 units[14] |

The ballasts were shipped by Advance from its East Rutherford, New Jersey manufacturing

---

[11]   P. Garrett Dep. Tr. at 231:13-18 (Exhibit A); *see also* Forum Interrogatory Response No. 8 ("Forum requested that Advance modify and extend its warranty to be consistent with the warranty requirements in Forum's contract with Amtrak. Advance agreed to this request.") (Exhibit E).

[12]   Light Fixtures Design Specification (August 19, 1998) at ¶ 6 (emphasis added) (Deposition Exhibit 22) (Exhibit F).

[13]   P. Garrett Dep. Tr. at 237:17-23 (Exhibit A).

[14]   Deposition Exhibit 34 (Exhibit D); P. Garrett Dep. Tr. at 218:15-221:14 (Exhibit A).

plant.[15]  Thus, all ballasts covered by the Purchase Order were delivered to Forum no later than

January 5, 2000.

**D.     In February 2000, Amtrak concluded that the light fixtures were not in compliance with the Amtrak/Forum contract specifications.**

The light fixtures were installed at the seven Amtrak stations in late 1999 and early

2000.[16]  On or before February 16, 2000, an Amtrak engineer prepared a formal written report

documenting conditions observed during site investigations at three Amtrak stations earlier that

month.  The report concluded that the light fixtures supplied by Forum were not in compliance

with at least four of the specifications of the Amtrak/Forum contract.[17]  The specific deficiencies

noted were improper fixture strap construction that caused a loss of sealing, bowing of fixture

lenses that caused a loss of sealing, the presence of contaminants such as water and ice inside the

fixtures, and the failure of lens clips to stay in position.[18]  The report also discussed what it

characterized as "evidence of deficient materials and workmanship."[19]  A final version of this

report, which reached the same conclusions, was prepared on July 14, 2000, after follow-up

inspections were conducted at one of the rail stations in March and May of 2000.[20]

The final shipment of light fixtures required to be supplied under the Amtrak/Forum

contract was delivered to Amtrak in February 2001.[21]

---

[15]  *See, e.g.,* Deposition Exhibit 35 at p. F01184 (Exhibit G); Deposition Exhibit 36 (Exhibit H).

[16]  Amtrak OIG Report (March 9, 2003) at Page 2 (Deposition Exhibit 161) (Exhibit I).

[17]  HSR Platform Lighting Fixture Review of Design, Prototype Development and Installation (February 16, 2000) at §§ 4.0-5.1 (Deposition Exhibit 98) (Exhibit J).

[18]  *Id.*

[19]  *Id.* at § 5.2.

[20]  Deposition Exhibit 149 (Exhibit K).

[21]  P. Garrett Dep. Tr. at 75-76 (Exhibit A).

**E.     On May 8, 2003, Amtrak notified Forum about ballast failures.**

In December 2002, while replacing lamps at the Philadelphia 30th Street Station, an Amtrak maintenance crew discovered what it believed were widespread ballast failures.[22] Sometime prior to January 16, 2003, Amtrak contacted Advance directly to request replacement of these ballasts.[23]  Advance agreed to replace all ballasts that Amtrak contended had failed.[24] To that end, Advance ultimately shipped 507 replacement ballasts to two of the Amtrak stations —Philadelphia and Providence—along with instructions on how to submit an invoice to Advance for reimbursement of labor costs.[25]

Meanwhile, Amtrak also notified Forum about what it believed were ballast failures at two of the seven Amtrak stations.  In particular, on May 8, 2003, Amtrak faxed to Forum a letter that stated, among other things, as follows:  "[I]n addition to the previous defects that have occurred in the light fixtures supplied by Forum under the Contract, and about which we have previously advised you, Amtrak has recently experienced significant ballast failures at its Philadelphia 30th Street Station and more recently at the Providence, RI Station."[26]

Advance shipped the final shipment of replacement ballasts requested by Amtrak on or about July 15, 2003.[27]  After that shipment, there were no further requests from Amtrak to replace ballasts and there were no further reports from Amtrak of any ballast failures.[28]

---

[22]     Amtrak OIG Report at Page 10 (Exhibit I).

[23]     Advance Memo from A. Lasoff to Forum, Inc. dated  November 25, 2003 (included as part of Deposition Exhibit 63) ("Advance Memo") ("75 pcs requested on RA [return authorization] #6144698 dated 1-16-03") (Exhibit L at pp. ADVANCE 00085-86).

[24]     Amtrak OIG Report at Page 11 (Exhibit I); *see also* P. Garrett Dep. Tr. at 239:18-240:5 (Exhibit A).

[25]     Advance Memo (Exhibit L at p. ADVANCE 00085); A. Lassoff Dep. Tr. at 71:4 -72:17 (Exhibit C).

[26]     Letter from G.E. Eckenrode to P. Garrett dated May 8, 2003 (Deposition Exhibit 38) (Exhibit M).

[27]     Advance Memo (Exhibit L at pp. ADVANCE 0085-86).

[28]     P. Garrett Dep. Tr. at 240:6-14 (Exhibit A); E-mail and attachments from Barbara Ponce to Al Lasoff dated 04/11/06 10:49 AM (included as pages ADVANCE 00083-86 of Deposition Exhibit 63) (Exhibit L).

F.    **Amtrak did not file its original complaint until September 16, 2005, and Forum did not file the Third Party Complaint until May 9, 2006.**

Amtrak did not file its original complaint in this action until September 16, 2005—more than five years after its engineer first reported that the lighting fixtures were not in compliance with at least four of the Amtrak/Forum contract specifications and more than four years after the last shipment of light fixtures supplied under the Amtrak/Forum contract was delivered to Amtrak.  And Forum did not file the Third Party Complaint until May 9, 2006—more than six years after the last shipment of ballasts was delivered to Forum by Advance and more than three years after Amtrak notified Forum, in writing, that it had discovered widespread ballast failures at two of the Amtrak stations.

## III.    ARGUMENT

A.    **Summary Judgment Should Be Entered For Advance On Counts I, II, III, And VII of the Third-Party Complaint Based On The Applicable Statutes Of Limitations.**

Preliminarily, this Court must determine which juisdiction's law provides the applicable statutes of limitations.  As a federal court sitting in a diversity case,[29] this Court is required to look to state law for the applicable statutes of limitations.[30]  Here, the District of Columbia is the forum "state" and, therefore, this Court must apply the statutes of limitations that a District of Columbia court would apply.[31]  Because District of Columbia courts would apply District of

---

[29]    *See* First Amended Complaint (Doc. No. 4) at ¶ 3 ("This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.").

[30]    *Hull v. Eaton Corp.*, 825 F.2d 448, 456 (D.C. Cir. 1987).

[31]    *Id.*

Columbia choice-of-law rules, treat the statutes of limitations as procedural, and then apply the

applicable District of Columbia statutes of limitations, this Court must do so as well.[32]

> **1.    Forum's breach of contract claim is time barred because the Third Party Complaint was not filed until more than four years after the last shipment of ballasts was delivered to Forum.**

The Purchase Order under which Advance supplied the ballasts to Forum is a contract for

the sale of goods.  As such, it is subject to the *Uniform Commercial Code*, which has been

adopted by the District of Columbia.[33]  Section 2-725 of the *Code*, which provides the governing

statute of limitations for breach of contract claims within its reach, states, in pertinent part, as

follows:

> (1)    An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued . . . .

> (2)    A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.[34]

Assuming for purposes of this motion only that the Forum/Advance contract was

breached by Advance, that breach occurred when the alleged non-conforming ballasts were

delivered to Forum.[35]  It is undisputed that all ballasts covered by the Purchase Order were

delivered to Forum no later than January 5, 2000.[36]  Four years from that date was January 5,

2004.  But the Third Party Complaint was not filed until May 9, 2006.  Count I is therefore time

barred.

---

[32]    *Material Supply Int'l, Inc.v. Sunmatch Indus. Co., Ltd.,* 146 F.3d 983, 991-92 (D.C. Cir. 1998).

[33]    *See Marlowe v. Argentine Naval Comm'n,* 808 F.2d 120, 122 (D.C. Cir. 1986).

[34]    D.C. Code Ann. § 28:2-725.

[35]    *Cf. Ehrenhaft v. Malcolm Price, Inc.,* 483 A.2d 1192, 1198 (D.C. 1984) ("The contract is breached when the defective work is done and the statute of limitations begins to run from that time.").

[36]    P. Garrett Dep. Tr. at 218:20-221:14 (Exhibit A); Deposition Exhibit 34 (Exhibit D).

**2.     Forum's unjust enrichment claim is time barred because it is governed by the same four-year statute of limitations that applies to Forum's breach of contract claim.**

The statute of limitations applicable to a breach of contract claim also applies to any equitable claims, such as unjust enrichment, that arise from the same conduct.[37]  Count II of the Third Party Complaint, for unjust enrichment, alleges no conduct beyond that on which Count I, for breach of contract, is based.  Count II is therefore time barred.

**3.     Forum's breach of warranty claim is time barred because the Third Party Complaint was not filed until more than four years after the last shipment of ballasts was delivered to Forum.**

The statute of limitations for breach of warranty claims is also provided by Section 2-725 of the *Uniform Commercial Code*.[38]  Moreover, the *Code* specifically states when the four-year statute of limitations applicable to a breach of warranty claim begins to run:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.  *A breach of warranty occurs when tender of delivery is made*, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.[39]

Thus, absent any language explicitly extending a warranty to future performance, "the discovery rule does not apply to determine when the statute of limitations begins to run for breach of warranty product liability claims," and "the statute of limitations accrues when tender of delivery of the warranted product is made."[40]

---

[37]     *Construction Interior Systems, Inc. v. The Donohue Cos.,* 813 F. Supp. 29, 33 n.4 (D.D.C. 1992) (citing *Hurdle v. American Sec. & Trust Co.,* 32 F.2d 954, 956 (D.C. Cir. 1929)); *accord. Burka v. Aetna Life Ins. Co.,* 945 F. Supp. 313, 321 (D.D.C. 1996).

[38]     *See Lee v. Wolfson,* 265 F. Supp. 2d 14, 19 (D.D.C. 2003).

[39]     D.C. Code § 28:2-725(2) (emphasis added).

[40]     *Long v. Sears Roebuck & Co.,* 877 F.Supp. 8, 14 (D.D.C. 1995).

First, as to the only warranty that Advance is alleged in the Third Party Complaint to have given to Forum—*i.e.*, the warranty that appears on the back side of the Purchase Order—no language that "explicitly extends" the warranty to future performance of the goods was included.[41] It necessarily follows that the statute of limitations began to run on any claim under this warranty when the final shipment of ballasts was delivered to Forum on January 5, 2000. Because the Third Party Complaint was not filed until May 9, 2006, Forum's claim for breach of this warranty is barred by the four-year statute of limitations.

Turning to Forum's claim for breach of the alleged oral warranty that tracks the ballast warranty of the Forum/Amtrak contract, Forum's claim fares no better. In the leading case *Ontario Hydro v. Zallea Systems, Inc.*,[42] the United States District Court for the District of Delaware flatly rejected the contention that repair and replacement warranties like the one here at issue explicitly extend a warranty to future performance of the goods:

> [A] repair or replacement warranty does not warrant how the goods will perform in the future. Rather, such a warranty simply provides that if a product fails or becomes defective, the seller will replace or repair within a stated period.
>
> Thus, the only distinction between these two kinds of warranties is that a repair or replacement warranty merely provides a *remedy* if the product becomes defective, while a warranty for future performance *guarantees the performance* of the product for a stated period of time.[43]

---

[41]     For the convenience of the Court, we repeat the warranty language here:

The seller [Advance] expressly warrants that all of the articles, materials and work covered by this order shall conform to the specifications, that they will be merchantable, of good material and workmanship and free from defect. This warranty shall run to the Buyer [Forum], its successors, assigns, customers and users of its products. All warranties herein shall be construed as conditions as well as warranties and the representations and conditions herein contained shall not be deemed to be exclusive. [Third Party Complaint (Doc. No. 13) at ¶ 28].

[42]     569 F. Supp. 1261 (D.Del. 1983).

[43]     *Id.* at 1266 (emphasis in original).

11

The court therefore held that repair and replacement warranties have "no effect upon the running of the four year limitation period after tender of delivery is made."[44]

In the wake of *Ontario Hydro*, courts that have considered the issue have consistently held that repair and replacement warranties do not explicitly extend a warranty to the future performance of goods and, therefore, that they do not affect the four-year statute of limitations that runs from the time when goods are delivered.[45] It follows that the four-year statute of limitations on all of Forum's breach of warranty claims against Advance began running no later than January 5, 2000, and that all such claims are therefore time barred.

### 4. Forum's negligence claim is time barred because the Third Party Complaint was not filed until more than three years after Amtrak notified Forum about ballast failures.

Under District of Columbia law, an action for negligence must be brought within three years after the cause of action accrues.[46] Generally, a cause of action in tort accrues when an injury occurs.[47] In cases like this, however, where the relationship between alleged tortious conduct and subsequent injury may be obscure, the "discovery rule" is applied.[48]

Under the discovery rule, an action accrues—and the statute of limitations begins to run—"when a prospective plaintiff knows or should know through the exercise of due diligence of her right to recover, or, in other words, when she is put on 'inquiry notice' of the existence of

---

[44]     *Id.* at 1267.

[45]     *See, e.g., Babishkan v. Southern Homes*, 2006 U.S. Dist. LEXIS 67827 at *10-*11 (S.D. Miss. Sept. 20, 2006); *Brainard v. Freightliner Corp.*, 2002 U.S. Dist. LEXIS 18617 at *10-*13 (W.D.N.Y. Oct. 1, 2002); *Iron Logging, L.L.C. v. John Deere Const. Equip. Co.*, 2000 U.S. Dist. LEXIS 18250 at *39-*41 (S.D. Ala. Oct. 12, 2000); *Crouch v. General Elec. Co.*, 699 F. Supp. 585, 594-95 (S.D. Miss. 1988) (citing cases); *City of Cincinnati, Ohio v. Dorr-Oliver, Inc.*, 659 F. Supp. 259, 265-66 (D. Conn. 1986); *Wilson v. Class*, 605 A.2d 907 (Del. Super. 1992).

[46]     D.C. Code § 12-301(8).

[47]     *See Shehyn v. D.C.*, 392 A.2d 1008, 1013 (D.C. 1978).

[48]     *See Baker v. A.H. Robins Co.*, 613 F. Supp. 994, 996 (D.D.C. 1985).

actionable harm."[49]  Under the inquiry notice standard, the statute is *not* tolled until a potential

plaintiff acquires full knowledge of all elements of a claim.  Rather, the clock begins to tick

when a potential plaintiff has sufficient information to require that a reasonably diligent

investigation be undertaken.[50]  Moreover, the running of the statute does not await the

completion of such an investigation.  Rather, the potential plaintiff is charged with "inquiry

notice"—which is the full notice or information the potential plaintiff "would have possessed

*after* due investigation"—as of the time the duty to investigate arises.[51]  Thus, the statute of

limitations on Forum's negligence claim against Advance began running when Forum had

enough information to require that it conduct a reasonable inquiry into whether or not it had a

cause of action.

While it may have had sufficient information to charge it with inquiry notice at some

earlier point in time, there can be no question but that Forum is charged with inquiry notice of its

negligence claim no later than May 8, 2003.  As set forth above, it was on that date that Forum

received a faxed letter from Amtrak stating, among other things, that "Amtrak has recently

experienced significant ballast failures at its Philadelphia 30th Street Station and more recently

at the Providence, RI Station."[52]  But Forum did not file its Third Party Complaint until more

than three years later—on May 9, 2006.[53]  Forum's negligence claim is therefore time barred.[54]

---

[49]     *Id.* (citing cases).

[50]     *Roberge v. Eli Lilly and Co.*, 2005 U.S. Dist. LEXIS 3956 at *21-*22 (D.D.C. March 11, 2005).

[51]     *Id.* at *21 (emphasis added) (*quoting Diamond v. Davis*, 680 A.2d 369, 372 (D.C. 1996)).

[52]     Letter from G.E. Echenrode to P. Garrett dated May 8, 2003 (Deposition Exhibit 38) (Exhibit M).

[53]     *See* Third Party Complaint (Doc. No. 13).

[54]     Advance is not unmindful of the fact that Forum filed its Motion for Leave of Court to File Third-Party
Complaint on May 4, 2006 (Doc. No. 11).  But the date on which a party "initially sought leave to file its
third-party claims … does not affect the relevant dates for statute of limitations purposes."  *Marseilles
Hydro Power, LLC v. Marseilles Land and Water Co.*, 2005 U.S. Dist. LEXIS 34103 at *17 (N.D. Ill. Dec.
16, 2005).  Rather, the critical date is when "the third-party complaint was actually filed in this Court...."
*Id.; cf. Schach v. Ford Motor Co.*, 210 F.R.D. 522, 523 (M.D. Pa. 2002) ("filing a motion for leave to

**5.     Alternatively, Forum's negligence claim is barred because the failure to perform a contractual obligation does not create a cause of action in tort.**

As a threshold matter on this point, which involves a question of substantive tort law, this Court must again determine which jurisdiction's law is applicable.  In diversity cases such as this, a federal court must apply the choice-of-law rules of the jurisdiction in which it sits.[55]  The District of Columbia follows a modified "interest analysis" approach to choice of law.[56]  Under this approach, a court must first determine if there is a true conflict between the laws of potentially-relevant jurisdictions.[57]  If there is no true conflict, no further analysis is necessary. And where, as here, the District of Columbia is one of the potentially-relevant jurisdictions, its law applies by default.[58]

The jurisdictions that potentially have an interest in having their law applied in this case are:  the District of Columbia, where Amtrak is located and incorporated, and where it presumably would have suffered any of the harm that it alleges; Pennsylvania, where Forum is located and where it presumably would have suffered any of the harm that it alleges; and New Jersey, where the ballasts were manufactured by Advance and from where they were shipped to Forum's facility by Advance.[59]  The law of each of these jurisdictions is the same with respect to the issue at hand:  "tort claims do not arise out of circumstances where the parties' rights are governed by a document that creates contractual rights and responsibilities."[60]

---

amend does not toll the statute of limitations").

[55]     *Geico v. Fetisoff,* 958 F.2d 1137, 1141 (D.C. Cir 1992).

[56]     *Id.*

[57]     *Young Women's Christian Ass'n v. Allstate Ins. Co. of Canada,* 275 F.3d 1143, 1150 (D.C. Cir. 2002).

[58]     *Geico,* 958 F.2d at 1141; *Brown v. Dorsey & Whitney, LLP,* 267 F. Supp. 2d 61, 70 (D.D.C. 2003).

[59]     *See, e.g., Jaffe v. Pallotta Teamworks, a California Corp.,* 374 F.3d 1223, 1227 (D.C. Cir. 2004) (discussing choice-of-law factors to be considered in tort cases).

[60]     *Way v. Ohio Cas. Ins. Co.,* 346 F. Supp. 2d 711, 718 (D.N.J. 2004); *see also Rock v. Voshell,* 397 F. Supp.

14

The negligence claim alleged against Advance in the Third Party Complaint is based on an alleged breach of contract and arises from the same set of facts as the breach of contract claim alleged against Advance. Indeed, no additional facts at all are pled in support of the negligence claim.[61] Thus, Forum has no cognizable tort claim.

Furthermore, each of the potentially-relevant jurisdictions has also adopted the "economic loss doctrine," which "bars a tort plaintiff from recovering the loss of value or use of the product itself, cost to repair or replace the product, or the lost profits resulting from the loss of use of the product."[62] The only damages alleged by Forum in its negligence claim are "expenses in diagnosing and attempt [sic] to correct the problems alleged by Amtrak with the light fixtures."[63] But as this Court has held, the economic loss doctrine precludes recovery in tort of a purchaser's damages suffered "in its efforts to repair, cure, remedy and replace" products sold under a contract.[64] Forum therefore has no cognizable negligence claim against Advance.

### B.    Summary Judgment Should Be Entered For Advance On Court IX of the Third Party Complaint Seeking Contribution and Indemnity Because Advance Cannot Be A Joint Tort-Feasor.

Count IX of the Third-Party Complaint alleges a claim against Advance for common law

---

[61]  2d 616, 627 (E.D. Pa. 2005) ("a negligence claim has been held to be improper when it is based on an alleged breach of an agreement and arises from the same set of facts as a contract claim."); *RLI Ins. Co. v. Pohl, Inc. of Am.,* 2006 U.S. Dist. LEXIS 45958 at *11 n.6 (D.D.C. July 6, 2006) ("the mere negligent breach of a contract . . . is not enough to sustain an action sounding in tort").

[61]  Third Party Complaint (Doc. No. 13) at ¶¶ 44-51.

[62]  *RLI Ins. Co.,* 2006 U.S. Dist. LEXIS 45958 at *8 (D.C. law); *see also Werwinski v. Ford Motor Co.,* 286 F.3d 661, 671 (3d Cir. 2002) ("The economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.") (Pennsylvania law); *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.,* 226 F. Supp.2d 557, 562 (D.N.J. 2002) (same; New Jersey law).

[63]  Third Party Complaint (Doc. No. 13) at ¶ 49.

[64]  *RLI Ins. Co.,* 2006 U.S. Dist. LEXIS 45958 at *11.

contribution and indemnity. But "neither indemnity nor contribution can be awarded to a party

who is not a joint tort-feasor."[65]  Because, as demonstrated above, Forum has no tort claim

against Advance in this action, Forum also has no claim against Advance for contribution and

indemnity.

**C.    Alternatively, The First Amended Complaint Should Be Dismissed In Its
Entirety Based On The Applicable Statutes of Limitations.**

As a third-party defendant, Advance "may assert against the plaintiff any defenses which

the third-party defendant, or the third-party plaintiff, has to the plaintiff's claim . . . ."[66] Put

another way, "effectively, a third-party defendant may occupy the shoes of the defendant/third-

party plaintiff."[67]  Among other things, a third-party defendant may file a summary judgment

motion against the plaintiff based on defenses the defendant/third-party plaintiff has against the

plaintiff.[68]

Amtrak's First Amended Complaint alleges eight counts against Forum, each of which

arises from Forum's alleged failure to supply light fixtures that complied with the specifications

of the Amtrak/Forum contract.[69]  The eight counts, and their respective statutes of limitations,

are as follows:

---

[65]  *Rose v. Hakim,* 335 F. Supp. 1221, 1233 (D.D.C,. 1971); *see also Klaitz v. State of New Jersey,* 2006 U.S. Dist. LEXIS 46650 at *15-*16 (D.N.J. June 30, 2006) (third-party plaintiffs did not have claim for indemnity and contribution where state law did not authorize tort claim against third-party defendants).

[66]  *Ciminelli v. Kohl's Dept. Stores, Inc.,* 2005 U.S. Dist. LEXIS 39318 at *3 (E.D.N.Y. Dec. 14, 2005) (quoting *Pilot Air Freight Corp. v. City of Buffalo,* 1996 U.S. Dist. LEXIS 2800 at *2 (W.D.N.Y. March 1, 1996)).

[67]  *Id.*

[68]  *Id.*; *see also Pinto v. Mickron Indus.,* 1996 U.S. Dist. LEXIS 14678 at *5 (S.D.N.Y. Oct. 2, 1996) (granting third-party defendant's motion for summary judgment against plaintiff).

[69]  First Amended Complaint (Doc. No. 4) at Count I, ¶ 22; Count II, ¶ 28; Count III, ¶ 38; Count IV, ¶ 47; Count V, ¶ 57; Count VI, ¶¶ 65-68; Count VII, ¶ 75; and Count VIII, ¶ 85.

Count I – Rejection/Revocation of Acceptance                                  4 Years[70]

Count II – Breach of Contract                                                           4 Years[71]

Count III – Breach of Implied Covenant of Good Faith and Fair Dealing   3 Years[72]

Count IV – Breach of Express Warranty                                            4 Years[73]

Count V – Breach of Implied Warranty                                             4 Years[74]

Count VI – Negligence                                                                    3 Years[75]

Count VII – Fraud                                                                          3 Years[76]

Count VIII – Unjust Enrichment                                                      4 Years[77]

Counts I, II, III, IV, V and VIII are not subject to the discovery rule. Therefore, these six counts all accrued no later than the dates on which the light fixtures were delivered to the Amtrak stations. Because all of the light fixtures were shipped to Amtrak by the end of February 2001,[78] these claims all accrued no later than March 1, 2001. But Amtrak did not file this action until September 16, 2005. All of these claims are therefore time barred.

Count VI for negligence and VII for fraud are both subject to the discovery rule. This Court recently described what triggers the statute of limitations under the discovery rule as follows:

---

[70]   *Supra* p. 10 and n.37.

[71]   *Supra* p. 9.

[72]   D.C. Code § 12-301(8); *see also Parker v. National Corp. for Housing Partnerships*, 619 F. Supp. 1061, 1066-68 (D.D.C. 1985) (§ 12-301(8) applicable to claim for breach of implied covenant of good faith and fair dealing), *rev'd on other grounds*, 6 F.3d 829 (D.C. Cir. 1987).

[73]   *Supra* pp. 10-11.

[74]   *Id.*

[75]   *Supra* p. 12 and n.46.

[76]   D.C. Code § 12-301(8).

[77]   *Supra* p.10 and n.37.

[78]   P. Garrett Dep. Tr. at 75-76.

17

> [A] plaintiff's claim under the discovery rule begins its three-year
> limitation when she has actual or inquiry notice based on
> unconfirmed information or insubstantial evidence—hints,
> suspicions, and rumors—that through reasonable diligence, could
> lead the plaintiff to some evidence of a suspected wrongdoing,
> even if the wrongdoing was not clearly defined.[79]

There can be no doubt that Amtrak had sufficient information to be on inquiry notice of its fraud and negligence claims under this standard no later than February 16, 2000, when one of its engineers prepared the report concluding that the light fixtures installed at three Amtrak stations were not in compliance with at least four of the Amtrak/Forum contract specifications.[80] The information in this report, which was gleaned from site inspections conducted at three Amtrak stations where the Forum-supplied light fixtures were installed, went far beyond the "hints, suspicions, and rumors" that are sufficient to trigger a statute of limitations under the inquiry notice standard. At a bare minimum, Amtrak was undeniably on inquiry notice of its claims when the engineer's report was finalized on July 14, 2000.[81] Although all of the light fixtures had not yet been delivered to Amtrak by that date, the statute of limitations started running on its fraud and negligence claims no later than March 1, 2001—by which time all of the light fixtures had been delivered—because Amtrak was already on inquiry notice. Thus, these two counts had to be filed no later than March 1, 2004. But Amtrak did not file the original complaint until September 16, 2005. These claims are therefore time barred.

---

[79]    *Roberge v. Eli Lilly & Co.*, 2005 U.S. Dist. LEXIS 3956 at *22 (D.D.C. March 11, 2005) (citing *Diamond*, 680 A.2d at 393).

[80]    Exhibit J at pp. AMTRAK 002325-26.

[81]    Exhibit K; *see also* M. Montgomery Dep. Tr. at 88-94 (Exhibit N) (establishing that Amtrak's Manager, Station Planning, was aware of the issues discussed in the July 14, 2000 report during the "summer of 2000").

18

Amtrak has attempted to avoid the preclusive effect of the governing statutes of limitations by contending that Forum fraudulently concealed the existence of Amtrak's claims by withholding or misrepresenting certain facts.[82] But this tactic is unavailing.

As this Court recently observed, the doctrine of fraudulent concealment "has questionable applicability in jurisdictions, like D.C., that apply the discovery rule."[83] And as the D.C. Court of Appeals has explained: "In cases involving alleged misrepresentation or concealment, there is an obvious overlap between the discovery rule and the tolling doctrine. Courts differ in their formulation of the relevant principles, but the key issue is whether under all the circumstances . . . the plaintiff was on 'inquiry notice' at the relevant time."[84] This Court has determined, therefore, that the bottom line on this issue is that "once a plaintiff knows, or should know, of the defendant's wrongdoing, the concealment doctrine ceases to be relevant."[85]

The February 16, 2000 and July 14, 2000 reports prepared by Amtrak's own engineer following site inspections at three rail stations put Amtrak on notice—or, at a bare minimum, on inquiry notice—of all of the claims alleged in the First Amended Complaint. The fact that Amtrak may have learned more information about additional problems with the light fixtures after that time is irrelevant. Rather, "[o]nce on notice of one cause of action, a potential plaintiff is charged with responsibility for investigating, within the limitations period, *all potential claims and all potential defendants* with regard to the injury."[86]

---

[82]     *See* First Amended Complaint at ¶¶ 16, 23, 29, 39, 48, 57, 68, 75-78, and 85.

[83]     *Havens v. Patton Boggs LLP*, 2006 U.S. Dist. LEXIS 42910 at *14 n. 7 (D.D.C. June 26, 2006).

[84]     *Id.* (quoting *Ray v. Queen*, 747 A.2d 1137, 1142 n. 6 (D.C. 2000)).

[85]     *Id.*

[86]     *Lumsden v. Design Tech Builders, Inc.*, 749 A.2d 796, 802 (Md. 2000) (emphasis in original) (citation omitted); *see also Baker*, 613 F. Supp. at 996 ("The fact that [the plaintiff] did not then comprehend the full extent of *all* possible sequelae does not matter, for the law of limitations requires only that she have inquiry notice of the existence of a *cause of action*") (emphasis in original).

The February 16, 2000 and July 14, 2000 internal Amtrak reports indisputably put Amtrak on inquiry notice of claims based on either 1) non-compliance of the light fixtures with the Amtrak/Forum contract specifications or 2) deficient materials and workmanship. All statutes of limitations for Amtrak's eight counts therefore began running no later than March 1, 2001—by which time all of the light fixtures supplied under the contract had been delivered to Amtrak. All eight counts had to be filed, therefore, no later than March 1, 2005. The original complaint was not filed, however, until September 16, 2005. Summary judgment should therefore be entered in favor of Advance, Forum and Southco on all claims alleged in the First Amended Complaint.

## IV.    CONCLUSION

All counts of Amtrak's First Amended Complaint and of Forum's Third Party Complaint are either barred by the applicable statutes of limitations or non-cognizable as tort claims. This Court should, therefore, enter summary judgment in favor of Advance on Counts I, II, III, VII, and XI of the Third Party Complaint. In the alternative, this Court should enter summary judgment in favor of Forum, Advance, and Southco on the First Amended Complaint and dismiss this entire action with prejudice.

Respectfully submitted,

Dated: February 15, 2007

_____ /s/ _____
Joseph Brooks (D.C. Bar # 366739)
Wade B. Wilson (D.C. Bar # 468067)
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 739-3000 (phone)
(202) 739-3001 (fax)

*Counsel for Third-party Defendant*
*Advance Transformer Co.*

20