# EXHIBIT A

Paula Lynn Garrett
October 30, 2006

National Railroad Passenger Corp. vs.
Forum, Inc.

**Page 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

----

NATIONAL RAILROAD     )
PASSENGER CORPORATION, )
                      )
          Plaintiff,  )
                      )
     vs.              ) Civil Action
                      )
FORUM, INC.,          ) No. 1:05CV01837
                      )
          Defendant   )
          and         )
          Third-Party )
          Plaintiff,  )
                      )
     vs.              )
                      )
ADVANCE TRANSFORMER   )
CO., AND SOUTHCO, INC.,)
                      )
          Third-Party )
          Defendants. )

- - - - -

DEPOSITION OF PAULA LYNN GARRET

REPRODUCTION OF THIS TRANSCRIPT IS PROHIBITED
WITHOUT AUTHORIZATION FROM THE CERTIFYING
AGENCY

- - - - -

**Page 2**

1
2     DEPOSITION OF PAULA LYNN GARRET
3  a witness herein, called by the Third-Party
4  Defendant Southco for examination, taken
5  Pursuant to the Federal Rules of Civil
6  Procedure, by and before Cheri A. Redlinger, a
7  Professional Court Reporter and Notary Public
8  in and for the Commonwealth of Pennsylvania, at
9  the law offices of Meyer, Unkovic & Scott, 1300
10 Oliver Building, Pittsburgh, Pennsylvania, on
11 Monday, October 30, 2006, at 9:35 a.m.
12 COUNSEL PRESENT:
13 For the Plaintiff National Railroad Passenger
   Corporation:
14
      Manatt, Phelps & Phillips
15    by Stephen L. Neal, Jr., Esq.
      and Christopher T. Koegel, Esq.
16
   For the Defendant Forum, Inc.:
17
      Dickie, McCamey & Chilcote
18    by Steven W. Zoffer, Esq.
      and David McKenery, Esq.
19
   For the Defendant Advance Transformer:
20
      Morgan, Lewis & Bockius
21    by Joseph Brooks, Esq.
22 For the Defendant Southco, Inc.:
23    Meyer, Unkovic & Scott
      by Russell J. Ober, Jr., Esq.
24
25

**Page 3**

1
2              I N D E X
3              -----
4
5     WITNESS: PAULA LYNN GARRET
6
7  E X A M I N A T I O N:          PAGE
8
9  BY MR. OBER                     6
10 BY MR. NEAL                     116
11 BY MR. BROOKS                   218
12 BY MR. ZOFFER                   250
13 BY MR. BROOKS                   251
14
15 E X H I B I T S:
16
17 GARRET EXHIBIT NOS. 1-2         38
18 GARRET EXHIBIT NO. 3            58
19 GARRET EXHIBIT NO. 4            64
20 GARRET EXHIBIT NO. 5            65
21 GARRET EXHIBIT NO. 6            68
22 GARRET EXHIBIT NO. 7            70
23 GARRET EXHIBIT NO. 8            77
24 GARRET EXHIBIT NO. 9            83
25 GARRET EXHIBIT NO. 10           84

**Page 4**

1
2  E X H I B I T S (CONT'D)        PAGE
3
4  GARRET EXHIBIT NO. 11           88
5  GARRET EXHIBIT NO. 12           97
6  GARRET EXHIBIT NOS. 13-14       99
7  GARRET EXHIBIT NO. 15           101
8  GARRET EXHIBIT NO. 16           108
9  GARRET EXHIBIT NO. 17           110
10 GARRET EXHIBIT NO. 18           112
11 GARRET EXHIBIT NO. 19           114
12 GARRET EXHIBIT NO. 20           119
13 GARRET EXHIBIT NO. 21           127
14 GARRET EXHIBIT NO. 22           129
15 GARRET EXHIBIT NO. 23           147
16 GARRET EXHIBIT NO. 24           147
17 GARRET EXHIBIT NO. 25           149
18 GARRET EXHIBIT NO. 26           151
19 GARRET EXHIBIT NO. 27           165
20 GARRET EXHIBIT NO. 28           168
21 GARRET EXHIBIT NO. 29           170
22 GARRET EXHIBIT NO. 30           181
23 GARRET EXHIBIT NO. 31           198
24
25

Paula Lynn Garrett
October 30, 2006

National Railroad Passenger Corp. vs.
Forum, Inc.

Page 9

1          P. Garret - by Mr. Ober
2    question.  Do you have any reason to believe
3    that any of the information contained in these
4    Interrogatory Answers is not true and correct
5    to the best of your knowledge, information and
6    belief?
7         A.  No.
8         Q.  I would ask you to just keep those
9    things in front of you because during the
10   course of the deposition, we are likely to be
11   referring back to one or the other.  Okay?
12        A.  Yes.
13        Q.  What is your position with Forum,
14   Inc.?
15        A.  I'm the senior manager.  I'm the
16   owner of our small family-owned business.
17        Q.  I take it that Forum, Inc. is an
18   incorporated entity?
19        A.  Yes.
20        Q.  Is it incorporated in Pennsylvania?
21        A.  Delaware.
22        Q.  Headquartered in Pennsylvania; is
23   that right?
24        A.  Yes.
25        Q.  Where is the principal place of

Page 10

1          P. Garret - by Mr. Ober
2    business of Forum, Inc. at the moment?
3         A.  In Fox Chapel.
4         Q.  What is the address?
5         A.  908 Old Freeport Road.
6         Q.  How long has it been at that
7    location?
8         A.  Since November of 2001.
9         Q.  Where was it located before that?
10        A.  Across the river in Pittsburgh at
11   214 North Lexington.
12        Q.  How long has the company been in
13   business?
14        A.  Dad started the company -- I believe
15   it was 1964.
16        Q.  You said it was started by your
17   father?
18        A.  Yes.
19        Q.  What was his name?
20        A.  Norman Garret.
21        Q.  How would you describe the business
22   of Forum, Inc.?
23        A.  We manufacture quality commercial
24   lighting fixtures.
25        Q.  Has the company been in that

Page 11

1          P. Garret - by Mr. Ober
2    business since 1964?
3         A.  Yes.
4         Q.  Are you the president of the
5    company?
6         A.  There isn't a president per se.  My
7    father just passed away a year and a half ago
8    and out of respect for him, my brother and I,
9    neither one of us use that title on a regular
10   basis, but I would be the senior ranking
11   officer.
12        Q.  What is your brother's name?
13        A.  Jonathan.
14        Q.  Is he also an officer?
15        A.  Yes.
16        Q.  Are there any other officers other
17   than you and your brother?
18        A.  I have a sister who is not involved
19   in the business.
20        Q.  But she holds an office with the
21   company?
22        A.  No.  I'm sorry.  She is a
23   shareholder.
24        Q.  How many shareholders are there?
25        A.  There are the four in the family,

Page 12

1          P. Garret - by Mr. Ober
2    and we have a minority shareholder who is
3    outside of the family.
4         Q.  The minority shareholder, is that
5    someone who was an employee at some point along
6    the way?
7         A.  Yes.
8         Q.  He or she?
9         A.  He.
10        Q.  How many employees of the company do
11   you presently have?
12        A.  Approximately 30.
13        Q.  When you say you manufacture
14   commercial lighting fixtures, can you be a
15   little more specific?  Describe for me the
16   kinds of fixtures that you make.
17        A.  We make approximately 30 standard
18   lines of fixtures.  They are fixtures that
19   would be manufactured for commercial
20   installations, hotels, offices, airports,
21   et cetera.
22        Q.  Are they like these lights in this
23   room?
24        A.  No.
25        Q.  What are they like?

3  (Pages 9 to 12)

Paula Lynn Garrett
October 30, 2006

National Railroad Passenger Corp. vs.
Forum, Inc.

---

**Page 73**

```
 1          P. Garret - by Mr. Ober
 2  Paula."
 3      Q.   Now, I'm assuming that this
 4  emotional and sarcastic note was relating to
 5  something that preceded it?
 6      A.   Yes.
 7      Q.   What was that?
 8      A.   It was a letter written by Cathy
 9  Mannix of Southco.
10      Q.   Can you recall what that letter
11  said?  I would put it in front of you, but I
12  don't think we have it.
13      A.   I don't without seeing it.
14      Q.   That's why I said I would have given
15  it to you if we had it, but we just don't have
16  it.
17      A.   It's clear from the tone, from the
18  words I wrote that she had asserted in her
19  letter that the clips that we presented to her
20  that were rusting hadn't rusted.
21      Q.   In any event, this document is dated
22  September 6 of 2000; right?
23      A.   Yes.
24      Q.   As I understand your testimony, the
25  complaints concerning rust relating to the
```

**Page 74**

```
 1          P. Garret - by Mr. Ober
 2  Southco latches predated this note by some
 3  months.  Is that an accurate statement?
 4      A.   Yes.
 5          MR. ZOFFER:  For the record,
 6  I'm going to just interpose an objection to the
 7  use of this document to the extent that the
 8  witness, and I understand why that is -- we
 9  haven't been able to identify the complete
10  document -- she is not being shown the complete
11  document, but for contextual purposes there is
12  an indication that it is a two-page document
13  and with the understanding and the explanation
14  of counsel, I'll just put that objection on the
15  record.
16          MR. OBER:  I'm guessing that
17  you folks didn't have it or you would have
18  produced it and apparently we didn't have it so
19  it's lost.
20          MR. ZOFFER:  The Cathy Mannix
21  letter was produced.
22          MR. OBER:  Was it?
23          MR. ZOFFER:  Yes.
24          MR. OBER:  Then it must not
25  have matched up.  It doesn't really matter
```

**Page 75**

```
 1          P. Garret - by Mr. Ober
 2  because all I was really interested in was the
 3  issue of the rust.
 4          MR. ZOFFER:  I think it's
 5  important for context on this comment, too, but
 6  to the extent we have an objection on the
 7  record, we will leave it at that.
 8  BY MR. OBER:
 9      Q.   Let me ask this.  By September of
10  2000, all of the lighting fixtures had been
11  shipped out the door by Forum; right?
12          MR. ZOFFER:  Objection.  Asked
13  and answered.  Go ahead.
14      Q.   This is just a little setup for
15  something.
16      A.   No.
17      Q.   Aside from the replacements that you
18  testified were shipped in September or October
19  of 2000, all of the original order lighting
20  fixtures had been shipped to Amtrak by
21  September of 2000; is that right?
22      A.   Except for New London which was
23  shipped in February of 2001.
24      Q.   You said that there were seven
25  stations?
```

**Page 76**

```
 1          P. Garret - by Mr. Ober
 2      A.   Yes.
 3      Q.   If we take New London out of the
 4  mix, where were they?  Boston?
 5      A.   Philadelphia, Providence, Baltimore
 6  and Washington, D.C.
 7      Q.   So those six had all been installed
 8  by September of 2000?
 9      A.   We had shipped them.  I don't know
10  when they were installed.
11      Q.   Did you wind up getting around to
12  visit or inspect all of the seven stations?
13      A.   We visited each of the stations.
14      Q.   Did you visit each of the stations
15  when the installation had been complete?
16      A.   I don't believe I visited all of the
17  stations after they were completely installed.
18      Q.   You visited some of them but not all
19  of them after they were completely installed?
20      A.   Probably most.
21      Q.   Based upon your visitation of the
22  various stations and then in addition to that
23  other information that you have obtained along
24  the way, do you have a sense as to when the
25  installation of the original orders had been
```

19  (Pages 73 to 76)

Paula Lynn Garrett
October 30, 2006

National Railroad Passenger Corp. v.
Forum, Inc.

| Page 77 | Page 79 |
|---|---|
| 1       P. Garret - by Mr. Ober<br>2 completed at all stations?<br>3    A.  No, because I didn't necessarily<br>4 visit a station after it was complete. Some of<br>5 the stations we visited as they were<br>6 installing.<br>7    Q.  Then let me ask you this. Do you<br>8 know whether or not as we sit here today all of<br>9 the original lighting fixtures have been<br>10 installed?<br>11    A.  Yes.<br>12    Q.  If we go back two years from today,<br>13 were they all installed by two years from --<br>14    A.  Yes.<br>15    Q.  Do you have any reason to believe<br>16 that by, say, April of 2002 all of the original<br>17 lighting fixtures had been installed?<br>18    A.  I believe so.<br>19    Q.  I'm just trying to establish a<br>20 chronology.<br>21       (Garret Exhibit No. 8 was<br>22 marked for identification.)<br>23    Q.  Our reporter has marked and placed<br>24 before you Deposition Exhibit No. 8 which<br>25 appear to be notes of a meeting at the Route | 1       P. Garret - by Mr. Ober<br>2 broken and rusted. Do you see that No. 8?<br>3    A.  Yes.<br>4    Q.  Was there also a complaint -- You<br>5 explained to us earlier what the straps were,<br>6 but were there also complaints that the latches<br>7 that held the lenses in place were rusting?<br>8    A.  Yes.<br>9    Q.  That isn't reflected on these notes<br>10 here. I was wondering if that was a topic that<br>11 was discussed but not noted by the author of<br>12 the notes or whether it just didn't get<br>13 discussed during this meeting?<br>14    A.  It was discussed.<br>15    Q.  So it was just an omission on the<br>16 part of the author of the notes; right?<br>17    A.  Yes.<br>18    Q.  Also discussed was the issue of the<br>19 clips too tight. Do you see that No. 9?<br>20    A.  Yes.<br>21    Q.  It says "because the strap tension<br>22 was not adjusted for the replacement lenses."<br>23 What does that mean?<br>24    A.  I'm struggling to remember what it<br>25 means out of context. I can't tell you. |

| Page 78 | Page 80 |
|---|---|
| 1       P. Garret - by Mr. Ober<br>2 128 Amtrak Station on September 19, 2000. Did<br>3 you attend that meeting?<br>4    A.  Yes.<br>5    Q.  Do you know who created these notes?<br>6    A.  Don Dziubaty.<br>7    Q.  I take it that he was one of the<br>8 attendees at the meeting?<br>9    A.  Yes.<br>10    Q.  Based upon your recollection of the<br>11 meeting, do these notes accurately reflect what<br>12 occurred?<br>13     MR. ZOFFER: Just for clarity,<br>14 Russ, do you mean that these were the subjects<br>15 that were discussed? You're not asking whether<br>16 these actually occurred; right?<br>17     MR. OBER: That's actually<br>18 quite right, and that's a much more accurate<br>19 way of expressing it.<br>20    Q.  Were these the subjects discussed at<br>21 the meeting?<br>22    A.  Yes.<br>23    Q.  I see that one of the subjects<br>24 discussed was that the lens strap clips which I<br>25 assume refers to the Southco latches were | 1       P. Garret - by Mr. Ober<br>2    Q.  If you drop down to the bottom,<br>3 there are some action items that relate to<br>4 Forum. Do you see that?<br>5    A.  Yes.<br>6    Q.  It appears to me -- but I want you<br>7 to correct me if I'm wrong -- that two of them,<br>8 specifically Nos. 2 and 3 relate to latch<br>9 issues. Am I right about that?<br>10    A.  Yes.<br>11    Q.  No. 2 says -- and I quote --<br>12 "Replace all clips on straps and adjust straps<br>13 to accommodate injected molded ends." What does<br>14 that mean?<br>15    A.  That means that we replaced all of<br>16 the clips on the straps and made some<br>17 adjustment to the straps as well in our<br>18 manufacturing process.<br>19    Q.  Why was there an adjustment made to<br>20 the straps in the manufacturing process?<br>21    A.  At the request of Amtrak to ease<br>22 their installation issues.<br>23    Q.  When you say replace all clips on<br>24 the straps, was that just in the Boston station<br>25 or was that systemwide? |

20 (Pages 77 to 80)

Powers, Garrison & Hughes

Paula Lynn Garrett
October 30, 2006

National Railroad Passenger Corp. vs
Forum, Inc.

| Page 125 | Page 127 |
|---|---|
| 1    P. Garret - by Mr. Neal | 1    P. Garret - by Mr. Neal |
| 2  accordance with your agreement with Amtrak? | 2  questions they had. |
| 3    MR. ZOFFER: Again, I'm going | 3    Q.  Were you ever on site assisting with |
| 4  to object to the form of the question to the | 4  the installation of the lighting fixtures? |
| 5  extent you're not telling her what you mean by | 5    A.  I was on site. We didn't assist in |
| 6  responsible for. In what way would they be | 6  terms of putting the lighting fixtures in or |
| 7  responsible for Southco or Advance? | 7  installing the light fixtures. We would answer |
| 8    Q.  You can answer the question. | 8  questions. |
| 9    MR. ZOFFER: If you can. | 9    Q.  But when I say you, I mean Forum, |
| 10   A.  I can't, because that's where I'm | 10  you or anyone else at Forum. You weren't |
| 11 stuck. | 11  involved in the actual installation of any of |
| 12   Q.  What are you stuck on, ma'am? | 12  the lighting fixtures? |
| 13   A.  In what way am I responsible? | 13  A.  No. |
| 14   Q.  I think you testified before Amtrak | 14  Q.  Or any of the ballasts? |
| 15 did not find Southco or Advance, did they? | 15  A.  The ballasts are installed at our |
| 16   A.  No. | 16 factory. |
| 17   Q.  Did Forum find Advance and Southco? | 17  Q.  What about the clips? Did Forum |
| 18   A.  Yes. | 18 have any role in the installation of the clips? |
| 19   Q.  Are you aware of any contractual | 19  A.  In the lighting fixtures as they |
| 20 relationship between Forum and Advance? | 20 left the factory. |
| 21   MR. BROOKS: Objection. | 21    (Garret Exhibit No. 21 was |
| 22   MR. ZOFFER: Objection. Go | 22 marked for identification.) |
| 23 ahead if you understand. | 23  Q.  The court reporter has put what is |
| 24   A.  A purchase order. | 24 marked as Exhibit No. 21 before you. Can you |
| 25   Q.  Between Forum -- | 25 identify that document, please? |

| Page 126 | Page 128 |
|---|---|
| 1    P. Garret - by Mr. Neal | 1    P. Garret - by Mr. Neal |
| 2    MR. BROOKS: Objection | 2  A.  It's the supplies equipment |
| 3 withdrawn. | 3 contract. |
| 4   Q.  Are you aware -- | 4  Q.  That's between Amtrak and Forum; is |
| 5    MR. ZOFFER: Mine will stand. | 5 that correct? |
| 6   Q.  Are you aware of any contract | 6  A.  Yes. |
| 7 between Amtrak and Advance? | 7  Q.  Have you ever seen this document |
| 8   A.  No. | 8 before? |
| 9   Q.  How about between Amtrak and | 9  A.  Yes. |
| 10 Southco? | 10  Q.  Did you see it around the time it |
| 11   A.  No. | 11 was executed? |
| 12   Q.  You have already testified today | 12  A.  I think so. |
| 13 that it was not Forum's duties to install the | 13  Q.  Let me direct your attention to what |
| 14 lighting fixtures; is that correct? | 14 is Paragraph 12. That paragraphs deals with |
| 15   A.  Yes. | 15 contract documents. Do you see that, ma'am? |
| 16   Q.  In other responses, you stated a | 16  A.  Yes. |
| 17 number of times that you consulted with the | 17  Q.  Can you just look through those and |
| 18 installation of the lighting fixtures. Do you | 18 see whether or not you believe that these |
| 19 recall that? | 19 documents also make up part of the contract |
| 20   A.  Yes. | 20 between Amtrak and Forum? |
| 21   Q.  What did you mean by that? | 21    MR. ZOFFER: Again, while she |
| 22   A.  That we would on occasion at | 22 is looking, to the extent it calls for a legal |
| 23 Amtrak's request meet with the Amtrak | 23 conclusion, I'll put an objection on the |
| 24 installing contractors. We were also at | 24 record. |
| 25 Amtrak's request available to answer any phone | 25  A.  Yes, it appears to. |

32  (Pages 125 to 128)

Paula Lynn Garrett
October 30, 2006

National Railroad Passenger Corp. vs.
Forum, Inc.

Page 217

1          P. Garret - by Mr. Neal
2    form of the question.  Go ahead.
3          A.    I have and Don Dziubaty has.
4          Q.    Who at Forum other than you would
5    know about any attempts to repair or replace or
6    remedy or cure the light fixtures or the
7    component parts, the clips, the ballasts?
8          MR. ZOFFER:  Objection to
9    form.  Let me just put a standing objection as
10   to the notice and those areas described as
11   beyond the scope to the extent that they are
12   and to the extent that they are ambiguous or
13   otherwise objectionable.
14          THE WITNESS:  Would you
15   re-read his question, please?
16          (Question read back.)
17          A.    There are things in there we did not
18   do including repair the fixtures.
19   BY MR. NEAL:
20          Q.    Anyone other than you at Forum who
21   can talk about replacement clips or replacement
22   ballasts or the replacement of fixtures other
23   than you?
24          A.    Don Dziubaty or Jonathan.
25          Q.    The answer may be no one to the next

Page 218

1          P. Garret - by Mr. Neal
2    question based on your prior testimony.  Let me
3    try anyway.  Is there anyone at Forum that you
4    know of who would have any knowledge regarding
5    whether Forum took any steps to ensure that
6    either Advance or Southco conformed with the
7    design specifications?
8          MR. ZOFFER:  Same objection.
9          A.    No.
10         Q.    You don't know of anyone?
11         A.    No.
12          MR. NEAL:  That's it.
13          (Discussion held off the
14   record.)
15          (Garret Exhibit No. 34 was
16   marked for identification.)
17          -----
18          EXAMINATION
19   BY MR. BROOKS:
20         Q.    Ms. Garret, can you identify that
21   exhibit, please?
22         A.    Yes.  It's a Forum purchase order to
23   Advance Transformer.
24         Q.    You testified earlier about this as
25   the document that was the contract with

Page 219

1          P. Garret - by Mr. Brooks
2    Advance.  Are you aware of any other documents
3    that constitute the contract between Forum and
4    Advance?
5          MR. ZOFFER:  Objection to the
6    characterization of the document which speaks
7    for itself and the prior testimony which also
8    will be reflected by the transcript, but to the
9    extent you understand the question, go ahead.
10         A.    This is a purchase order.  I don't
11   know offhand what the Amtrak -- I'm sorry --
12   the Advance confirmation of this purchase
13   order, what the language was on that document.
14         Q.    Do you see the handwriting that
15   appears in the body of the document?
16         A.    Yes.
17         Q.    Are you able to identify whose
18   handwriting that is?
19         A.    Yes.
20         Q.    Whose is that?
21         A.    Linda Jones.
22         Q.    Do you have any understanding of why
23   Linda Jones made the notations that are on this
24   document?
25         A.    It would be her way of looking at

Page 220

1          P. Garret - by Mr. Brooks
2    this document versus an invoice that we
3    received.
4          Q.    Would she be confirming receipt
5    dates for the product indicated on the
6    document?
7          A.    Yes.
8          Q.    That would be received by Forum;
9    correct?
10         A.    Yes.
11         Q.    If she did that, would that have
12   been part of her regular job responsibilities
13   as an employee of Forum?
14         A.    Yes.
15         Q.    This document with the handwritten
16   notations on it, I can tell you based on the
17   bates number that appears in the lower
18   right-hand corner it was produced to us by
19   Forum.  Was this document kept, this form with
20   this notation in the business files of Forum,
21   Inc.?
22         A.    Yes.
23         Q.    It indicates on here that the first
24   shipment of ballasts was received by Forum from
25   Advance on July 30, 1999.  Do you see that?

55  (Pages 217 to 220)

Paula Lynn Garrett
October 30, 2006

National Railroad Passenger Corp. vs.
Forum, Inc.

Page 221

1        P. Garret - by Mr. Brooks
2     A.   I see when it says 6/22/99 if you're
3  looking for the earliest.
4     Q.   If you look before that under the
5  first entry it says "Received 100 pieces
6  7-30-99" and again --
7     A.   Yes.
8     Q.   Then if you go down to the end, do
9  you see it indicates 900 pieces were received
10  on January 5, 2000?
11     A.   Yes.
12     Q.   Do you have any reason to disagree
13  with those dates?
14     A.   No.
15        (Garret Exhibit No. 35 was
16  marked for identification.)
17     Q.   Do you have Exhibit No. 35 in front
18  of you?
19     A.   Yes.
20     Q.   Is that form, that's the first page
21  of Exhibit No. 35, is that a form that's used
22  by Forum?
23        MR. ZOFFER:  Joe, for the
24  record, before she responds, it looks like the
25  bates numbers are cut off.  I just want to make

Page 222

1        P. Garret - by Mr. Brooks
2  sure that we are identifying this for the
3  record.
4        MR. BROOKS:  I can tell you
5  the bates numbers were cut off when we copied
6  them off the disk that was produced.
7        MR. ZOFFER:  It looks like the
8  last page is F01184 so I'm assuming the first
9  page is F01182 and the second page would be
10  183.
11        MR. BROOKS:  I don't think you
12  can make that assumption.
13  BY MR. BROOKS:
14     Q.   I can tell you this, Ms Garret.  You
15  can assume that this document was produced to
16  us by Forum and again my question is:  The
17  first page Receiving Inspection Report, do you
18  recognize that as a form that's used by Forum?
19     A.   Yes.
20     Q.   What is the purpose of that form?
21     A.   To acknowledge what it is we have
22  received.
23     Q.   Do you understand that this exhibit,
24  the first page of Exhibit No. 35 acknowledges
25  the receipt of 100 ballasts from Advance on --

Page 223

1        P. Garret - by Mr. Brooks
2  it looks like the date is 7/30/99 and the
3  quantity is 100 and it references purchase
4  order 32886?  Have I given that information
5  correctly?
6     A.   Except for the last two digits of
7  the date are cut off.
8     Q.   If you look at the second page of
9  this exhibit, do you see there is an Advance
10  Transformer Company invoice?
11     A.   Yes.
12     Q.   It has an invoice date of 7/28/99?
13     A.   Yes.
14     Q.   Quantity shipped 100, date shipped
15  July 28, 1999?
16     A.   Yes.
17     Q.   I think we can safely assume that
18  the prior page that the date is 1999 especially
19  when you take into account the purchase order
20  date for 32886 on Exhibit No. 34 is June 18,
21  1999 and that's the same purchase order that's
22  referenced on the first page of Exhibit No. 35?
23        MR. ZOFFER:  Counsel, the
24  document speaks for itself.  It's your
25  document.  If you want to represent that's the

Page 224

1        P. Garret - by Mr. Brooks
2  case, we'll take that representation, but I
3  don't think this witness can identify the dates
4  on your document.
5        MR. BROOKS:  With all due
6  respect, Counsel, this is your document exactly
7  and the only way it could be copied from the
8  disk that you provided.
9        MR. ZOFFER:  No.  Actually,
10  the second page, Counsel, is your client's
11  document and that's what you're reading from.
12        MR. BROOKS:  Counsel, the
13  second page has your bates number on it.
14        MR. ZOFFER:  That's fine, but
15  that's not what you're asking about.  You're
16  reading to her text from your document produced
17  by Advance.
18  BY MR. BROOKS:
19     Q.   Ms. Garret, do you have any reason
20  to dispute that the document you have
21  identified as Exhibit No. 35, the first page is
22  a Receiving Inspection Report that includes the
23  purchase order number that's the same purchase
24  order as Exhibit No. 34, in fact, relates to
25  the year 1999?

56 (Pages 221 to 224)

Paula Lynn Garrett
October 30, 2006

National Railroad Passenger Corp. vs.
Forum, Inc.

| Page 229 | Page 231 |
|---|---|
| 1      P. Garret - by Mr. Brooks | 1      P. Garret - by Mr. Brooks |
| 2      A.   I did. | 2  characterization of the contract which you |
| 3      Q.   Did you communicate directly with | 3  stated previously which I have objected to. |
| 4  Mr. Lassoff? | 4  With that understanding, she can go ahead and |
| 5      A.   Yes. | 5  answer if she understands. |
| 6      Q.   Could you describe for me the manner | 6      A.   I think I understand.  Initially |
| 7  in which you understood the warranty, the | 7  when we were discussing with Al Lassoff the |
| 8  manufacturer's warranty offered by Advance to | 8  ballasts, we initially talked to him about the |
| 9  have been extended and modified? | 9  warranty period on the ballasts, and we showed |
| 10      MR. ZOFFER:  Objection to | 10  him the specification and the requirements of |
| 11  form.  Go ahead. | 11  the ballast warranty in the specs. |
| 12      MR. BROOKS:  What is the | 12  BY MR. BROOKS: |
| 13  objection?  I want to cure it if I can. | 13      Q.   The intention, if I'm understanding |
| 14      MR. ZOFFER:  The manner in | 14  correctly, because that's what it indicates |
| 15  which -- It was very awkwardly stated.  I'm not | 15  here in the Interrogatory Response was to |
| 16  sure the witness can understand the question. | 16  conform, if you will, the Advance warranty to |
| 17      MR. BROOKS:  I'll rephrase the | 17  the warranty that was required by Amtrak under |
| 18  question. | 18  its contract with Forum? |
| 19  BY MR. BROOKS: | 19      A.   Yes. |
| 20      Q.   Can you tell me your understanding | 20      Q.   If you can go to Exhibit 20 which is |
| 21  of how Advance extended or modified its | 21  in front of you I believe, I would direct your |
| 22  manufacturer's warranty? | 22  particular attention, Ms. Garret, to page 4, |
| 23      A.   The conversation that I remember was | 23  Paragraph 10.  My question is:  Is this the |
| 24  when we received a report from Amtrak that some | 24  warranty language that you discussed with |
| 25  of the ballasts were failing, it was at that | 25  Mr. Lassoff? |

| Page 230 | Page 232 |
|---|---|
| 1      P. Garret - by Mr. Brooks | 1      P. Garret - by Mr. Brooks |
| 2  point that I spoke with Al Lassoff. | 2      A.   There is specific ballast warranty |
| 3      Q.   So the warranty was not extended or | 3  language in another section. |
| 4  modified at any point in time prior to entering | 4      Q.   Let's try, if we could, then Exhibit |
| 5  into the contract with Advance; is that | 5  No. 22.  I don't think the pages are numbered. |
| 6  correct? | 6  If you go by the bates stamp numbers, go to |
| 7      MR. ZOFFER:  Objection.  Lacks | 7  page 3272 by the bates stamp number.  You will |
| 8  foundation. | 8  see it says warranty there under Paragraph 6? |
| 9      MR. BROOKS:  I'm following up | 9      A.   Yes. |
| 10  on the witness' earlier response.  I believe | 10      Q.   The language carries over to the |
| 11  the witness responded that the conversation she | 11  next page including 6.2 which appears to apply |
| 12  testified about about the extension and | 12  specifically to ballast.  My question to you |
| 13  modification of the warranty occurred at the | 13  Ms. Garret, is:  Is this the warranty language |
| 14  point in time when the ballasts failed which | 14  that you discussed with Mr. Lassoff? |
| 15  presumably was some time after the ballasts | 15      A.   Initially, yes. |
| 16  were delivered and some time after the contract | 16      Q.   Is this the warranty language that |
| 17  was entered into. | 17  Mr. Lassoff agreed to on behalf of Advance |
| 18  BY MR. BROOKS: | 18  according to your testimony? |
| 19      Q.   My question given the witness' | 19      A.   According to my memory, yes. |
| 20  answer is:  Am I to understand then that you | 20      Q.   Do you see where it says under 6.1 |
| 21  don't recall any discussion about modifying or | 21  that "Warrant the fixture, its finishes, and |
| 22  extending the warranty at any time before the | 22  all of its component parts, except ballasts to |
| 23  contract was entered with Advance? | 23  be free from defects for a period of one year |
| 24      MR. ZOFFER:  Objection.  For | 24  from date of acceptance if operated within |
| 25  the record, my problem is with your | 25  rated voltage range"? |

58  (Pages 229 to 232)

Paula Lynn Garrett
October 30, 2006

National Railroad Passenger Corp. v.
Forum, Inc.

Page 237

1           P. Garret - by Mr. Brooks
2       Q.    Let's try it again. I'll try to go
3   through it slow, and I apologize if my
4   questions have been convoluted. If I'm
5   understanding both your response to
6   Interrogatory No. 8 and your testimony today,
7   when you spoke to Mr. Lassoff about the
8   warranty, the purpose was your intention was to
9   have Advance agree to a warranty between it and
10  Forum that would make the terms the same as the
11  warranty that existed between Forum and Amtrak
12  with respect to ballasts?
13      A.    Yes.
14      Q.    And that language is the language
15  that's in Exhibit No. 22?
16      A.    Yes.
17      Q.    In Exhibit No. 22, that language
18  like the language in the manufacturer's
19  warranty calls for the repair and the
20  replacement of any ballasts that are found to
21  be defective only here it's for a period of
22  three years; correct?
23      A.    Yes.
24      Q.    You testified about when you first
25  found out about ballast problems and if I could

Page 238

1           P. Garret - by Mr. Brooks
2   direct your attention to Exhibit No. 29.
3       MR. OBER:   Can I see Exhibit
4   No. 22 for a minute because I think this is
5   different from what I have as Exhibit No. 22?
6       MR. BROOKS:   Off the record
7   for a second.
8       (Discussion held off the
9   record.)
10      Q.    Ms. Garret, please look at Exhibit
11  No. 29. Do you have that in front of you?
12      A.    Yes.
13      Q.    That's a memo dated May 24, 2002;
14  correct?
15      A.    Yes.
16      Q.    Among the people that its directed
17  to is yourself; correct?
18      A.    Yes.
19      Q.    Do you have any reason to doubt that
20  you received this memo on or about May 24,
21  2002?
22      A.    No.
23      Q.    Do you see down Item No. 2 it
24  indicates a problem that's described as
25  defective ballast?

Page 239

1           P. Garret - by Mr. Brooks
2       A.    Yes.
3       Q.    You indicated that as far as the
4   ballasts were concerned, Forum did not get
5   directly involved with Advance. Did I
6   understand that correctly?
7       A.    I did not get directly involved with
8   Amtrak.
9       Q.    I understand you didn't get directly
10  involved with Amtrak, but did Forum get
11  involved with Advance or did Amtrak deal with
12  Advance directly with respect to the ballast
13  issues?
14      MR. NEAL:   Objection.
15  Compound.
16      MR. BROOKS:   Let me take a
17  step back. Withdraw the question.
18      Q.    If I understood your testimony
19  correctly, when you initially learned that
20  there was an issue with the ballasts, the
21  significant issue that came up in May of 2003,
22  you learned from Amtrak that they had already
23  been in contact with Advance; is that correct?
24      A.    Yes.
25      Q.    Subsequent to that time, any

Page 240

1           P. Garret - by Mr. Brooks
2   requests to repair or replace ballasts were
3   communicated directly by Amtrak to Advance; is
4   that correct?
5       A.    Yes.
6       Q.    Did you ever hear from Amtrak or any
7   other source that Amtrak requested that Advance
8   replace ballasts and Advance refused to do so?
9       A.    No.
10      Q.    Did you ever hear of any instance in
11  which Advance replaced ballasts and after the
12  ballasts were replaced, the replaced ballasts
13  failed?
14      A.    No.
15      MR. BROOKS:   I don't have any
16  further questions.
17      MR. OBER:   Not a one. Thank
18  you.
19      MR. ZOFFER:   Anybody else? I
20  just have a couple to clarify.
21      MR. BROOKS:   I'm sorry. There
22  is just one very small area I wanted to check
23  on.
24      MR. ZOFFER:   No problem. Go
25  ahead.

60 (Pages 237 to 240)