## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION, | ) ) ) | |
| Plaintiff, | ) | Civil Action No.: 1:05CV01837 |
| | ) | |
| v. | ) | Judge Paul L. Friedman |
| | ) | |
| FORUM, INC., | ) | Magistrate Judge Deborah A. Robinson |
| | ) | |
| Defendant and Third-Party Plaintiff, | ) ) | |
| | ) | **FILED ELECTRONICALLY** |
| v. | ) | |
| | ) | |
| ADVANCE TRANSFORMER, CO. and SOUTHCO, INC., | ) ) | |
| | ) | |
| Third-Party Defendants. | ) | |

## DEFENDANT AND THIRD-PARTY PLAINTIFF, FORUM, INC.'S MEMORANDUM IN OPPOSITION TO THIRD-PARTY DEFENDANTS, ADVANCE TRANSFORMER CO. AND SOUTHCO, INC.'S STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

AND NOW, comes Defendant and Third-Party Plaintiff, Forum, Inc. ("Forum") by and through its attorneys, Dickie, McCamey & Chilcote, P.C., and files the within Memorandum in Opposition to Third-Party Defendants, Advance Transformer Co.'s ("Advance") and Southco, Inc.'s ("Southco") Statements of Points and Authorities in Support of Motions for Summary Judgment.

## I.    INTRODUCTION

On or about August 18, 1998, National Railroad Passenger Corporation ("Amtrak") invited Forum to participate in a program to develop and manufacture luminaires (hereinafter referred to as "fixtures") for its northeast corridor station platforms. In 1998 and early 1999,

Forum submitted its technical proposal and quotation for the fixtures as well as a prototype fixture for installation and testing into one of Amtrak's stations. After extensive review, examination and testing, Amtrak approved the Forum fixture as having met Amtrak's specifications and in May of 1999 awarded Forum the manufacturing stage of the project.

During Phase 2, Forum manufactured the requested luminaires, as approved by Amtrak during Phase 1, in accordance with the design specifications and used, among other component parts, ballasts supplied by Third-Party Defendant, Advance and draw latches or "clips" supplied by Southco. Forum incorporated 39,300 Southco draw latches and 5,900 Advance ballasts into the original fixtures and delivered these fixtures to various Amtrak stations no later February 2001.

Amtrak allegedly began experiencing problems with the original luminaires, shortly after delivery, during its installation of the same.  Amtrak's engineering department knew of the alleged problems with the original luminaires no later than July 14, 2000, when it finalized a formal report on the topic titled, "HRS Platform Lighting Luminaire Review of Design, Prototype Development and Installation." Amtrak contacted Forum regarding alleged problems with Southco's draw latches rusting and breaking in the field. Amtrak also contacted Advance directly regarding ballast failures experienced at multiple Amtrak stations. Both Southco and Advance provided replacement parts for the fixtures.

Although Amtrak had taken delivery of all of the original luminaires by February, 2001, with the last being delivered to Amtrak's New London station, Amtrak waited until 2005 to file its lawsuit. Amtrak filed a Complaint on September 16, 2005, and a First Amended Complaint on October 27, 2005.  Amtrak advanced the following claims against Forum in this case:  (a) rejection/revocation of acceptance, (b) breach of contract, (c) breach of implied warranty of good

faith and fair dealing, (d) breach of express warranty, (e) breach of implied warranty, (f) negligence, (g) fraud, and (h) unjust enrichment. As a result of its learning that the problems alleged by Amtrak originated with the ballasts supplied by Advance and the draw latches or clips supplied by Southco, Forum, on May 8, 2006, joined Advance and Southco and asserted the following claims: (a) breach of contract, (b) unjust enrichment, (c) breach of express warranty, (d) negligence, and (e) common law contribution and indemnity.

## II.    ARGUMENT

At the outset, Forum maintains that <u>none</u> of the claims set forth in Amtrak's First Amended Complaint fall within the applicable statutes of limitation. As set forth in Forum's previously filed Statement of Points and Authorities, which is incorporated herein by reference, the claims advanced by Amtrak against Forum are stale and should be properly dismissed. However, and solely for the purpose of Forum's third-party action, Forum rightfully maintains its third-party action against Southco and Advance. Specifically, Forum's claims against Southco and Advance for indemnification and contribution, based upon certain warranties made by the parties, are not only properly sustainable but also are well within the applicable statute of limitation provisions.

### A.    Forum properly maintains a cause of action against Southco and Advance for indemnity and contribution.

In addition to its direct claims against Southco and Advance, Forum seeks to recover from the third-party defendants for indemnity and/or contribution on any liability stemming from the claims asserted by Amtrak. "Indemnity is a common law remedy that arises from an express or implied contract giving the right of complete reimbursement to one party who has been compelled by law to pay what the other party should pay. An obligation to indemnify exists where the equities of the case and the relationship of the parties support shifting responsibility

from one party to another" *Howard Univ. v. Good Food Servs, Inc.*, 608 A.2d 116, 122, 1992 D.C. App. Lexis 114, 16 (D.C. 1992) (citations omitted). In addition to Forum's direct claims being proper, Forum's claim for indemnity and contribution from the third-party defendants is certainly within the applicable statute of limitations and must survive summary judgment.

1.    **The District of Columbia recognizes a cause of action for Forum's indemnity and contribution against Southco and Advance.**

Advance contends that Forum's indemnity claim is barred because Advance is not a joint tortfeasor. However a review of relevant case law clearly establishes Forum's right to indemnity for Amtrak's various claims. Indemnity "may arise in contract or in tort: by an express or implied contract to indemnify; or by equitable concepts based on the tort theory of indemnity, for example, when one party has been only 'technically' or constructively at fault and the indemnitee has been actively at fault." *SEIU Health & Welfare Fund v. Phillip Morris, Inc.*, 83 F.Supp.2d 70, 93 (D. D.C. 1999)(citing *District of Columbia v. Murtaugh*, 728 A.2d 1237, 1245 (D.C. 1999)).

In *Williams v. Steuart Motor Co.*, 494 F.2d 1074 (D.C. Cir. 1974), the U.S. Court of Appeals for the District of Columbia upheld an indemnity action for an underlying breach of warranty claim. In *Williams*, plaintiff sued defendants Ford Motor Company and its authorized dealer, Steuart Motor Company, for damages sustained when a new Ford automobile careened out of control due to a defective accelerator. *Williams*, 494 F.2d at 1076. Plaintiff brought claims of negligence and breach of warranty. The defendants filed cross claims against each other, both seeking indemnity or contribution. *Id*. Steuart Motor Co.'s cross claim for indemnity from Ford "**was an indemnity action for breach of warranty rather than an action based in tort.**" *Id*. at 1083 (emphasis added). In upholding the trial court's decision on appeal, the Court of Appeals noted at the outset, "This circuit, differentiating between indemnity and contribution in cases

between persons liable for a wrong, has said that in indemnity the law implies an agreement or obligation and enforces a duty on the primary or principal wrongdoer to respond for all the damages whereas in contribution there is no agreement, express or implied, but a common burden in which the parties stand in equili juri and which in equity and good conscience should be equally borne." *Williams*, 494 F.2d at 1083 n.11 (citing *George's Radio v. Capital Transit Co.*, 75 U.S. App.D.C. 187, 126 F.2d 219 (1942). The court went on to hold that "**[o]rdinarily a dealer may recover from the manufacturer losses occasioned by the latter's breach of warranty**, and the present case poses no exceptions. Clearly Steart's breach of warranty to plaintiff rested on Ford's breach of warranty to Steuart." *Id*. at 1084.

Similarly, in the present action, Amtrak has alleged that Forum breached its warranty with regard to the light fixtures containing component parts from Advance and Southco. Amtrak has also alleged, through the documents of record in this case, that the components parts supplied by Advance and Southco were defective, in that the latches supplied by Southco rusted in the field and the ballasts supplied by Advance suffered failure at certain Amtrak station locations. Furthermore, both Southco and Advance made certain warranties to Forum concerning the quality of the component parts supplied for use in the fixtures.

The warranty contained in Forum's purchase order and applicable to both Southco and Advance states:

> 9.    WARRANTY OF MATERIAL. The Seller [Southco and Advance] expressly warrants that all of the articles, materials and work covered by this order shall conform to the specifications, that they will be merchantable, of goods material and workmanship and free from defect. This warranty shall run to the Buyer [Forum], its successors, assigns, customers and user of its products [Amtrak]. All warranties herein shall be construed as conditions as well as warranties and the representations and conditions herein contained shall not be deemed to be exclusive.

In addition to the warranty set forth above, both Southco and Advance agreed to extended warranties to Forum for the component parts in the fixtures supplied to Amtrak.[1]

Thus, Forum's alleged breach of warranty to Amtrak rests on Southco's and Advance's alleged breaches of warranties to Forum. As such, based upon District of Columbia case law directly on point, Forum is entitled to seek indemnity from Southco and Advance for Amtrak's claims.

Case law from the District of Columbia establishes Forum's right to seek indemnity from Advance and Southco for Amtrak's claim for breach of warranty. In *McDaniel v. Durst Mfg. Co., Inc.*, 184 F.Supp. 430 (D. D.C. 1960), plaintiff purchased a propane gas refill tank from defendant for use in plumbing work he was contracted to perform for tenants of a building. *McDaniel*, 184 F.Supp. at 431. The propane tank exploded in the building causing property damage which was paid by the insurance companies of the tenants and owners of the building. *Id*. The insurance companies entered into an agreement with the plaintiff whereby the Plaintiff would bring suit against the defendant for breach of warranty, claiming as damages those suffered by plaintiff himself as well as the property damages of the tenants and the building owners which were assigned to plaintiff by the insurance companies as subrogees. *Id*. The court dismissed the claims of the tenants, building owners and their subrogees as being improperly assigned and held that the proper course of action would  be for the insurance companies to sue the plaintiff "for breach of warranty and [plaintiff] could have brought a third-party complaint against the [defendant] ... for indemnity against the claim of the insurance companies." *Id*. at 431 (citing 3 Moore's Federal Practice 423-427).

---

[1] *See*, Southco's Memorandum of Points and Authorities in Support of Motion for Summary Judgment, pp. 5-6; Advance's Memorandum in Support of Motion for Summary Judgment, pp. 4-5.

Additionally, a majority of jurisdictions have found a cause of action for indemnity based upon breaches of warranties, expressed or implied, under the U.C.C. In *Central Wash. Refrigeration, Inc. v. Barbee*, 946 P.2d 760 (Wash. 1997) the court examined whether a buyer may maintain an indemnity action against the seller based on breach of warranty. In that case, Central Washington Refrigeration, Inc. contracted with an orchard to install cold storage rooms. Central in turn contracted with McCormack Engineering to purchase the refrigeration coils which Central was to install. *Central Wash. Refrigeration, Inc.*, 946 P.2d at 761. "From the start, however, the orchard experienced problems with the cold storage rooms. After several repair attempts and an intervening bankruptcy by the orchard, the orchard defaulted on payments for the cold storage rooms and Central subsequently sued for payment." *Id*. The orchard counterclaimed for damages asserting claims that the cooling system was improperly designed, used poor workmanship and component parts. *Id*. Over four-and-a-half years after McCormack delivered its parts, a third-party complaint was filed against McCormack alleging the coils were defective which led to the problems experienced by the orchard and seeking contribution and/or indemnity from McCormack for any damages owed by Central to the orchard. *Id*.

The court in *Central Wash. Refrigeration, Inc.* adopted the majority rule (followed in California, Maine, Michigan, Minnesota, Missouri, Nebraska, New Hampshire, New York, North Carolina, Pennsylvania, and Virginia) and held "a contractual relationship under the U.C.C., with its implied warranties, provides sufficient basis for an implied indemnity claim when the buyer incurs liability to a third party as a result of a defect in the goods which would constitute a breach of the seller's implied or express warranties." *Id*. at 764.

Not only is Forum entitled to seek indemnity from Southco and Advance for Amtrak's breach of warranty claim, but Forum may also seek indemnity based upon Amtrak's breach of

contract claim and alternative revocation of acceptance claims. *Washington Hospital Center Corp. v. Waters*, 1992 U.S. Dist. Lexis 1298 (D. D.C. 1992) (transferring rather than dismissing defendants' indemnity action against United States founded upon defendants' alleged breach of contract to plaintiff.)

While Forum continues to deny that it breached any warranty and further maintains that Amtrak's claims are barred by the statute of limitations, Forum rightfully maintains an indemnity action against Southco and Advance for their respective breaches of warranty to Forum.

>  **2.    Section 28:2-725 of the D.C. Uniform Commercial Code does not control Forum's right to indemnity and contribution from Southco and Advance.**

Section 28:2-725 of the District of Columbia's Uniform Commercial code sets forth the statute of limitations for breach of contract and warranty claims. D.C.Code § 28:2-725(1) provides:

>  An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

D.C.Code § 28:2-725(1). D.C.Code § 28:2-725(2), in pertinent part, provides:

>  A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made . . ..

D.C.Code § 28:2-725(2).

Southco argues that this Honorable Court should extend Section 28:2-725 of the District of Columbia's enactment of the U.C.C. to Forum's third-party indemnity action, so as to apply the four-year statute of limitations running from the last date of delivery of the goods (Southco's latches and Advance's ballasts). Thus it is Southco's position that an action for indemnity must be commenced within the same four-year statute of limitations period as a breach of warranty claim.

A review of relevant case law reveals that Southco's interpretation is incorrect, and that Section 28:2-725, while applicable to the underlying claims being asserted by Amtrak, does not control the timing of Forum's indemnification action as to the additional defendants. Thus Forum's indemnification and contribution claims are not barred by any statute of limitations.

In *Edward's Roofing & Sheet Metal Co. v. The Celotex Corp.*, 619 F.2d 305 (4th Cir. 1980), the Fourth Circuit addressed the third-party defendant's similar argument in that case that Section 2-725 of the North Carolina U.C.C. barred all claims growing out of the sale of goods, including indemnity claims. *Edward's Roofing & Sheet Metal Co.*, 619 F.2d at 309. The third-party plaintiff argued, and the district court agreed, that "where one person's liability for a tort or breach of warranty committed by another is secondary, the statute of limitations does not commence to run against his right to indemnity from the party primarily liable until damages have been paid to the injured party." *Id*. In confirming on appeal, the Fourth Circuit began by noting that, as in the District of Columbia, "North Carolina follows the general rule that a cause of action on an obligation to indemnify normally accrues when the indemnitee suffers actual loss." *Id*. (citations omitted). In holding that Section 2-725 did not provide the controlling statute of limitations, the Fourth Circuit went on to note, "it is almost universally held that where one person's liability for a tort or breach of warranty committed by another is secondary, the statue of limitations does not start running against his right to indemnity from the party primarily liable until he has paid damages to the injured party." *Id*. at 310 (citing *Hager v. Brewer Equip. Co.*, 17 N.C.App. 489, 195 S.E.2d 54, 57 (1973)).

The Fourth Circuit went on to discuss the true nature of an indemnity action, where a party claiming indemnity does not seek recovery for damages directly sustained as a result of a defect in the product supplied by the indemnitor. *Id*. Instead, the indemnitee seeks compensation

from the indemnitor that was suffered as a result of having to pay damages rightfully owed by the indemnitor. Thus the claim for indemnity is separate and distinct from any possible claim that could have arisen at the time the goods were delivered. Therefore, as the Fourth Circuit held, Section 2-725 does not control the timing for filing an action for indemnity, which is a separate and distinct claim which accrues at the time the indemnitee pays damages to the injured party. *See*, *id*. ("The U.C.C. was not intended to shield manufacturers of defective products from indemnity claims made by their purchasers more than four years from the date of sale by the manufacturer.").

In *Titanium Metals Corp. v. Elkem Mgmt., Inc.*, 87 F.Supp.2d 429 (E.D. Pa. 1998) the Western District of Pennsylvania addressed the issue of the application of UCC 2-725 to an indemnification claim. Plaintiff, Titanium Metals Corporation ("Timet") sold contaminated metal alloy to its customer, Wyman-Gordon Company, who in turn used the contaminated alloy in products it sold to General Electric for use in military jets. *Titanium Metals Corp.*, 87 F.Supp.2d at 430. Because of the contaminated alloy, Wyman-Gordon paid General Electric $4.5 million and sought, and received, $2 million from Timet. *Id*. Timet, in turn, brought an action against the supplier of the contaminant, Elkem Management, Inc., alleging breach of contract, breach of express warranty, and breach of implied warranty of merchantability and fitness. *Id*. Elkem filed a motion for summary judgment arguing the Timet's claims were time-barred, relying on Pennsylvania's enactment of Section 2-725 of the UCC. *Titanium Metals Corp.*, 87 F.Supp.2d at 430. Timet countered by characterizing its claim as one for indemnity despite having not plead an actual indemnity claim. *Id*. Thus the question for the court was "whether the tender of delivery rule [Section 2-725] applicable generally in UCC actions applies to this claim for indemnity." *Id*. at 431.

After a careful and thorough analysis of the statutory language of Section 2-725 and related Pennsylvania statutes governing limitation periods, the court answered that question in the negative, holding that a claim for indemnity "is separate from an action for breach of warranty, and as such the claim here [for indemnity], accrued when Timet settled with Wyman-Gordon." *Id*. at 433. Central to the court's analysis is that applying the limitation period from Section 2-725 "would leave an innocent party without any remedy for claims that may be asserted beyond the original statute of limitations …." *Id*.

Likewise, in *Wingo v. Norfolk & Western Ry. Co.*, 638 F.Supp. 107 (W.D. Va. 1986), defendant-manufacturer's argued that Section 2-725 of Virginia's U.C.C. precluded defendant-railroad's cross claim for indemnity, which should have been brought within four years from the date the third-party manufacturers delivered asbestos products to the cross-claimant. *Wingo*, 638 F.Supp. at 112. The court disagreed, stating that "the implied warranty of merchantability that generally arises upon the sale (or delivery) of goods and the implied contract of indemnity that flows from the warranty are distinctly different and are governed by different statute of limitations." *Id*. The court's analysis focused on the point of accrual of the indemnity cause of action rather than the length of any particular statute of limitation. *Id*. The court concluded its analysis by holding that "[t]he accrual of a cause of action for indemnity, therefore is better linked to a time at which the indemnitee is injured, not the time at which the original plaintiff was injured." *Id*. at 113. Thus the defendant-railroad's indemnity claim was not time-barred by Section 2-725.

An action for indemnification accrues and the limitations period commences <u>not</u> at the time of the underlying breach of warranty, which would result if Section 2-725 controlled, but when the indemnitee pays a judgment or remits settlement monies. This presents the majority

view on this issue. *Hanscome v. Perry*, 542 A.2d 421, 425 (Md. Ct. Spec. App. 1988). Jurisdictions so holding include: **Maryland** - *Hanscome*, *supra*; **Virginia** - *Wingo*, *supra.*; **Pennsylvania** - *Titanium Metals Corp., supra*; **New Hampshire** - *Jaswell Drill Corp. v. General Motors Corp.*, 529 A.2d 875, 878-79 (N.H. 1987)(dismissing argument that Section 2-725 controls actions for indemnity, as indemnity actions "do not accrue for the purposes of the statute of limitations until a judgment has been paid by the third-party plaintiff."); **Maine** - *Cyr v. Michaud*, 454 A.2d 1376, 1385 (Me. 1983)("Because ... [indemnitee's] claims for indemnification are unique to him, the statute of limitations for these claims is applicable and not the statute of limitations [Section 2-725] which applies to the underlying plaintiff's claims of breach of warranty and strict liability."); **Michigan** - *Ameron, Inc. v. Chemische Werke Huls AG*, 760 F.Supp. 1234, 1237 (E.D. Mich. 1991)("an implied indemnity claim exists independent of a claim for breach of contract under the U.C.C.. To find otherwise and strictly apply U.C.C. section 2-725 could cause inequitable results. ... The reason for this rule is rooted in common sense: until the indemnitee has satisfied his liability, no loss has been suffered, and no wrong has been done to the indemnitee. Likewise, until his liability is satisfied, the full extent of the indemnitee's losses cannot be ascertained."); **New York** - *McDermott v. City of New York*, 406 N.E.2d 460, 460 (NY 1980) ("The cause of action for indemnification interposed against the manufacturer of an allegedly defective product is independent of the underlying wrong and for the purpose of the Statute of Limitations accrues when the loss is suffered by the party seeking indemnity. Hence, the dismissal of that part of the third-party complaint seeking indemnity, as barred by the four-year Statute of Limitations for breach of warranty measured from the date of tender of delivery (Uniform Commercial Code, § 2-725), was unwarranted."); **Missouri** - *City of Clayton v. Grumman Emergency Prods., Inc.*, 576 F.Supp. 1122, 1127 (E.D. Mo. 1983)(holding

that third-party claims for indemnity based upon breaches of express and implied warranties not time barred by Section 2-725 of the U.C.C. and noting, "This result does not imprudently enlarge the statute of limitations for breach of warranty."); **Nebraska** - *City of Wood River v. Geer-Melkus Constr. Co.*, 444 N.W.2d 305 (Neb. 1989) (Statute of limitations found in Section 2-725 of the U.C.C. does not bar third-party complaint for indemnity); **California** - *Carrier Corp. v. Detrex Corp.*, 4 Cal. App. 4th 1522, 1529 (Cal. Ct. App. 1992) ("We therefore hold that in a case involving indemnification for damages under express or implied warranty based on a sales contract, the traditional time limitations for commencement of actions will prevail over California Uniform Commercial Code section 2725."); **Minnesota** – *City of Wilmar v. Short-Elliot-Hendrickson, Inc.*, 512 N.W.2d 872 (Minn. 1994) (The Supreme Court of Minnesota held that defendant's cross-claim for indemnity and contribution against a manufacturer co-defendant was not subject to, and therefore not barred by, the U.C.C.'s four year statute of limitations, although the underlying claims sounded in breach of contract and breach of warranty.); **Washington** - *Central Wash. Refrigeration, Inc. v. Barbee*, 946 P.2d 760, 764-65 (Wash. 1997)("Indemnity actions are distinct, separate causes of action from the underlying wrong and are governed by separate statutes of limitations [than U.C.C. 2-725]. It is settled law that indemnity actions accrue when the party seeking indemnity pays or is legally adjudged obligated to pay damages to a third party. The statute of limitations on the indemnity action therefore begins to run at that point."); **Kentucky** - *Elec. Ins. Co. v. Freudenberg-NOK*, 2007 U.S. Dist. LEXIS 17292 (D. Ky. 2007) ("In sum, the court finds that the majority rule is more theoretically sound than the minority rule and also more consistent with Kentucky jurisprudence. It therefore holds that K.R.S. § 355.2-725 is inapplicable to the plaintiff's claims for indemnity.").

In the present case, Forum's claim for indemnity from Advance and Southco is not time-barred by D.C.Code § 28:2-725. Forum's indemnity claim is separate and distinct from the breach of warranty claims which Section 2-275 govern. As such, the indemnity claim has not began to accrue. In addition to the case law cited above which requires this result, following Southco's approach to its illogical conclusion illustrates the inherent flaw in applying Section 2-725 to indemnity actions.

For example, if a supplier of defective goods delivers those goods to a manufacturer in 2007, this would begin the running of the statute of limitations for the manufacturer's indemnity action against the supplier under Southco's approach. Yet, suppose the manufacturer waits to incorporate the defective goods into its product for 1 year (which would not be uncommon in a manufacturing setting) and delivers the product to its customer in 2008. This date would begin the running of the customer's breach of warranty claim against the manufacturer. Thus the manufacturer's indemnity claim would expire prior to the customer's breach of warranty claim. If the customer waits until the latest possible time within the statute of limitations (2012 in this example) then the manufacturer's claim for indemnity against the supplier of the defective goods has expired (indemnity action would have to be filed in 2011). Thus the manufacturer would have to bring a claim for indemnity against the supplier before the customer brings suit against the manufacturer. Additionally, the above example demonstrates how a plaintiff (the customer) can chose who, among the manufacturer and the supplier, will bear the burden of plaintiff's loss by waiting to file suit. The faulty logic of Southco's approach produces the inequitable result which has led courts to dismiss the application of Section 2-725 to claims for indemnity. *See*, *City of Wood River*, 444 N.W.2d at 311.

While not directly addressed by District of Columbia courts, the rationale that U.C.C. Section 2-725 does <u>not</u> provide the statute of limitations for indemnity and contribution claims is clearly supported by cases generally addressing indemnity actions. In *Keleket X-Ray Corp. v. U.S.*, 275 F.2d 167 (D.C. Cir. 1960), the court addressed the statute of limitations for tort claims against the United States. In that case, plaintiff suffered personal injuries while receiving an X-ray examination at a government institution on April 27, 1956. *Keleket X-Ray Corp.*, 275 F.2d at 168. Two years and 4 days later, plaintiff filed suit against Keleket and the United States and Keleket filed a cross-claim against the United States for contribution. *Id.* Plaintiff's claims against Keleket were timely based upon a three-year statute of limitations for private actions, however, Plaintiff's claims against the United States were dismissed as time-barred based upon 28 U.S.C. §2401(b), which provides that a tort claim must be filed within two years after it accrues. *Id.* On appeal, the court addressed the issues of whether Keleket's cross-claim for contribution against the United States was also time barred. The court noted the illogical result of barring the contribution action would mean that Keleket's suit under the Tort Claims Act would be barred before it even accrued. *Id.* at 169. In holding that the two-year statute of limitations found in 28 U.S.C. §2401(b) would not apply to bar actions for contribution, the court stated, "[w]e know of no reason why the law should let action or inaction of the injured party defeat a claim to contribution. Neither releasing one tort-feasor, ... nor allowing a statute of limitations to run in favor of one tort-feasor, as in this case, should be permitted to have that effect." *Id. See also*, *Yim v. Home Indem. Co.*, 95 F.R.D. 349 (D. D.C. 1982) (dismissing third-party defendants' contention that they not be subject to a third-party complaint for indemnity because the statute of limitations had run as to original plaintiff's claims).

To allow D.C.Code § 28:2-725 to provide the statute of limitations to Forum's claims for indemnity and contribution against Southco and Advance is contrary to the principles set forth in relevant case law from the District of Columbia. The general principal governing indemnity and contribution requires that these claims accrue only when, and if, Forum pays monies, or otherwise conveys a benefit, to Amtrak as a result of this case. *See*, *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 2006 U.S. Dist. Lexis 22818 (D. D.C. 2006). If D.C.Code § 28:2-725 applies to begin the running of the statute of limitations at four years from the date of Southco and Advance's delivery of the goods to Forum, Forum would have had to file its indemnity and contribution claims before Amtrak filed its claims, contrary to District of Columbia law. *See*, *Keleket X-Ray Corp. v. U.S.*, 275 F.2d 167 (D.C. Cir. 1960); *Yim v. Home Indem. Co.*, 95 F.R.D. 349 (D. D.C. 1982). To allow Amtrak to choose who will bear the burden of Amtrak's alleged loss by waiting to file suit is contrary to district of Columbia law. *Keleket X-Ray Corp.*, 275 F.2d at 169. *See also*, *Henry Fuel Co., Inc. v. Whitebread*, 236 F.2d 742, 744 (D.C. Cir. 1956) ("'The right to seek contribution belongs to the tortfeasor who has been forced to pay, and the existence of the right cannot logically depend upon a selection of defendants made by the plaintiff. If it did so depend, the caprice or whim of the plaintiff, or his deliberate intention to fasten liability on one defendant alone, could preclude that defendant from having contribution to which he might otherwise be entitled.'")(citing *Knell v. Feltman*, 174 F.2d 662, 665 (D.C. Cir. 1949)).

Therefore, it is clear that under the law of the District of Columbia, actions for indemnity and contribution are separate, distinct and independent of the breaches of warranties and for purposes of statute of limitations, indemnity and contribution accrue when the loss is suffered by the party seeking indemnity. Thus this court should join the majority and hold that D.C.Code §

28:2-725 does not bar Forum's claims for contribution and indemnity against Southco and Advance.

**B.     Forum's claims for contribution and indemnity are ripe for adjudication.**

Southco argues in the alternative that Forum's indemnity and contribution claims are not ripe because Amtrak has not yet obtained a judgment against Forum. As outlined in Forum's previously filed Statement of Points and Authorities, Amtrak's claims are stale and should never obtain a judgment against Forum. However, this is not to say that Forum is precluded from bringing an action for contribution and indemnity against Southco and Advance.

Federal Rule of Civil Procedure 14(a) states:

(a) When Defendant May Bring in Third Party. At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action **who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff**.
...

Fed.R.Civ.P. 14(a) (emphasis added). As Rule 14(a) suggests, third-party claims for contribution and indemnity can be brought for future potential liability in order to effectuate judicial economy.

Forum need not wait until a judgment has been entered against it, or this case has been otherwise resolved, to file its third-party complaint against Southco and Advance for contribution and indemnity. Case law directly on point from the District of Columbia establishes Forum's right to currently bring its indemnity and contribution action. In *Knell v. Feltman*, 174 F.2d 662 (D.C. Cir. 1949), the court held,

In addition to being balked by Rule 14(a), the appellant's theory that there can be no contribution unless the plaintiff had first obtained a judgment against both wrongdoers is untenable for still another reason. The right to seek contribution belongs to the tortfeasor who has been forced to pay, and the existence of the right

cannot logically depend upon a selection of defendants made by the plaintiff. If it did so depend, the caprice or whim of the plaintiff, or his deliberate intention to fasten liability on defendant alone, could preclude that defendant from having contribution to which he might otherwise be entitled. … For these reasons, **we see no substance in the suggestion that contribution between concurrent tort-feasors can be enforced only if both are judgment debtors of the plaintiff.**

  *Id*. at 665 (emphasis added).

Decisions from multiple jurisdictions are in accord. *U.S. Surgical Corp. v. John K. Pulsifer & Co.*, 119 F.R.D. 18, 20 (D. Md. 1988) ("Although such an indemnity or contribution claim has not yet accrued, federal impleader practice allows such claims to be joined with the primary claim of defendant's liability to plaintiff because "resort to impleader has the effect of accelerating the determination of the third-party defendant's liability.")(citing 6 Wright & Miller, Federal Practice and Procedure § 1451 at 280 (1971)); *Royal Indem. Co. v. Deli by Foodarama, Inc.*, 1999 U.S. Dist. LEXIS 3752 (E.D. Pa. 1999) ("In construing substantially identical language governing third-party complaints, courts have recognized that Rule 14(a) "permits a defendant to bring in a third-party defendant even though the defendant's claim is purely inchoate -- i.e., has not yet accrued under the governing substantive law -- so long as the third-party defendant may become liable for all or part of the plaintiff's judgment.")(citing *Andrulonis v. U.S.*, 26 F.3d 1224, 1233 (2d Cir. 1994). *See also*, *Chamberlain v McCleary*, 217 F Supp 591 (E.D. Tenn 1963) (Claim for contribution and indemnity by third-party suit before judgment has been rendered against and paid by parties seeking contribution and indemnity is permitted.); *Marcus v. Marcoux*, 41 F.R.D. 332 (D. R.I. 1967) (contingent claim for contribution can be made subject of third-party claim under Rule 14(a) whereby defendant may cause summons and complaint to be served upon person not party to action who is or may be liable to him for all or part of plaintiff's claim against him.); *Markvicka v Brodhead-Garrett Co.*, 76 F.R.D. 205 (D. Neb. 1977) (Fact that contribution may not actually be obtained until judgment against original

defendant has been rendered and paid does not prevent impleader*); IHP Indus. v PermAlert, ESP*, 178 FRD 483, 487 (S.D. Miss. 1997) ("While it is true as a matter of substantive law that recovery is not available on a claim for indemnity or subrogation until such time as the defendant has actually been adjudicated liable to (and paid) the plaintiff, as a matter of procedure, Fed. R. Civ. P. 14 does not require that the third-party plaintiff await the outcome of the plaintiff's claim against it before it may assert its third-party claim.).

Additionally, by bringing a claim for contribution and indemnity for potential liability prior to paying on a judgment, judicial economy is served by the party seeking indemnity. *Henry Fuel Co., Inc. v. Whitebread*, 236 F.2d 742, 745 (D.C. Cir. 1956) ("In ordinary course, where there are the same witnesses, and the same parties, the same opposing interests and similar identities, in the interest of expeditious and orderly administration of the business of the courts, it is to expected that such claims will be litigated in a single action."); *Crim v. Lumbermen's Mut. Cas. Co.*, 26 F.Supp. 715, 718 (D. D.C. 1939)("The very purpose of Federal Rule 14 is to avoid two actions which should be tried together. This saves time and expense.").

As is abundantly clear from case law cited above, while Forum's claims for contribution and indemnity against Advance and Southco have not yet accrued, these claims are properly before this court to promote judicial economy for a future determination of Advance's and Southco's potential liability. As such, there is no basis for dismissal of the claims on grounds that they are not ripe for adjudication.

## III.    CONCLUSION

While Forum maintains that the claims set forth in Amtrak's First Amended Complaint fall outside the applicable statutes of limitation, Forum rightfully maintains a third-party action against Southco and Advance.

The majority of jurisdictions, including the District of Columbia, hold that an action in indemnity and/or contribution is proper, under the U.C.C., based upon breaches of express or implied warranties. Furthermore, District of Columbia law holds that an action for indemnity and contribution does not begin to accrue until after the indemnitee has been required to pay monies for another's legal liability. Following the majority of jurisdictions which hold that U.C.C. Section 2-725 does not provide the applicable statute of limitations for an action in contribution or indemnity, Forum's third-party claims against Southco and Advance are not time barred.

Neither are Forum's claims for contribution and indemnity unripe for adjudication, as case law directly on point from the District of Columbia, interpreting Rule 14(a) of the Federal Rules of Civil Procedure establishes Forum's current and continued right to bring its indemnity and contribution action.

For the above reasons, Forum respectfully prays this Honorable Court enter an order dismissing the Third-Party Defendants' Motions for Summary Judgment.

Dated: <u>April 5, 2007</u>            Respectfully submitted,

By:   <u>/s/ *Steven W. Zoffer*</u>
Steven W. Zoffer, Esquire
D.C. Bar #435772
Douglas M. Grimsley, Esquire
D.C. I.D. #PA0019
Dickie, McCamey & Chilcote, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA  15222
(412) 281-7272 (Telephone)
(412) 392-5397 (Facsimile)
szoffer@dmclaw.com
dgrimsley@dmclaw.com

*Counsel for Defendant/Third-Party*
*Plaintiff, Forum, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on <u>April 5, 2007</u>, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Stephen M. Ryan, Esquire
Stephen L. Neal, Jr., Esquire
Manatt, Phelps & Phillips, LLP
700 12th Street, N.W., Suite 1100
Washington, DC  20005
***Counsel for Plaintiff***

Joseph Brooks, Esquire
Wade B. Wilson, Esquire
Morgan, Lewis & Bockius, LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
***Counsel for Advance Transformer, Co.***

Russell J. Ober, Jr., Esquire
Patricia L. Dodge, Esquire
Meyer, Unkovic & Scott LLP
1300 Oliver Building
Pittsburgh, PA  15222-2304
***Counsel for Southco, Inc.***


___/s/ Douglas M. Grimsley___
Douglas M. Grimsley, Esquire